DAN SIEGEL, SBN 056400
ANNE BUTTERFIELD WEILLS, SBN 139845
EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Emails: danmsiegel@gmail.com; abweills@gmail.com;
emilyrose@siegelyee.com

Attorneys for Plaintiffs
ARMIDA RUELAS, DE'ANDRE EUGENE COX,
BERT DAVIS, KATRISH JONES,
JOSEPH MEBRAHTU, DAHRYL REYNOLDS,
MONICA MASON, and LUIS NUNEZ-ROMERO

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMIDA RUELAS; DE'ANDRE EUGENE COX; BERT DAVIS; KATRISH JONES; JOSEPH MEBRAHTU; DAHRYL REYNOLDS; MONICA MASON; LUIS NUNEZ-ROMERO; and all others similarly situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>COUNTY OF ALAMEDA; GREGORY J. AHERN, SHERIFF; ARAMARK CORRECTIONAL SERVICES, LLC; and DOES 1 through 10,<br><br>        Defendants. | Case No. 4:19-cv-07637-JST<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT ARAMARK CORRECTIONAL SERVICES, INC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>**Hearing:** March 4, 2020<br>**Time:** 2 p.m.<br>**Courtroom:** Oakland Courthouse, Courtroom 6 – 2nd Floor<br>1301 Clay Street, Oakland, CA 94612<br><br>**Hon. Jon S. Tigar** |

# Table of Contents

**Page**

INTRODUCTION.................................................................................1

ARGUMENT....................................................................................2

I.  Plaintiffs Plead Sufficient Facts to Proceed Against Aramark for a
    Violation of the Trafficking Victims Protection Act................................3

    A.  Aramark is Liable for Obtaining Labor Coerced by County Defendants.....3

    B.  Aramark Knowingly Receives a Financial Benefit from its Venture
        with Alameda County....................................................................4

II. Aramark is Liable for the Failure to Pay Plaintiffs' Wages.....................8

    A.  Persons Confined in County Jails are Included in the Benefits of
        Proposition 139 and the Protections of the Labor Code............................8

    B.  Plaintiffs Plead Sufficient Facts to Demonstrate that They are
        Employees of Aramark Pursuant to Aramark's and Alameda
        County's Joint Employer Relationship.........................................11

    C.  Plaintiffs Plausibly Allege that Aramark Exercises Control Over
        Plaintiffs Sufficient to Proceed with their Wage Claims...........................11

    D.  Plaintiffs' Complaint Demonstrates that Aramark Suffers or Permits
        Plaintiffs to Work...................................................................12

    E.  Plaintiffs Allege a Common Law Employment Relationship
        with Aramark..........................................................................13

    F.  The Fair Labor Standards Act does not Apply to Plaintiffs'
        Wage Claims..........................................................................14

III. Aramark's Use of Uncompensated Labor Violates California's Unfair
     Competition Law.........................................................................15

IV. Aramark is Liable Under the Bane Act.................................................17

V.  Plaintiffs Request Leave to Amend their Complaint Should the Court find
    Defect in their Allegations..............................................................19

CONCLUSION.................................................................................20

1

# Table of Authorities

2 **FEDERAL CASES**                                              **Page(s)**

3 *Ashcroft v. Iqbal*
        556 U.S. 662 (2009)..................................................................2

4

5 *Bell Atl. Corp. v. Twombly*
        550 U.S. 544 (2007) ...............................................................2

6

7 *Bistline v. Parker*
        918 F.3d 849 (10th Cir. 2019) ...............................................3

8

9 *Burleson v. State of California*
        83 F.3d 311 (9th Cir. 1996)....................................................5

10 *Christie v. Iopa*
        176 F.3d 1231 (9th Cir. 1999)................................................7

11

12 *Davis v. HSBC Bank Nevada*, N.A.
        691 F.3d 1152 (9th Cir. 2012)..............................................15

13

14 *Griffin v. Oceanic Contractors, Inc.*
        458 U.S. 564 (1982)................................................................6

15

16 *Haralson v. United Airlines, Inc.*
        224 F. Supp. 3d 928 (N.D. Cal. 2016)..................................11

17

18 *Hospital Bldg. Co. v. Rex Hospital Trustees*
        425 U.S. 738 (1976) ...............................................................2

19 *Ileto v. Glock Inc.*
        349 F.3d 1191 (9th Cir. 2003)................................................2

20

21 *Jenkins v. McKeithen*
        395 U.S. 411, 421 (1969) ........................................................2

22

23 *Jones v. Kmart Corp.*
        17 Cal. 4th 329 (1998) ..........................................................19

24

25 *Kingdomware Techs., Inc. v. United States*
        136 S. Ct. 1969 (2016) ...........................................................8

26

27 *Knapps v. City of Oakland*
        647 F. Supp. 2d 1129 (N.D. Cal. 2009)................................17

28 *Langan v. United Servs. Auto. Ass'n*
        69 F. Supp. 3d 965 (N.D. Cal. 2014)....................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Lesnik v. Eisenmann SE,*
    374 F. Supp. 3d 923 (N.D. Cal. 2019)........................................................4

*Long v. Graco Children's Prod. Inc.,*
    No. 13-CV-01257-WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013)................16

*McGarry v. Pallito*
    687 F.3d 505 (2d Cir. 2012)........................................................6

*Miranda-Martinez v. Fed. Corr. Inst. #2*
    No. 219CV07742JFWMAA, 2019 WL 5791454 (C.D. Cal. Sept. 25, 2019)............6

*Muchira v. Al-Rawaf*
    850 F.3d 605, 617 (4th Cir. 2017)........................................................6

*Novoa v. GEO Grp., Inc.*
    No. EDCV172514JGBSHKX, 2018 WL 3343494 (C.D. Cal. June 21, 2018)......14,15

