CORTLIN H. LANNIN (Bar No. 266488)
clannin@cov.com
ISAAC D. CHAPUT (Bar No. 326923)
ichaput@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

ERIC C. BOSSET (admitted *pro hac vice*)
ebosset@cov.com
THOMAS I. PLOTKIN (admitted *pro hac vice*)
tplotkin@cov.com
COVINGTON & BURLING LLP
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: +1 (202) 662-6000
Facsimile: +1 (202) 662-6291

*Attorneys for Defendant Aramark Correctional Services, LLC*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

ARMIDA RUELAS; DE'ANDRE EUGENE COX; BERT DAVIS; KATRISH JONES; JOSEPH MEBRAHTU; DAHRYL REYNOLDS; MONICA MASON; LUIS NUNEZ-ROMERO; and all others similarly situated,

Plaintiffs,

v.

COUNTY OF ALAMEDA; GREGORY J. AHERN, SHERIFF; ARAMARK CORRECTIONAL SERVICES, LLC; and DOES 1 through 10,

Defendants.

Civil Case No.: 4:19-CV-07637 JST

**DEFENDANT ARAMARK CORRECTIONAL SERVICES, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Hearing Date: March 4, 2020
Hearing Time: 2:00 p.m.
Hearing Place: Courtroom 6

Honorable Jon S. Tigar

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. PLAINTIFFS FAIL TO STATE A TVPA CLAIM AGAINST ARAMARK .......... 2

A. Plaintiffs Have Failed To State a Claim That Aramark Is Liable Under the TVPA As a Primary Offender. .......... 2

B. Plaintiffs Have Failed To State a Claim That Aramark Is Liable Under the TVPA As a Venture Offender Because They Have Not Identified a Primary Offense. .......... 3

C. Plaintiffs' Allegation That Aramark Knew About and Is Thus Liable for the County Defendants' Allegedly Coercive Tactics Rests on Unreasonable and Unsupportable "Inferences." .......... 4

III. PLAINTIFFS' LABOR CODE CLAIMS MUST BE DISMISSED .......... 6

A. Plaintiffs Cannot Refute Aramark's Showing That Plaintiffs Have No Right to Compensation. .......... 6

B. Even If Plaintiffs Had Been "Employees," Aramark Was Not Their "Employer." .......... 8

1. Plaintiffs Have Not Pled Facts to Show that Aramark Exercised Control Over Their Wages, Hours, and Working Conditions. .......... 9

2. Plaintiffs Have Not Pled Facts to Show That Aramark Suffers or Permits Their Work. .......... 10

3. Plaintiffs Have Not Pled Facts To Show a Common Law Employment Relationship with Aramark. .......... 10

4. Decisions From Other Jurisdictions Are Persuasive. .......... 11

IV. PLAINTIFFS' DERIVATIVE UCL CLAIM SHOULD BE DISMISSED .......... 11

V. PLAINTIFFS FAIL TO STATE A BANE ACT CLAIM AGAINST ARAMARK .......... 11

VI. CONCLUSION .......... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)....................2, 10

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007)....................5

*Bistline v. Parker*
918 F.3d 849 (10th Cir. 2019)....................3, 4

*Boyer v. Becerra*,
No. 17-cv-06063-YGR, 2018 WL 2041995 (N.D. Cal. Apr. 30, 2018)....................9

*Casey v. U.S. Bank Nat'l Ass'n*
127 Cal. App. 4th 1138 (2005)....................12

*Creason v. Singh*
No. 13-cv-03731-JST, 2013 WL 6185596 (N.D. Cal. Nov. 26, 2013)....................2

*Cunha v. IntelliCheck, LLC*
254 F. Supp. 3d 1124 (N.D. Cal. 2017)....................13

*Curry v. Equilon Enters., LLC*
23 Cal. App. 5th 289 (2018)....................10

*E.E.O.C. v. Glob. Horizons, Inc.*
915 F.3d 631 (9th Cir. 2019)....................12

*Haralson v. United Airlines, Inc.*
224 F. Supp. 3d 928 (N.D .Cal. 2016)....................9

*In re Gilead Scis. Sec. Litig.*
536 F.3d 1049 (9th Cir. 2008)....................5, 11

*Jones v. Kmart Corp.*
17 Cal. 4th 329 (1998)....................12

*Lesnik v. Eisenmann SE*
374 F. Supp. 3d 923 (N.D. Cal. 2019)....................5