*Ochoa v. McDonald's Corp.*
    133 F. Supp. 3d 1228 (N.D. Cal. 2015)........................................................11

*Owino v. CoreCivic, Inc.*
    No. 17-CV-1112 JLS (NLS), 2018 WL 2193644 (S.D. Cal. May 14, 2018)......4,6,7,15

*Reese v. Cty. of Sacramento*
    888 F.3d 1030 (9th Cir. 2018)........................................................17

*Rezner v. Bayerishe Hypo-Und Vereinsbank AG*
    No. C 06-02064 JW, 2011 WL 6329854, at *6 (N.D. Cal. Nov. 8, 2011) .............17

*Ricchio v. McLean*
    853 F.3d 553 (1st Cir. 2017)........................................................3,4,5

*Russell v. City & Cty. of San Francisco,*
    No. C-12-00929-JCS, 2013 WL 2447865 (N.D. Cal. June 5, 2013)........................17

*Salazar v. McDonald's Corp.*
    944 F.3d 1024 (9th Cir. 2019)........................................................12

*Tieberg v. Unemployment Ins. App. Bd.*
    2 Cal. 3d 943 (1970)........................................................13

*United States v. Toviave*
    761 F.3d 623 (6th Cir. 2014) ........................................................6

*U.S. Equal Employment Opportunity Comm'n v. Glob. Horizons, Inc.,*
915 F.3d 631 (9th Cir. 2019)...................................................................18

*Yagman v. Garcetti*
852 F.3d 859 (9th Cir. 2017).................................................................19

**STATE CASES**

*Arriaga v. Cty. of Alameda*
9 Cal. 4th 1055 (1995) ...........................................................................9

*Ayala v. Antelope Valley Newspapers, Inc.*
59 Cal. 4th 522 (2014)..........................................................................14

*Casey v. U.S. Bank Nat. Assn.,*
127 Cal. App. 4th 1138 (2005)..............................................................19

*Curry v. Equilon Enterprises, LLC*
23 Cal.App.5th 289 (2018)....................................................................12

*Dynamex Operations W. v. Superior Court*
4 Cal. 5th 903, 953 (2018)....................................................................15

*Martinez v. Combs*
49 Cal. 4th 35 (2010)...............................................................11,13,14,15

*Motors, Inc. v. Times Mirror Co.,*
102 Cal. App. 3d 735 (Ct. App. 1980)...............................................16,17

*Pruitt v. Workmen's Comp. Appeals Bd., Nevada Cty.*
261 Cal. App. 2d 546 (Ct. App. 1968)......................................................9

*Reno v. Baird*
18 Cal. 4th 640, 655–56 (1998)..............................................................19

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*
48 Cal. 3d 341, 350 (1989)....................................................................13

**FEDERAL STATUTES**

18 U.S.C. § 1595(a)................................................................................3,4
18 U.S.C. 1589.........................................................................................3,6
18 U.S.C. § 1589(a)................................................................................3,4
18 U.S.C. § 1589(b)...................................................................................3

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200. ...........................................................15

Cal. Civ. Code § 52.1.................................................................................18

Cal. Const. art. XIV, § 5............................................................................8,9

Cal. Penal Code §2717.8............................................................................10

Cal. Pen. Code §§ 4000 *et seq*..................................................................9

Cal. Pen. Code § 2700................................................................................5

**OTHER AUTHORITIES**

63 Cal. Op. Att'y Gen. 33 (1980)...............................................................8

Cal. Code Regs. tit. 8, § 11050...................................................................15

H.R. CONF. REP. 106-939...........................................................................7

Prison Inmate Labor-Tax Credit-Initiative Constitutional Amendment and Statute, 1990 Cal. Legis. Serv. Prop. 139.................................................9,10

## INTRODUCTION

Plaintiffs Armida Ruelas, De'Andre Eugene Cox, Bert Davis, Katrish Jones, Joseph Mebrathu, Dahryl Reynolds, Monica Mason, and Luis Nunez-Romero are or were at one time incarcerated at Santa Rita Jail, the sole jail run by the Sheriff's Department of Alameda County. They seek to represent a class of prisoners at Santa Rita Jail who are forced to work without pay.

The jail houses pre-trial detainees in state and federal cases, prisoners sentenced to county jail time or state prison time, and detainees facing immigration proceedings. It has an industrial kitchen designed to mass-produce meals for consumption by prisoners in Santa Rita Jail and other county jails in California. Defendants Alameda County, Sheriff Gregory J. Ahern, and Aramark Correctional Services, Inc. ("Aramark") employ prisoners in Santa Rita Jail to perform nearly every aspect of food preparation and sanitation in the industrial kitchen. Defendant Aramark is a private corporation that benefits financially from the work of those housed in Santa Rita Jail. Aramark uses prison labor to run its operations in an industrial kitchen where it produces meals for third-parties. This partnership between the County and Aramark is permitted by a state statutory scheme established by referendum in 1990, and by a contract between the parties, which allows prisoners to be employed and be paid comparable wages subject to deductions.

Although plaintiffs and the putative class are employed by defendants, they are not paid any wages for their work. Further, they are coerced to work, forced to work, and threatened with sanctions if they attempt not to work. Plaintiffs filed their lawsuit seeking wages that they are owed for work they performed and seeking an end to their exploited labor by coercion or threat of sanction.

Defendant Aramark filed their motion to dismiss plaintiffs' complaint on January 17, 2020. (ECF No 23.) Aramark argues that:

1)      Plaintiffs Armida Ruelas, Bert Davis, Monica Mason, and Luis Nunez-Romero did not plead facts sufficient to maintain their Trafficking Victims Protection Act claim against Aramark;

2)      Plaintiffs fail to state a wage claim against Aramark;

3)      Plaintiffs cannot maintain a derivative unfair competition claim against Aramark;

4)      Plaintiffs do not plead sufficient facts alleging Aramark violated the Bane Act.