*Lomita Land & Water Co. v. Robinson*
154 Cal. 36 (1908)....................12

*Martinez v. Combs*
49 Cal. 4th 35 (2010)....................6, 8, 9, 10

*Noble v. Weinstein*
335 F. Supp. 3d 504 (S.D.N.Y. 2018)....................................................................................3

*Novoa v. GEO Grp., Inc.*
No. EDCV 17-2514 JGB (SHKx), 2018 WL 3343494 (C.D. Cal. June 21, 2018) ............................11

*Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*
No. SACV 10-1172-AG, 2011 WL 13153190 (C.D. Cal. May 12, 2011) ..........................................3

*Owino v. CoreCivic, Inc.*
No. 17-CV-1112 JLS (NLS) 2018 WL 2193644 (S.D. Cal. May 14, 2018) ..................................4, 11

*Reno v. Baird*
18 Cal. 4th 640 (1998) ..............................................................................................................12

*Ricchio v. McLean*
853 F.3d 553 (1st Cir. 2017)..........................................................................................................5

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*
48 Cal. 3d 341 (1989) ..............................................................................................................10

*Schneider v. Cal. Dept. of Corrections*
151 F.3d 1194 (9th Cir. 1998) .......................................................................................................2

*United States* v. *Kozminski*
487 U.S. 931 (1988).......................................................................................................................4

**Statutes and Regulations**

Cal. Code Regs., tit. 15, §§ 3000, 3040, 3041.2 ..........................................................................7

Cal. Lab. Code § 1770 ....................................................................................................................8

Cal. Lab. Code § 3370 *et seq*.. ......................................................................................................7

Cal. Penal Code § 2051 *et seq*.. .....................................................................................................7

Cal. Penal Code § 2717.8..........................................................................................................7, 8

Cal. Penal Code Part 3, Title 1........................................................................................................7

California Bane Act, Cal. Civil Code § 52.1 ...........................................................................2, 11, 12

California Equal Pay Act, Cal. Lab. Code § 1197.5 .........................................................................1

California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ..................................2, 11

Trafficking Victims Protection Act, 18 U.S.C. §§ 1589, 1595.................................................1, 2, 3, 4, 6

**Other Authorities**

Cal. Const. Art. 14, sec. 5(a) ....................................................................................................4, 7

California Proposition 139, 1990 Cal. Legis. Serv. ...............................................................1, 6, 7, 8

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................................2

Federal Rule of Civil Procedure 8(a)(2) ............................................................................................9

U.S. Const. amend. XIII.......................................................................................................................3

**I. INTRODUCTION**

In its opening Motion to Dismiss ("Mot."), Aramark Correctional Services, LLC ("Aramark") demonstrated that Plaintiffs have failed to state any viable claims against Aramark. As explained below, Plaintiffs' Opposition ("Opp.") offers nothing to alter this conclusion.

*First*, Aramark established that the Complaint lacks any allegations that Aramark itself coerced Plaintiffs' labor and could be held liable as a "primary perpetrator" under the Trafficking Victims Protection Act ("TVPA"). In response, Plaintiffs allege—for the first time and in a wholly conclusory manner—that Aramark participated in a "scheme" with the County Defendants to coerce Plaintiffs' work. But Plaintiffs do not identify a single paragraph in the Complaint that alleges such a "scheme," and the Court should not credit this belated amendment-by-briefing.

*Second*, Plaintiffs do not dispute that Aramark cannot be held liable as a so-called "venture beneficiary" under the TVPA without a predicate finding that the County Defendants are primary offenders. The law is clear, however, that these Plaintiffs and other incarcerated individuals may not sue the government entities imprisoning them under the TVPA, dooming Plaintiffs' theory of Aramark's venture liability. Separately, Plaintiffs also have failed to allege that Aramark was aware of the allegedly coercive tactics employed by Sheriff's deputies, as they must be to state a claim for venture liability. Rather, Plaintiffs ask the Court to "infer" that Aramark personnel must have witnessed such tactics, even though the Court may not credit such unsupported inferences under controlling law.

*Third*, in response to Aramark's motion, Plaintiffs have abandoned their argument that Proposition 139 requires that these Plaintiffs, as inmates in a county jail, receive compensation for their labor. Instead, they acknowledge both that Proposition 139 left it up to local jurisdictions to adopt rules pertaining to compensation of county inmates and that Alameda County adopted no such ordinance. Because Plaintiffs are not entitled to compensation, their wage-related claims fail as a matter of law. And even were that not the case, Aramark has shown that it does not employ Plaintiffs within the meaning of the California Labor Code.