In their opposition, plaintiffs will show:

1)      Plaintiffs' Trafficking Victims Protection Act claim is properly alleged against Aramark;

2)      Plaintiffs plead sufficient facts to maintain their wage claims against Aramark;

3)      Plaintiffs' may proceed against Aramark for unfair competition;

4)      Plaintiffs state facts sufficient to state a Bane Act claim against Aramark.

Plaintiffs do not contest the Equal Pay Act arguments raised by Aramark.

## ARGUMENT

At the pleading stage, plaintiffs need only allege in their complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). The Court must take plaintiffs' allegations as true and construe the pleadings in the light most favorable to them. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976); *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969). The court must also draw all reasonable inferences in plaintiffs' favor. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

Plaintiffs' complaint contains sufficient factual content to support all claims for relief asserted.

///

///

///

## I.      Plaintiffs Plead Sufficient Facts to Proceed Against Aramark for a Violation of the Trafficking Victims Protection Act.

Plaintiffs Armida Ruelas, Bert Davis, Monica Mason, and Luis Nunez-Romero[1] allege that Aramark as well as the County of Alameda and Sheriff Gregory Ahern violate the Trafficking Victims Protection Act, 18 U.S.C. 1589 ("TVPA"). (Complaint at ¶¶ 70-72.) They seek civil remedies as available pursuant to 18 U.S.C. § 1595(a). In evaluating whether plaintiffs plead sufficient facts to state a TVPA claim, the Court should "examine the complaint as a whole" and "[give] attention to the whole body of allegations as circumstantially supplying meaning to particular acts." *Bistline v. Parker*, 918 F.3d 849, 874 (10th Cir. 2019) (citing *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017)).

Aramark argues that plaintiffs do not plead facts sufficient to state a claim that Aramark, rather than the County, which plaintiffs allege is responsible for the threats and coercion, is liable under the TVPA. (MTD at 6:5-24.) Section 1589 outlaws forced labor by a person who knowingly provides the labor or by a person who knowing obtains the labor. 18 U.S.C. § 1589(a). The same section establishes that it is a violation of the law to benefit financially from an arrangement with a person providing or obtaining forced labor. 18 U.S.C. § 1589(b). Section 1589(a) describes a primary offender and section (b) describes a venture partner. *Bistline*, 918 F.3d at 871 ("One can violate the statute either as a primary offender or simply by benefiting financially from participation in a 'venture' with the primary offender."). Section 1595(a) establishes civil liability for the primary perpetrator and the venture partner. 18 U.S.C. § 1595(a). Aramark is liable both as a perpetrator obtaining forced labor and as a venture partner financially benefitting from forced labor.

### A.      Aramark is Liable for Obtaining Labor Coerced by County Defendants.

Aramark argues that where it is not the entity forcing plaintiffs to work, it cannot be liable under 18 U.S.C. § 1595(a). (MTD at 6:5-24.) However, the statute's plain

---

[1] Each worked while in Santa Rita Jail a pre-trial detainee, pre-sentence detainee, or detainee facing removal proceeding.

language makes it unlawful to "obtain[] the labor or services of a person . . . by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a)(4).

Plaintiffs plead that Aramark obtained plaintiffs' uncompensated labor through a scheme with the County defendants that caused plaintiffs to believe they would suffer serious harm or physical restraint in the form of solitary confinement or additional time in jail. (Complaint at ¶ 26.) Such threats are sufficient to constitute serious harm or physical restraint. *Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2018 WL 2193644, at *11 (S.D. Cal. May 14, 2018), *reconsideration denied*, 2019 WL 1367815 (S.D. Cal. Mar. 26, 2019) ("At the very least, solitary confinement constitutes serious harm . . . [and] the threat of solitary confinement, sufficiently alleges the means to achieve forced labor."). Aramark's affirmative step of entering into a contract to obtain uncompensated labor from the County defendants who exert physical control over plaintiffs is unlawful conduct under section 1589(a)(4).

## B. Aramark Knowingly Receives a Financial Benefit from its Venture with Alameda County.

Section 1595(a) creates liability for "the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*) . . .". 18 U.S.C. § 1595(a) (emphasis added). Therefore, an entity such as Aramark that knowingly benefits from coerced labor is liable even where the entity did not engage in the coercive or threatening behavior itself. *See e.g., Ricchio*, 853 F.3d at 556 (individuals who rented a room to a man who used the room to hold a woman captive were also liable for the man's actions because they had knowledge of the man's actions and received something of value from the venture: rent); *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 952-53 (N.D. Cal. 2019) (two companies that contracted with a third company that provided labor from workers who were threatened in order to compel them to work despite illness and injury were also liable for violations of the TVPA because they financially benefitted from the labor through their contractual

---

relationship with the third company and because they knew or should have known about the violations based on direct observation and recordkeeping). Aramark is liable even where its actions amount solely to "reckless disregard of the fact that the venture included such conduct on [the County's] part." *Ricchio*, 853 F.3d at 556.

Plaintiffs allege that Aramark entered into a contract with the County of Alameda and the Sheriff for uncompensated prisoner labor from which Aramark financially benefits. (Complaint at ¶ 21.) Plaintiffs allege that during their shifts they are supervised by Aramark employees while under guard by Sheriff's deputies. (Complaint at ¶¶ 21, 24.) Plaintiffs describe the coercion and threats they experience that compels them to work for Aramark for no pay. (Complaint at ¶ 25-27.) In particular, plaintiffs describe a labor strike that resulted in women prisoners being forced to work shifts traditionally worked by male prisoners under threat that they would not be fed. (Complaint at ¶ 30.) This coercion was in furtherance of Aramark's need to reach its quotas. (Id.) The Court may infer from these allegations that that Aramark witnesses these coercive tactics employed by the Deputies while they supervise plaintiffs during shifts or is otherwise aware of these tactics based on their need to fulfill quotas regardless of plaintiffs' unwilling participation. Plaintiffs' allegations are sufficient to demonstrate at the pleading stage that Aramark knows that they are the financial beneficiary of uncompensated labor secured by threats or coercion.