*Fourth*, Plaintiffs "do not contest the Equal Pay Act arguments raised by Aramark," Opp. at 2, thus conceding that this claim should be dismissed with prejudice.

*Finally*, Plaintiffs' remaining claims fare no better. They acknowledge that their claim under the "unlawful" prong of the UCL must be dismissed if the Court dismisses their other causes of action, and they fail to identify any specific factual allegations supporting their claim under the "unfair" prong of that statute. Similarly, Plaintiffs insist for the first time in their opposition that their Bane Act claim is tethered to a violation of their statutory rights—but they have failed to state a claim that Aramark has violated any such rights. Accordingly, this claim, and Aramark, should be dismissed from the lawsuit.

## II. PLAINTIFFS FAIL TO STATE A TVPA CLAIM AGAINST ARAMARK

Aramark's opening motion established that Plaintiffs have failed to state any claim against Aramark under the TVPA, under either a theory of primary or venture liability. *See* Mot. at 5-8. Plaintiffs have no persuasive response to any of these arguments.

### A. Plaintiffs Have Failed To State a Claim That Aramark Is Liable Under the TVPA As a Primary Offender.

As Aramark explained in its motion, the Complaint lacks any allegations that Aramark is liable as a primary perpetrator under 18 U.S.C. § 1589(a) of the TVPA. *See* Mot. at 3, 6. In response, Plaintiffs' opposition invents a new theory: that Aramark is liable as a primary perpetrator because it allegedly participated in a "scheme with the County defendants that caused plaintiffs to believe they would suffer serious harm or physical restraint." Opp. at 4 (citing Compl. ¶ 26). However, neither Paragraph 26 nor any other paragraph of the Complaint contains allegations of a "scheme," and that word appears nowhere in the Complaint. This Court should reject Plaintiffs' transparent attempt to amend their complaint through briefing, as "[i]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Creason v. Singh*, No. 13-cv-03731-JST, 2013 WL 6185596, at *3 (N.D. Cal. Nov. 26, 2013) (internal quotation marks and citations omitted); *see also Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197, n. 1 (9th Cir. 1998) ("The 'new' allegations contained in the inmates' opposition motion… are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). In any event, a conclusory and unadorned allegation of a supposed "scheme" would be insufficient to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Liability under the TVPA "cannot be

established by association alone," *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018), especially where the Complaint contains no allegation that Aramark knew about the Sheriff's deputies' purported threats.

**B. Plaintiffs Have Failed To State a Claim That Aramark Is Liable Under the TVPA As a Venture Offender Because They Have Not Identified a Primary Offense.**

This leaves only Plaintiff's theory of Aramark's venture liability under 18 U.S.C. § 1589(b). Plaintiffs do not dispute that such a claim must be derivative of a primary offender's liability under § 1589(a). Indeed, as the Tenth Circuit explained in a case that Plaintiffs cite, "a claim against a primary offender . . . is a necessary element for venture liability." *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019); *see also* Opp. at 3 (quoting *Bistline*). Thus, both sides agree that without a cognizable "primary offender" who engaged in unlawful coercion, plaintiffs cannot state a TVPA claim against Aramark for venture liability.[1] Because Plaintiffs cannot state a claim against the County Defendants as primary offenders, their claim against Aramark for venture liability fails as a matter of law.

Courts have squarely held that "neither the term 'perpetrator' nor the term 'whoever' [under § 1595(a), authorizing a civil remedy for violations of § 1589] extend to governmental entities under the TVPA." *Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, No. SACV 10-1172-AG (MLGx), 2011 WL 13153190, at *12 (C.D. Cal. May 12, 2011). Plaintiffs have not cited a single case allowing a prisoner to sue a governmental entity under § 1589. Their reliance upon the Thirteenth Amendment, *see* Opp. at 6, is unavailing, because express exception is made for convicted prisoners, as plaintiffs concede. *See* U.S. Const. amend. XIII; *see also* Opp. at 6 (acknowledging "convicted offenders" can be forced to work).[2]

---

[1] Plaintiffs' argument that they may elect to pursue a civil remedy against either a primary offender or a venture beneficiary under 18 U.S.C. § 1595(a) is a red herring. *See* Opp. at 6 (asserting that "plaintiffs may bring their claim against either or both offenders"). To obtain a civil remedy under § 1595(a), the plaintiff must still prove a predicate violation under § 1589. In other words, regardless of whether Plaintiffs could seek *damages* exclusively from a venture beneficiary, they must (but have failed to) allege venture *liability*, which requires a primary offender.