Aramark argues that it cannot be liable under the TVPA as a venture partner because even if they are found to financially benefit from the arrangement with the County, the County is not liable for compelling those in its custody to work. (MTD at 7:1-8:22.) First, Aramark argues that prisoners in California are legally compelled to work so the County cannot be liable for compelling plaintiffs to work. (MTD at 7:9-15.) It cites *Burleson v. State of California*, 83 F.3d 311, 313 (9th Cir. 1996) for this proposition. (Id.) This authority in inapposite. *Burleson* involved state prisoners who were all duly convicted and serving state prison sentences. 83 F.3d at 312. The penal code section on which the Court in *Burleson* relied applies only to prisoners in state prisons. Cal. Pen. Code § 2700 ("The *Department of Corrections* shall require of every

able-bodied prisoner *imprisoned in any state prison . . .*" (emphasis added)). Statutes addressing the obligations of the Department of Corrections do not apply to detainees in county jails, as Aramark acknowledges in their Motion. (See MTD at 10:6-9.) Pretrial detainees are not convicted offenders and cannot be forced to work. *McGarry v. Pallito*, 687 F.3d 505, 514 (2d Cir. 2012). Neither can civil detainees awaiting immigration proceedings. *Owino*, 2018 WL 2193644, at *24-25. Aramark's argument that the County is free to compel the work of plaintiffs must fail.

Aramark further argues that it cannot be held liable if the County is not first held liable as the primary perpetrator under the TVPA. (MTD at 7:6-24.) Citing a single unpublished opinion, Aramark argues that the County of Alameda cannot be liable because it was not contemplated as a "perpetrator" or "whoever" in 18 U.S.C. § 1589. (MTD at 7:15-21.) While the County defendants did not raise this argument in their papers, assuming *arguendo* that counties are not contemplated as perpetrators in the statute, Aramark can still be liable under the statute.

A civil remedy is available against the perpetrator **or** the person financially benefitting from the venture. 18 U.S.C. § 1589. The use of "or" indicates that plaintiffs may bring their claim against either or both offenders. Therefore, while plaintiffs must and do plead the County of Alameda's wrongdoing, the plain language of the statute allows a plaintiff to seek civil remedies against either or both the primary offender and the venture partner. Any other interpretation would lead to the absurd result that a private employer that financially benefits from a public entity's trafficking of victims is beyond the reach of the TVPA. The Court should avoid such absurd results "if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

It is widely acknowledged that the TVPA was "passed to implement the Thirteenth Amendment against slavery or involuntary servitude." *United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014). *See also Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017), *as amended* (Mar. 3, 2017); *Miranda-Martinez v. Fed. Corr. Inst. #2*, No. 219CV07742JFWMAA, 2019 WL 5791454, at *5 (C.D. Cal. Sept. 25, 2019),

*report and recommendation adopted*, 2019 WL 5784738 (Nov. 4, 2019); *Owino,* 2018 WL 2193644, at *3. Counties undoubtedly may be liable for violations of the Thirteenth Amendment. *Christie v. Iopa*, 176 F.3d 1231, 1234 (9th Cir. 1999) (Counties may be sued under 42 U.S.C. § 1983 as for violations of the United States Constitution.) The legislative history of the TVPA demonstrates the legislature's wide-ranging contempt for trafficking, calling it "an evil requiring concerted and vigorous action" and "involving grave violations of human rights". H.R. CONF. REP. 106-939, 5-6. Such clear origins and strong language indicates that the legislature intended the TVPA to be enforceable against anyone, including municipalities, that violate its provisions, or, in the alternative, that the TVPA be enforceable against the private entity financially benefitting from a venture to coerce involuntary labor whether the primary perpetrator is sued or not. Either of these interpretations is consistent with the legislative intent and avoids absurd results.

Aramark next argues that even where the County may be liable for violations of the TVPA, plaintiffs do not allege facts sufficient to support their claim that Aramark financially benefits from the venture such that they are liable. (MTD at 7:25-8:8.) Specifically, Aramark argues that plaintiffs do not allege sufficient information to demonstrate that Aramark knew of or was in reckless disregard of Alameda County's prohibited conduct. (MTD at 8:4-8.) This is not so.

Plaintiffs allege that Aramark knowingly entered into a contract for the provision of the uncompensated labor of prisoners over whom the County exercised control. (Complaint at ¶ 21.) Aramark is present in the jail to supervise plaintiffs. (Complaint at ¶ 24.) Plaintiffs' allegations infer that Aramark witnesses the Sheriff's Deputies' treatment of plaintiffs during the times Aramark is supervising and Deputies are guarding plaintiffs. (Complaint at ¶ 24.) Plaintiffs allege that the financial benefit to Aramark was designed by the contract it entered into with the County and the Sheriff. (Complaint at ¶¶ 21; 31.) Plaintiffs sufficiently allege that Aramark knew of or recklessly disregarded prohibited conduct by the Sheriff's Deputies.

Finally, Aramark argues that the complaint does not allege an "overt act" by Aramark in furtherance of the venture. (MTD at 8:15-16.) This is easily disposed of where plaintiffs allege that Aramark entered into a contract that contemplated the prohibited conduct. (Complaint at ¶ 21.) Plaintiffs' allegations do not leave room for the conclusion that Aramark was a passive benefactor of the County's wrongdoing. Instead, plaintiffs' complaint makes clear that Aramark actively participates in the venture predicated on forced labor of unwilling prisoners.

## II.    Aramark is Liable for the Failure to Pay Plaintiffs' Wages.

### A.    Persons Confined in County Jails are Included in the Benefits of Proposition 139 and the Protections of the Labor Code.