[2] Most of the Plaintiffs and other prisoners at Santa Rita jail are "persons who are convicted of crimes." Compl. ¶ 19, including Plaintiffs asserting the TVPA claim, *see id.*, ¶ 33 (Ruelas); ¶ 39 (Mason).

Furthermore, plaintiffs rely heavily (*see* Opp. at 4, 6, 7, 15) on *Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS) (S.D. Cal. May 14, 2018), but that case actually ***supports*** the proposition that ***pretrial detainees*** similarly cannot sue the government under § 1589. *See* 2018 WL 2193644, at *6-8. The immigration detainee-plaintiffs in *Owino* made the exact same argument that Plaintiffs advance here about government liability under § 1589. In rejecting their argument, the court observed that "the Supreme Court has recognized that the prohibition against involuntary servitude 'does not prevent the State or Federal Governments from compelling their citizens, by threat of criminal sanction, to perform certain civic duties." *Id.* at *7 (quoting *United States* v. *Kozminski*, 487 U.S. 931, 943-44 (1988)). The court agreed "that the civic duty exception applies to section 1589." *Id.* at *8.[3]

In sum, Alameda County and the Sheriff may lawfully compel Plaintiffs to work in the jail kitchen. The California Constitution authorizes inmate labor programs, *see* Cal. Const. Art. 14, sec. 5(a), and the TVPA does not prohibit them. Because the County Defendants cannot be primary offenders under § 1589(a) as a matter of law, Plaintiffs' derivative claim of venture liability against Aramark under § 1589(b) lacks "a necessary element" and should be dismissed. *Bistline*, 918 F.3d at 871.

**C. Plaintiffs' Allegation That Aramark Knew About and Is Thus Liable for the County Defendants' Allegedly Coercive Tactics Rests on Unreasonable and Unsupportable "Inferences."**

In its motion, Aramark separately demonstrated that venture liability under § 1589(b) is unavailable because Plaintiffs failed to allege express prerequisites for such a claim, including that Aramark "knowingly participated" in conduct prohibited by the TVPA. *See* Mot. at 7-8. In their response, Plaintiffs concede that their Complaint alleges the threats and coercion directed at them were made by County personnel, not Aramark. *See* Opp. at 3 (noting that it is the County "which plaintiffs allege is responsible for the threats and coercion"); 17-18 ("the County defendants threatened punishment such as solitary confinement or refusing to feed plaintiffs"). However, Plaintiffs argue that

[3] The court's separate determination that the civic duty exception did not protect the private entity defendant in *Owino* is inapposite to Aramark's motion. In *Owino*, the private entity owned and operated the immigration detention facility at issue and was sued as a primary perpetrator. *See Owino*, 2018 WL 2193644, at *1. Here, Plaintiffs acknowledge that Aramark does not own or operate the Santa Rita jail. The County and Sheriff own and operate the jail, respectively. *See* Compl. ¶¶ 19-20.

the Court "may infer" that "Aramark witnesses these coercive tactics employed by the Deputies while they supervise plaintiffs during shifts or is otherwise aware of these tactics based on their need to fulfill quotas regardless of plaintiffs' unwilling participation." Opp. at 5. The Court should not credit such speculative inferences, which are both unsupported and unreasonable. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (the Court should not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

Specifically, the Complaint nowhere alleges that Aramark observed, was told of, or was otherwise aware of alleged threats or coercion by Sheriff's deputies. This case is thus distinguishable from those cited by Plaintiffs (*see* Opp. at 4), all of which involved allegations that the venture partner was aware of the threats. *See Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (plaintiff alleged "circumstances in which [the primary perpetrator's] coercive and abusive treatment of [plaintiff] as a sex slave had become apparent to the" venture defendants); *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 953 (N.D. Cal. 2019) (finding allegations sufficient where one venture defendant had "direct involvement in every aspect of the events at issue," including falsifying immigration documents, and the other venture defendant "knew the workers' shifts were extreme" because it "kept records of their entries and exits into their facilities"). The mere allegation that Plaintiffs were assigned to kitchen duty does not support any inferences as to ***how*** they were assigned, much less that Aramark was aware of the supposed "tactics" employed by deputies. Other "factually neutral" explanations exist. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 n. 5 (2007) (requiring a complaint contain "factually suggestive" allegations "to enter the realm of plausible liability"). For example, Plaintiffs may have volunteered for kitchen duty in exchange for reduced sentencing or better meals. Furthermore, even crediting Plaintiffs' allegation that they were "compelled" to work, the State Constitution and California Penal Code authorize inmate labor programs. The existence of undeniably lawful reasons for Plaintiffs' assignment to kitchen duty foreclose their request that the Court "infer" Aramark was aware of the County's allegedly coercive "tactics." In short, Plaintiffs "have not nudged their claims across the line from conceivable to plausible, [and] their complaint must be dismissed." *Id.* at 570.