Proposition 139 amended the California Constitution and provided that where a county chooses to enter into a contract with a private corporation for the labor of persons in its custody, it "shall operate and implement the program pursuant to statutes enacted by or in accordance with the provisions of the Prison Inmate Labor Initiative of 1990, and by rules and regulations prescribed by the Director of Corrections and, for county jail programs, by local ordinance." Cal. Const. art. XIV, § 5. The use of the word "shall" created a requirement that counties govern these contractual arrangements by statute and local ordinance. *See Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). The purpose of the constitutional amendment was to permit prisoners to work and, expressly, to require they be paid comparable wages. *See* Voter Information Guide for 1990, General, attached as Exhibit 2 to the Declaration of EmilyRose Johns ("Johns Decl.) at 64; 65.

Article XIV, section 5 previously forbade the contracting of prison labor to private corporations. *See* Johns Decl., Ex. 2, at 64 (addressing the purpose of the constitutional amendment to permit county jails to contract with private entities). *See also* 63 Cal. Op. Att'y Gen. 33 (1980) (addressing the previous language: "The labor of convicts shall not be let out by contract to any person, copartnership, company or corporation, and the Legislature, shall by law, provide for the working of convicts for the benefit of the State."). Proposition 139 repealed that section and replaced it with the current language,

making possible the contract between Aramark and the County. Prison Inmate Labor-Tax Credit-Initiative Constitutional Amendment and Statute, 1990 Cal. Legis. Serv. Prop. 139, § 3.

In addition to amending the Constitution, Proposition 139 amended the California Penal Code for prisoners held in state prisons. *Id.* Those amendments created a joint venture program state-wide, while leaving to the counties the choice to create such ventures.  Cal. Const. art. XIV, § 5. Aramark argues that plaintiffs are not entitled to wages because Proposition 139 did not amend sections of the California Penal Code relating to jails. (MTD at 9:12-16.) This argument fails to address the express language of the Constitution that directs counties to govern ventures by local ordinance. Cal. Const. art. XIV, § 5. *See also* Johns Decl., Ex. 2, at 64. Where, as here, a county chooses to create such a venture, it is required to create local ordinances to govern such arrangements. *Id.* It follows that to allow a county choice in creating ventures—like the one the County of Alameda and Aramark have created here—the proposition did not make similar modifications to the penal code addressing county jails. See Cal. Pen. Code §§ 4000 *et seq.*

Nothing in the language of the California Constitution or the sections of the penal code dealing with jails denies prisoners in county jails the protections of the California Labor Code. Indeed, California courts have held that prisoners in county jail who are injured while working are employees under the workman's compensation provision of the California Labor Code. *See Arriaga v. Cty. of Alameda*, 9 Cal. 4th 1055, 1063 (1995) (prisoner in county jail who was loaned out to perform work for the State Department of Transportation and injured on the job "establish as a matter of law that she was an employee under the Act."); *Pruitt v. Workmen's Comp. Appeals Bd., Nevada Cty.*, 261 Cal. App. 2d 546, 552 (Ct. App. 1968) (finding a prisoner in county jail to be an employee for worker's compensation). Such holdings are instructive, as they affirm that absent statutory language to the contrary, prisoners in county jail are not categorically excluded from being employees under the labor code.

Further, the amendments to the penal code implemented by Proposition 139 are

instructive. Section 2717.8 of the California Penal Code describes the private entities with whom the Department of Corrections may contract for prison labor as "joint venture employers" and dictates that pay to prisoners must be comparable to that of the joint venture employers' non-prisoner employees. Cal. Penal Code §2717.8. In using such language, it is clear that the intent of the voters was to establish a joint employer relationship between the state and the entity seeking to utilize prison labor and create a comparable pay structure. Without explicit language to that effect, it cannot be argued that prisoners in jail are excluded from being jointly employed by the county and a private employer and permitted wages.

The purpose of the constitutional amendment was to allow prisoners to be compensated in order to accomplish all of the following:

(a) Reimburse the State of California or counties for a portion of the costs associated with their incarceration.

(b) Provide restitution and compensation to the victims of crime.

(c) Encourage and maintain safety in prison and jail operations.

(d) Support their families to the extent possible.

(e) Learn skills which may be used upon their return to free society.

(f) Assist in their own rehabilitation in order to become responsible law-abiding citizens upon their release from state prison or local jail.

Prison Inmate Labor-Tax Credit-Initiative Constitutional Amendment and Statute, 1990 Cal. Legis. Serv. Prop. 139. Counties were explicitly included. *Id.* Prisoners must be permitted wages—subject to deductions to accomplish the above—if they are working for private employers.

Finally, by their own contract to initiate this joint venture, the County and Aramark provide that "Pursuant to Labor Code Section 1770 et seq., [Aramark] shall pay to persons performing labor in and about Work provided for in Contract not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the Work is performed . . ." (Johns Decl., Ex. 1, at W-6-W-7.) Aramark

and the County themselves agree to pay comparable wages to any person performing labor provided for in the contract. *Id.* Aramark cannot now deny plaintiffs wages for the work they performed.

**B.      Plaintiffs Plead Sufficient Facts to Demonstrate that They are Employees of Aramark Pursuant to Aramark's and Alameda County's Joint Employer Relationship.**

Plaintiffs' complaint presents facts sufficient for the Court to determine at the pleading stage that the County of Alameda and Aramark jointly employ plaintiffs and the putative class.[2] "To employ . . . under the IWC's definition [] has three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010), *as modified* (June 9, 2010). A joint employer relationship exists if any one of these three tests are satisfied. *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1233 (N.D. Cal. 2015). Plaintiffs allege facts that support each of the three prongs.