In a last-ditch effort to resuscitate their TVPA claim, Plaintiffs argue that "Aramark entered into a contract that contemplated the prohibited conduct." Opp. at 8. But the actual contract that Plaintiffs

attached to their opposition brief (in another improper effort to amend the Complaint) does not support this characterization. The conduct prohibited by § 1589 is "forced labor" through coercion or other specified threats. But there is no provision in the contract addressing how the County selects inmates for kitchen duty. Nor does the contract specify that the County may use coercion or threats. In short, nothing in the Aramark contract "contemplated" the alleged threats and coercion referenced in the Complaint. The mere existence of the contract fails to support any inference that Aramark knew of Sheriff's deputies' alleged tactics, and further cannot serve as the "overt act" by Aramark required to state a claim for venture liability under § 1589(b). *See* Mot. at 8.

For all of the foregoing reasons, the TVPA claim against Aramark should be dismissed with prejudice.

## III. PLAINTIFFS' LABOR CODE CLAIMS MUST BE DISMISSED

Plaintiffs' attempts to maintain wage-related claims are squarely foreclosed by Aramark's unrebutted showing that, as inmates in a ***county jail***, ***not a state prison***, Plaintiffs are not entitled to compensation under existing California law. Plaintiffs have no answer to this argument beyond a misdirected reproach of Alameda County for not having passed an ordinance requiring that Santa Rita inmates be compensated. And even if Plaintiffs otherwise ***could*** have invoked the Labor Code, they have not pled facts sufficient to show Aramark would be their employer under the *Martinez* standard.

### A. Plaintiffs Cannot Refute Aramark's Showing That Plaintiffs Have No Right to Compensation.

Aramark demonstrated in its motion that Plaintiffs misapprehend Proposition 139. While Proposition 139 authorized public-private inmate labor programs in California and further provided that inmates in state prisons receive compensation for such labor, it allowed individual municipalities to decide what compensation, if any, to provide for inmates held in county jails. *See* Mot. at 9-10. In response, Plaintiffs have abandoned their prior assertion that the wage-related provisions of Proposition 139 apply to them. *See* Compl. ¶¶ 17-18. Instead, they complain that Alameda County should have passed a municipal ordinance requiring compensation for work performed by Santa Rita inmates. *See* Opp. at 8-9. In other words, the parties agree that no constitutional provision, statute, or municipal ordinance creates any right for Plaintiffs to receive pay for kitchen duty under the County's contract

with Aramark. *See* Opp. at 9-10 (acknowledging that "amendments to the penal code implemented by Proposition 139" cover only "the ***state*** and the entity seeking to utilize prison labor") (emphasis added). This simple uncontested fact requires dismissal of Plaintiffs' wage-related claims with prejudice, because there is no plausible way for Plaintiffs to plead around this issue in an amended complaint.

Plaintiffs' argument that the County should have adopted an ordinance requiring compensation for Santa Rita inmates is irrelevant, and fails to give rise to any claims against Aramark. It also rests on another misreading of the California Constitution. Plaintiffs refer to the following Constitutional language regarding the Joint Venture Program: "Such programs shall be operated and implemented pursuant to statutes enacted by or in accordance with the provisions of the Prison Inmate Labor Initiative of 1990, and by rules and regulations prescribed by the Director of Corrections, and, for county jail programs, by local ordinances." Cal. Const. art. XIV, sec. 5(a). But this clause contains no affirmative requirement that counties adopt ordinances implementing Proposition 139. That Alameda County has decided not to enact such an ordinance is thus not a constitutional violation.

The Labor Code also does not create any right to compensation for prison inmates. Plaintiffs point to case law holding that inmates may be protected by ***workers' compensation*** under the Labor Code. *See* Opp. at 9. But this is the ***only*** section of the Labor Code that addresses inmates. *See* Cal. Lab. Code § 3370 *et seq*. In fact, the Labor Code otherwise conflicts with provisions of the Penal Code, including provisions allowing state prison inmates to be paid below minimum wage and provisions classifying paid inmate work as a privilege, rather than a right. *See, e.g.*, Cal. Code Regs., tit. 15, §§ 3040, 3041.2. Neither statute attempts to reconcile these conflicting standards, meaning that the Labor Code applies exclusively to non-incarcerated persons, and the Penal Code applies exclusively to incarcerated persons, except in the sole context of workers' compensation laws.