**C.      Plaintiffs Plausibly Allege that Aramark Exercises Control Over Plaintiffs Sufficient to Proceed with their Wage Claims.**

At the pleading stage, plaintiffs need only plead that Aramark controls one aspect of the employment relationship to assert their liability as a joint employer. *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 939 (N.D. Cal. 2016). Aramark's supervision of plaintiffs' work constitutes control over one aspect of the employment relationship. *Id.* Aramark argues that plaintiffs' allegation that it supervises plaintiffs' work is insufficient. (MTD at 11:7-21.) However, plaintiffs' complaint alleges more about Aramark's control than a bare allegation that Aramark supervises plaintiffs. Plaintiffs explain that the work they perform under Aramark's supervision includes preparation and packaging of food and cleaning and sanitation. (Complaint at ¶ 22.) Plaintiffs allege that Aramark's supervision involves establishing quotas that plaintiffs and the putative class must work to meet. (Complaint at ¶ 30.) Plaintiffs also allege that Aramark

---

[2] Should the Court conclude that plaintiffs must plead additional facts to demonstrate the joint employment relationship, plaintiffs are able to do so and request leave of the Court to file an amended complaint to cure any defect the Court finds.

controls their wages in that they participate in the decision to deny plaintiffs their wages. (Complaint at ¶ 29.) Plaintiffs also allege that Aramark participates in the setting of shifts for plaintiffs and the putative class. (Complaint at ¶ 23.)[3] These allegations demonstrate that Aramark exerted control over the "day-to-day" aspects of plaintiffs' work. *Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1030 (9th Cir. 2019) (explaining that control under this prong is tantamount to day-to-day control over aspects of the job). Plaintiffs' allegations, sufficient to meet the first *Martinez* prong, allow plaintiffs to proceed against Aramark as a joint employer.[4]

### D. Plaintiffs' Complaint Demonstrates that Aramark Suffers or Permits Plaintiffs to Work.

Plaintiffs also plead sufficient facts under the second *Martinez* prong, that Aramark suffers or permits plaintiffs to work. "The basis of liability [under the second prong of the *Martinez* test] is 'the defendant's knowledge of and failure to prevent the work from occurring.'" *Salazar*, 944 F.3d at 1030 (quoting *Curry v. Equilon Enterprises, LLC*, 23 Cal.App.5th 289 (2018)). Aramark argues that plaintiffs do not allege that Aramark had the power to terminate plaintiffs, and therefore Aramark could not prevent the work from occurring. (MTD at 12:12-13.)

Plaintiffs allege that Aramark had knowledge of the unlawful employment practices and that Aramark failed to prevent the work from occurring where they plead that Aramark and the County defendants created this unlawful scheme by contract. (Complaint at ¶ 21.) This allegation alone demonstrates that Aramark has ultimate control over plaintiffs' work and therefore suffer or permit plaintiffs to work. Contrary to Aramark's argument, it is not fatal that plaintiffs also allege that the County

---

[3] In plaintiffs' opposition to defendant County of Alameda's Motion to Dismiss, plaintiffs also argue that the County exerts control over shifts. Plaintiffs' allegations in their complaint is that all defendants participate in this decision, as the County will dictate schedules from the safety and security of the institution and Aramark will dictate shifts as to the expected workload.

[4] Plaintiffs can plead additional facts about Aramark's supervision and control over work including that on a daily basis, Aramark employees supervise the quality of plaintiffs' work, determine when and how long breaks should be, decide when the work for the day is complete, and can terminate employees by instructing Sheriff's Deputies not to permit the employee to return to work.

---

defendants exercise similar control. (MTD at 12:14-16.) As plaintiffs plead, the defendants share responsibility for a number of aspects of the scheme that makes plaintiffs' labor possible. (Complaint at 22, 23, 29.) That plaintiffs' labor is uncompensated is alleged to be by design, with Aramark exercising sufficient control over the parameters of the design. Plaintiffs' allegations satisfy the second prong.

### E. Plaintiffs Allege a Common Law Employment Relationship with Aramark.

The third prong of the *Martinez* test is whether Aramark engaged plaintiffs such that they created a common law employment relationship. 49 Cal. 4th at 64. "'[T]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired . . .'" *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989) (quoting *Tieberg v. Unemployment Ins. App. Bd.*, 2 Cal. 3d 943, 946 (1970)). "[T]he right to control work details is the 'most important' or 'most significant' consideration." *S. G. Borello & Sons, Inc.*, 48 Cal. 3d at 350. However, the employment relationship can created by additional factors such as "(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee." *Id.* at 351. This inquiry into these factors is fact based and cannot be mechanically applied. *Id.*

While plaintiffs plead facts sufficient to demonstrate that Aramark controlled the manner and means of plaintiffs' work, as discussed above, plaintiffs also allege that they were employees of Aramark, their work was performed under Aramark's supervision, and that they performed unskilled labor such as food preparation and cleaning.

(Complaint at ¶¶ 15; 22.) These allegations indicate a common law employment relationship.

Aramark argues that the single most important determination of the common law employment relationship is the ability to hire and fire, and absent plaintiffs' allegations that Aramark controlled those aspects of their employment, Aramark cannot be liable under Martinez's third prong. (MTD at 13:2-5.) For support, Aramark cites *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 539 (2014). (MTD at 12:26-13:2.) Aramark misconstrues the court's holding. The *Ayala* court explained that when weighing the *Borello* factors, indicators "such as the hirer's right to fire at will *and the basic level of skill called for by the job*" hold more weight than other factors. 59 Cal. 4th at 539 (emphasis added). Plaintiffs' allegations regarding their work, supervision, and understanding of their relationship sufficiently allege a common law employment relationship, even where the complaint is silent on hiring and firing.

Plaintiffs' complaint alleges facts sufficient to conclude that Aramark has employer liability for the work plaintiffs' perform in the Santa Rita Jail's industrial kitchen. They therefore may proceed against Aramark for their unpaid wages.