Plaintiffs also argue that section 2717.8 of the Penal Code does not exclude county jail inmates from its protections. Opp. at 9-10. As Aramark explained in its motion, however, section 2717.8 is located in Part 3, Title 1 of the Penal Code—which only covers state prisons. Mot. at 10. Indeed, Plaintiffs concede that section 2717.8 refers to Joint Venture contracts between private employers and the ***Department of Corrections***. Opp. at 10. The Department of Corrections is only responsible for state prisons, not county jails. *See* Cal. Penal Code § 2051 *et seq*.; Cal. Code Regs., tit. 15, § 3000. Plaintiffs

acknowledge this fact in their brief, stating: "Statutes addressing the obligations of the Department of Corrections do not apply to detainees in county jails." Opp. 5-6. The provisions of section 2717.8 of the Penal Code therefore have no bearing on Plaintiffs and other Santa Rita jail inmates.

In a final attempt to salvage their Labor Code claims, Plaintiffs point to a reference in the County's contract with Aramark to section 1770 of the California Labor Code. *See* Opp. at 10-11. Their contractual argument again misses the mark. Section 1770 sets forth various requirements for contractors who enter into service agreements with the state or its subdivisions, including the rate of pay that contractors must pay their ***own*** employees performing services under such agreements. That provision is irrelevant to third parties not employed by Aramark. In fact, there is no provision in the Aramark contract attached to Plaintiffs' brief that requires any payment to Santa Rita jail inmates.

In sum, Plaintiffs are not entitled to compensation as a matter of law. This conclusion extinguishes all of their claims under the Labor Code. Indeed, if prison inmates had been entitled to wages under the Labor Code, there would have been no need for Proposition 139 in the first place. And while Proposition 139 amended the Penal Code to provide compensation for state prisoners working in public-private programs, the issue of compensation for county prisoners was left to local authorities. Plaintiffs cite to no applicable Alameda County ordinance, because there is none. Thus, Plaintiffs are no more entitled to payment for performing duties in the kitchen than they would be for performing duties elsewhere at the Santa Rita jail. The Fifth, Sixth, and Seventh Claims should therefore be dismissed with prejudice. Additionally, the Eighth Claim must be dismissed with prejudice because Plaintiffs have abandoned that claim. *See* Opp. at 2.

**B. Even If Plaintiffs Had Been "Employees," Aramark Was Not Their "Employer."**

Because Plaintiffs have no right to compensation under existing California law, they are not "employees" and have no "employer." Even if the law were otherwise, however, the Complaint does not allege facts which, if true, show that Aramark would be their "employer" under the test enunciated in *Martinez v. Combs*, 49 Cal. 4th 35 (2010). *See* Mot. at 10-14.

**1. Plaintiffs Have Not Pled Facts to Show that Aramark Exercised Control Over Their Wages, Hours, and Working Conditions.**

As Aramark established in is motion, beyond a single, conclusory allegation that Plaintiffs worked in the kitchen "under the supervision" of Aramark employees, *see* Compl. ¶ 24, the Complaint does not allege any facts that would establish Aramark "exercises control over the wages, hours, or working conditions" of Plaintiffs. *See Martinez*, 49 Cal. 4th at 64. Rather, Plaintiff's Complaint is replete with allegations indicating that Sheriff's deputies exercise complete control over inmates at Santa Rita jail, as one would expect. *E.g.*, Compl. ¶¶ 26, 27, 30, 74, 77. In their brief, Plaintiffs repeatedly mischaracterize their Complaint in a futile attempt to satisfy the *Martinez* standard. For example, citing Paragraph 22 of their Complaint, Plaintiffs argue that they prepare and package food and clean the kitchen under Aramark's supervision. Opp. at 11. In fact, Paragraph 22 says nothing about Aramark supervision. Plaintiffs argue similarly that Paragraph 30 of the Complaint somehow demonstrates Aramark's control over Plaintiffs because of an alleged need to meet "quotas." Opp. at 11. In fact, Paragraph 30 specifically alleges that Sheriff's deputies, not Aramark, required Plaintiffs to work during the strike. Plaintiffs fare no better citing to Paragraphs 23 and 29 of the Complaint, which summarily allege that "Defendants" set shifts and "deny" Plaintiffs wages. Opp. at 12. Such "group pleading" is insufficient to state a claim. *See Boyer v. Becerra*, No. 17-cv-06063-YGR, 2018 WL 2041995, at *7 (N.D. Cal. Apr. 30, 2018) ("Courts consistently conclude that a complaint which lumps together… multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)."). On the other hand, the Complaint's only specific factual allegations make clear that the Sheriff's deputies—not Aramark—controlled all of Plaintiffs' activities in the jail. *See* Compl. ¶¶ 26, 30.