### F.   The Fair Labor Standards Act does not Apply to Plaintiffs' Wage Claims.

Aramark argues that the Court should find persuasive the Fair Labor Standards Act definition of employ. (MTD at 13:20-14:17.) This is contrary to the clear direction of the California Supreme Court. In *Martinez*, the California Supreme Court counseled:

> In no sense is the IWC's definition of the term "employ" based on federal law. As we have explained, the IWC has used the phrase "suffer or permit" in wage orders to define the employment relation since 1916, borrowing the phrase from the common, well-understood wording of contemporary child labor laws. . . .Not until 1938 did Congress enact the FLSA, defining the term "employ" with similar language . . . and not until 1961 did the United States Supreme Court engraft onto the language of the FLSA the nonstatutory "economic reality" test for employment.

49 Cal. 4th at 66 (internal citations removed). *See also Novoa v. GEO Grp., Inc.*, No. EDCV172514JGBSHKX, 2018 WL 3343494, at *7 (C.D. Cal. June 21, 2018) ("[T]he

Court heeds the California Supreme Court's directive in *Martinez* that the IWC wage

orders be given independent effect from FLSA.")

As the *Martinez* court explains, it is not the intent of California wage laws to

adopt the FLSA's "economic realities" test. 49 Cal. 4th at 66-67. Instead, in California,

"the suffer or permit to work standard must be interpreted and applied broadly to

include within the covered 'employee' category *all* individual workers who can

reasonably be viewed as *working in the [hiring entity's] business*." *Dynamex*

*Operations W. v. Superior Court*, 4 Cal. 5th 903, 953 (2018), *reh'g denied* (June 20,

2018) (citations omitted) (emphasis in original). The Court must look to California wage

orders rather than the FLSA to determine whether plaintiffs are employees and when

plaintiffs are entitled to minimum wage and overtime premiums. Plaintiffs' work is

governed by Industrial Wage Order 5 "Public Housekeeping Industry." Cal. Code Regs.

tit. 8, § 11050. *See also Novoa*, No. 2018 WL 3343494, at *9, *Owino,* 2018 WL 2193644,

at *26. Plaintiffs must be paid minimum wage and overtime premiums in accordance

with California Wage Orders, whether or not they would qualify as employees under the

FLSA.[5]

## III.    Aramark's Use of Uncompensated Labor Violates California's Unfair Competition Law.

Aramark violates California's Unfair Competition Law where it engages in

unlawful, unfair, or fraudulent business practices. Cal. Bus. & Prof. Code § 17200.

Plaintiffs allege that Aramark's use of plaintiffs' labor under the conditions they describe

is unlawful. (Complaint at ¶ 67-99.) "Virtually any state, federal or local law can serve as

the predicate for an action under section 17200." *Davis v. HSBC Bank Nevada*, N.A.,

691 F.3d 1152, 1168 (9th Cir. 2012). *See also Langan v. United Servs. Auto. Ass'n*, 69 F.

---

[5] Aramark's citations to cases from other states are unavailing as they incorporate the
FLSA definition or distinguish cases where prisoners work for private corporations. *See
e.g., Whyte v. Suffolk Cty. Sheriff's Dep't*, 91 Mass. App. Ct. 1124, 86 N.E.3d 249 (2017)
("We are guided in the interpretation of our wage laws by Federal case law interpreting
the Fair Labor Standards Act (FLSA) . . ."); *State ex rel. Edwards v. State*, 128 Ohio
App. 3d 109, 111, *cause dismissed*, 83 Ohio St. 3d 1455, 700 N.E.2d 618
(1998), (distinguishing work for "Ohio Penal Industries" from work for a private
employer in Ohio statutes).

---

Supp. 3d 965, 983 (N.D. Cal. 2014). Where plaintiffs have pled facts showing that Aramark violates federal law, state law or local ordinance, they have pled facts sufficient to advance their claim that Aramark engages in unfair business practices. As demonstrated above, plaintiffs' complaint provides sufficient factual matter to allege violations of constitutional, federal and state law sufficient to underlie plaintiffs UCL claim.

Plaintiffs are also entitled to proceed against Aramark based on the allegation that their business practice is unfair. An unfair business practice does not require the violation of an underlying law. Instead, plaintiffs may demonstrate unfairness one of two ways. "Some courts have held that the 'unfair' prong requires alleging a practice that offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and the policy must be tethered to specific constitutional, statutory or regulatory provisions." *Long v. Graco Children's Prod. Inc.*, No. 13-CV-01257-WHO, 2013 WL 4655763, at *8 (N.D. Cal. Aug. 26, 2013) (internal quotations and citations omitted.) "Other courts have held that the court must apply a balancing test that weighs the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* (internal quotations, modifications, and citations omitted.) Under either theory, plaintiffs allege sufficient facts against Aramark.

Under the first test—the "tethering" test—"a plaintiff must identify an actual policy based on a legal provision that the defendant violated." *Long*, 2013 WL 4655763, at *9. Plaintiffs specifically identify the policy established by the voters through Proposition 139 as a policy violated by Aramark's failure to pay plaintiffs wages. (Complaint at ¶ 17, 25.) Such an allegation is sufficient to proceed on plaintiffs' unlawful business practice claim based on a tethering theory.