Both parties cite to *Haralson v. United Airlines, Inc.*, in which this Court stated that a "single conclusory allegation" of supervision is insufficient to state a claim of employment under *Martinez*, and that a "plaintiff must at least allege *some* facts in support of this legal conclusion." 224 F. Supp. 3d 928, 939-40 (N.D. Cal. 2016). The Court dismissed the claim against United Airlines in *Haralson*, and Plaintiffs' claim should fare no better here.

**2. Plaintiffs Have Not Pled Facts to Show That Aramark Suffers or Permits Their Work.**

The crux of the "suffers or permits" standard is an entity's ability to "terminate [the plaintiff] or hire a different person to perform the tasks [the plaintiff] performed." *Curry v. Equilon Enters., LLC*, 23 Cal. App. 5th 289, 311 (2018). As demonstrated in Aramark's motion, beyond a formulaic recitation that Aramark "suffers or permits" their work, Plaintiffs have not alleged any facts showing that Aramark had any role in assigning Plaintiffs to kitchen duty at Santa Rita jail. *See* Mot. at 11-12. In response, Plaintiffs assert that Paragraph 21 of the Complaint alleges Aramark failed to prevent them from working. *See* Opp. at 12. But Paragraph 21 merely parrots the "suffers or permits" language of *Martinez*—the kind of "formulaic recitation . . . [that] will not do." *Iqbal*, 556 U.S. at 678. The other paragraphs Plaintiffs cite (Compl. ¶¶ 22, 23, 29) are equally conclusory and "devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In the end, Plaintiffs concede that "the complaint is silent on hiring and firing." Opp. at 14. This admission is fatal to their claim under the second prong of *Martinez*.

**3. Plaintiffs Have Not Pled Facts To Show a Common Law Employment Relationship with Aramark.**

As described in Aramark's motion, the Complaint similarly fails to plead facts supporting the existence of a common law employment relationship under *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989). *See* Mot. at 12-13. Plaintiffs' response lays bare this fatal deficiency in their pleading. Plaintiffs cite to only two paragraphs of their Complaint, neither of which satisfies *Borello*. *See* Opp. at 14. Paragraph 15 of the Complaint is wholly conclusory, assuming the legal conclusion that Aramark "employed" Plaintiffs, rather than pleading any facts to support such a conclusion. Paragraph 22 merely describes Plaintiffs' duties, and does not mention Aramark at all. Plaintiffs cite to no allegations concerning how "Aramark controlled the manner and means of plaintiff's work," Opp. at 13, and they admit "the complaint is silent on hiring and firing." *Id*. at 14. No viable claim is therefore pled under the *Borello* test.

**4. Decisions From Other Jurisdictions Are Persuasive.**

Aramark observed in its motion that decisions applying the federal Fair Labor Standards Act, if not technically binding under California law, are nonetheless persuasive in that no court applying *any* test has determined that prison inmates are employees. Moreover, other lawsuits filed by prison inmates claiming wages from Aramark have been consistently dismissed. *See* Mot. at 14 & n. 9 (collecting cases). Plaintiffs have no response to those rulings.

Plaintiffs instead cite *Novoa v. GEO Grp., Inc.*, No. EDCV 17-2514 JGB (SHKx), 2018 WL 3343494, at *2 (C.D. Cal. June 21, 2018) and *Owino*, 2018 WL 2193644, in support of their argument that Industrial Wage Order 5 is applicable to Plaintiffs' work. *See* Opp. at 15. But those cases both involved federal civil immigration detention facilities owned and operated by private entity defendants. Here, Plaintiffs admit that the County and Sheriff owned and operated Santa Rita jail, respectively. *See* Compl. ¶¶ 19-20. Plaintiffs fail to show that Aramark is comparable to the defendants in *Novoa* and *Owino*.

## IV. PLAINTIFFS' DERIVATIVE UCL CLAIM SHOULD BE DISMISSED

Plaintiffs do not dispute that their claim under the "unlawful" prong of the UCL rises and falls with their other claims. *See* Opp. at 15-16. Because Plaintiffs have failed to state any other claim against Aramark, their UCL claim under the unlawful prong necessarily fails. *See* Mot. at 15-16.