Under the second test—the "balancing" test—a defendant's business practice is "unfair" where the gravity of their harm from the unfair practice outweighs the utility to the defendant from the unfair practice. *Long*, 2013 WL 4655763, at *9. At the pleading stage, however, plaintiffs need only plead facts that allege a "prima facie case of harm, having its genesis in an apparently unfair business practice . . . " *Motors, Inc. v. Times*

*Mirror Co.*, 102 Cal. App. 3d 735, 740 (Ct. App. 1980). Determining the utility of a practice "is really quite impossible if only the plaintiff has been heard from, as is the case when it is sought to decide the issue of unfairness on demurrer." *Id. See also Rezner v. Bayerishe Hypo-Und Vereinsbank AG*, No. C 06-02064 JW, 2011 WL 6329854, at *6 (N.D. Cal. Nov. 8, 2011) ("Thus, where the pleading states a prima facie case of harm stemming from an apparently unfair business practice, dismissal on the pleadings is generally inappropriate, as the court cannot weigh the utility of the defendant's conduct without analysis of some evidence.") In their complaint, plaintiffs allege that they are harmed by Aramark's scheme to utilize their labor while not paying them for work they perform. (Complaint at ¶ 21, 25.) They also allege they are harmed through coercion to work. (Complaint at ¶ 26.) These allegations demonstrate a prima facie case for harm sufficient to proceed under the unfairness prong.

## IV.   Aramark is Liable Under the Bane Act.

Plaintiffs' complaint alleges that the County defendants and Aramark are liable for violations of the Bane Act. (Complaint at ¶¶ 67-69.) "The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018). *See also Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009), *amended in part* (Sept. 8, 2009) ("To obtain relief under this statute, a plaintiff must prove that a defendant tried to, or did, prevent the plaintiff from doing something that he had the right to do under the law, or to force plaintiff to do something that he was not required to do under the law.") "[A] Bane Act claim may be asserted against private individuals as well as state actors." *Russell v. City & Cty. of San Francisco*, No. C-12-00929-JCS, 2013 WL 2447865, at *15 (N.D. Cal. June 5, 2013).

Here, plaintiffs allege that the County defendants and Aramark entered into a contract that by its design interfered with plaintiffs' statutory rights under the labor code to receive wages for work performed. (Complaint at ¶¶ 21, 25.) They allege that the County defendants threatened punishment such as solitary confinement or refusing to

feed plaintiffs if they did not work to meet Aramark's quotas. (Complaint at ¶¶ 26-27, 30.)

Aramark argues that plaintiffs' Bane Act claim against it fails because plaintiffs do not allege a violation of constitutional rights for which Aramark is liable and because plaintiffs do not allege that Aramark threatened, coerced, or intimidated plaintiffs. (MTD at 17:4-18.)  Aramark's arguments are unpersuasive.

Aramark's first argument applies too narrow a scope to the Bane Act. The Bane Act protects a plaintiff from having *any right* secured by federal or state law interfered with by threats, coercion, or intimidation, not just rights secured by the United States Constitution. Cal. Civ. Code § 52.1 (defendant may not interfere "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, *or of the rights secured by the Constitution or laws of this state . . .*" (emphasis added)). It is not necessary, as Aramark argues, that plaintiffs allege that it interfered with plaintiffs' federal constitutional rights. *Id.* It is sufficient that plaintiffs, as they have here, allege that Aramark and the County defendants interfered with plaintiffs' statutory rights. [6]

Aramark's second argument is also unavailing. Aramark is liable under the Bane Act for the actions of its joint employer where it "knew or should have known about the other employer's conduct and failed to undertake prompt corrective measures within its control." *U.S. Equal Employment Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 641 (9th Cir. 2019). As discussed above, plaintiffs allege sufficient facts for the Court to infer Aramark's knowledge of the County's actions and its encouragement of and/or acquiescence to the misbehavior so that it may meet its quotas. (Complaint at ¶¶ 21, 24-27, 30.)

---

[6] Aramark cites *Chan v. City of Milpitas*, No. 19-cv-01966-NC, 2019 WL 3220253 (N.D. Cal. July. 17, 2019) to support its argument. (MTD at 17:6-9.) However, it is clear from the language its' motion quotes that interference with a statutory right rather than a constitutional right may be the basis for liability under the Bane Act. (*See* MTD at 17:8-9 quoting *Chan*, 2019 WL 3220253, at *7-8 "'[Plaintiff] failed to allege any violation of her Constitutional *or statutory rights*.'") (emphasis added).)

Further, Aramark is liable where it aids and abets the County defendants in violating the plaintiffs' rights by threats, coercion, or intimidation. *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144 (2005) ("California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort."). *See also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998) (discussing hypotheticals where a private actor may be liable under the Bane Act where they are assisted by government actors in violating the rights of others). "Aiding and abetting occurs when one helps another commit a prohibited act." *Reno v. Baird*, 18 Cal. 4th 640, 655–56 (1998). Aid and abet "may fairly be construed to imply an intentional participation *with knowledge of the object to be attained.*" *Casey*, 127 Cal. App. 4th at 1146 (emphasis in original).

Plaintiffs' allegations regarding the scheme under which the defendants secured uncompensated labor are sufficient to allege Aramark is liable under the Bane Act, even where the County was the party that exerted the coercive tactic. Each assisted the other intentionally with knowledge of the object to be attained—uncompensated labor of detainees and prisoners in the County's custody. (Complaint at 21, 25-27, 30.) Defendant's arguments fail.

## V.  Plaintiffs Request Leave to Amend their Complaint Should the Court find Defect in their Allegations.

When a court dismisses a complaint for a deficiency in the pleading that can be cured, it should do so without prejudice. *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017). Plaintiffs can plead additional facts to support their claims or perfect their causes of action, and they request the opportunity to amend their complaint in the event that the Court determines that they do not plead sufficient facts to state claims for relief.

///
///
///
///
///

**CONCLUSION**

For the foregoing reasons, the Court should deny defendant's Motion to Dismiss.

Dated: January 31, 2020

SIEGEL, YEE, BRUNNER & MEHTA

By  /s/EmilyRose Johns
    EmilyRose Johns

Attorneys for Plaintiffs
ARMIDA RUELAS, DE'ANDRE EUGENE
COX, BERT DAVIS, KATRISH JONES,
JOSEPH MEBRAHTU, DAHRYL REYNOLDS,
MONICA MASON and LUIS NUNEZ-
ROMERO