As to their claim under the "unfair" prong of the UCL, Plaintiffs assert in their opposition that they "are harmed by Aramark's scheme to utilize their labor while not paying them," and that "they are harmed through coercion to work." Opp. at 17. But Plaintiffs' only allegations of coercion are against the County, and in any event the allegations they cite are conclusory at best and cannot support an "unfair" claim under the UCL. *See Gilead*, 536 F.3d at 1055.

## V. PLAINTIFFS FAIL TO STATE A BANE ACT CLAIM AGAINST ARAMARK

Aramark demonstrated in its motion that Plaintiffs have failed to state a claim under the Bane Act, *see* Mot. at 16-17, and Plaintiffs' arguments in response are unavailing. First, Plaintiffs make the puzzling statement that Aramark applied "too narrow a scope to the Bane Act." Opp. at 18. However, Aramark's motion rests on the same "scope" presented in the Complaint, where Plaintiffs allege that defendants interfered "with the rights of plaintiffs, secured by the United States Constitution and the

California Constitution." Compl. ¶ 108. Even crediting the argument Plaintiffs advance for the first time in their opposition—that the basis for their claim is a statutory violation—their Bane Act claim still fails. Aramark has demonstrated that Plaintiffs state no cognizable violation of their statutory rights.

Plaintiffs also argue that Aramark is liable under the Bane Act "for the actions of its joint employer," or is subject to "aid[ing] and abet[ting]" liability. Opp. at 18-19. Plaintiffs offer no case applying either theory in the context of the Bane Act. As to the joint employer theory, Plaintiffs cite a case involving Title VII violations. *See E.E.O.C. v. Glob. Horizons, Inc.*, 915 F.3d 631, 641 (9th Cir. 2019). Plaintiffs offer no explanation for why joint employer liability under Title VII has any bearing on the Bane Act, nor is there any reason why it should. Plaintiffs' aiding and abetting theory fares no better. Two of their cases have nothing to do with the Bane Act, and Plaintiffs do not attempt to explain their relevance beyond stating the general standard for aiding and abetting liability. *See Reno v. Baird*, 18 Cal. 4th 640, 655-56 (1998) (quoting Court of Appeal opinion that discusses aiding and abetting language in the California Fair Employment and Housing Act); *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1141 (2005) (discussing banks' aiding and abetting liability for depositors' breach of fiduciary duty). The third case, *Jones v. Kmart Corp.*, 17 Cal. 4th 329 (1998), does not support an aiding and abetting theory under the Bane Act. Rather, the relevant passage of *Jones* discussed situations in which both a government actor *and* a private actor interfere with an individual's constitutional rights. *See id.* at 334. *Jones* therefore stands for the unremarkable proposition that where multiple individuals violate the Bane Act, each of them may be held responsible.[4]

Plaintiffs further concede that the Complaint alleges no threats or coercion against Plaintiffs by Aramark. *See* Opp. at 17-18 ("[Plaintiffs] allege that the County defendants threatened punishment such as solitary confinement or refusing to feed plaintiffs. . . .").[5] Bane Act liability would require threats or

---

[4] Even assuming that an aiding and abetting theory were cognizable, such a theory "requires participation in a specific primary wrong 'with knowledge of the object to be attained.'" *Casey*, 127 Cal. App. 4th at 1152 (quoting *Lomita Land & Water Co. v. Robinson*, 154 Cal. 36, 47, 97 (1908)). As Aramark has explained, the Complaint does not allege that Aramark had any knowledge of the County's purported tactics.

[5] *See also* Pltffs' Opp. to County's and Sheriff's Mot. to Dismiss at 11 (Dkt. No. 14) ("Plaintiffs allege that punishments and reprisals such as placement in solitary confinement—*punishments and reprisals only County defendants could impose*—were feared results if they refused to work.") (emphasis added).

coercion by Aramark, and the absence of any such allegations is fatal to Plaintiffs' claim. *See* Mot. at 17.

## VI. CONCLUSION

For the foregoing reasons, Aramark's motion to dismiss should be granted. Moreover, all claims asserted against Aramark should be dismissed with prejudice "because any amendment would be futile." *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1140 (N.D. Cal. 2017). As detailed above, Plaintiffs are foreclosed from asserting legally or factually viable claims against Aramark.

DATED: February 7, 2020

COVINGTON & BURLING LLP
ERIC C. BOSSET
CORTLIN H. LANNIN
ISAAC D. CHAPUT
THOMAS I. PLOTKIN

BY: *__/s/ Eric C. Bosset__________________*
Eric C. Bosset

*Attorneys for Defendant*
*Aramark Correctional Services, LLC*