UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ARMIDA RUELAS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>Defendants. | Case No. 19-cv-07637-JST<br><br>**MOTIONS TO DISMISS**<br>Re: ECF Nos. 13, 23 |

Before the Court are motions to dismiss filed by Defendants Alameda County and Sheriff Gregory J. Ahern ("County Defendants"), ECF No. 13, and by Defendant Aramark Correctional Services, LLC ("Aramark"), ECF No. 23.  The Court will grant the motions in part and deny them in part.

## I.      BACKGROUND

### A.      Factual History[1]

Plaintiffs Armida Ruelas, De'Andre Eugene Cox, Bert Davis, Katrish Jones, Joseph Mebrahtu, Dahryl Reynolds, Monica Mason, and Luis Nunez-Romero are or were "pre-trial detainees, detainees facing deportation, federal detainees, and post-conviction prisoners" confined in Alameda County's Santa Rita Jail.  ECF No. 1 ("Compl.") ¶ 1.  Plaintiffs are or were performing "industrial food preparation services and cleaning" for Aramark pursuant to a contract between Aramark and Alameda County.  *Id.*  "Aramark is a private, for-profit company that sells food prepared by prisoners to third parties" outside of Alameda County.  *Id.*  This contract was

---

[1] For the purposes of this motion to dismiss, the Court adopts the following factual allegations from Plaintiffs' complaint.  *Smith v. City of Oakland*, No. 19-CV-05398-JST, ___ F.Supp.3d ___, 2020 WL 2517857, at *2 (N.D. Cal. Apr. 2, 2020)

United States District Court
Northern District of California

1   made possible by California Proposition 139, which allows private companies to hire county jail

2   inmates.  *Id.* ¶ 17.  Alameda County contracted with Aramark "as early as July 1, 2015." *Id.* ¶ 21.[2]

3          Plaintiffs allege that Aramark's contract with Alameda County allows Aramark "to employ

4   persons imprisoned in Santa Rita Jail without compensating them." *Id.* ¶ 21.  Under the contract,

5   "prisoners prepare and package food" in Santa Rita's kitchen "and clean and sanitize the kitchen"

6   after preparation has finished.  *Id.* ¶ 22.  Plaintiffs allege that "male prisoners are assigned to

7   longer, daytime shifts, and female prisoners are assigned to shorter, nighttime shifts." *Id.* ¶ 23.

8   Plaintiffs also claim that they worked "under the supervision of Aramark employees and under

9   guard of County of Alameda Sheriff's Deputies." *Id.* ¶ 24.  Plaintiffs allege that "Sheriff's

10  deputies threaten plaintiffs and other prisoner-employees of Aramark" with "lengthier jail

11  sentences" or "solitary confinement" if they refuse to work or with termination if prisoners "need

12  to take a sick day or are injured." *Id.* ¶ 26.  As a result of these threats, Plaintiffs claim they

13  worked "through illness and injury," sometimes caused by their unsafe working conditions.  *Id.*

14  ¶ 27.

15         In late October 2019, male prisoner workers, including those working for Aramark, staged

16  a worker strike at Santa Rita Jail "to advocate for improved conditions at the jail[.]" *Id.* ¶ 30.

17  Plaintiffs allege that Sheriff's deputies forced women prisoners, including Plaintiffs Ruelas and

18  Mason, to cover the men's shifts "so that Aramark could meet their quotas[.]" *Id.*  Deputies

19  allegedly threatened these women by telling them they would "not be provided meals unless they

20  worked." *Id.*

21         **B.      Procedural History**

22         Plaintiffs filed a complaint on November 20, 2019 on behalf of themselves and the

23  following class:  "All individuals incarcerated in Santa Rita Jail who perform or performed

24  services for ARAMARK CORRECTIONAL SERVICES, LLC in their jail kitchen facility any

25  time during the period that began four years prior to the filing of the original complaint in this

26

27  _____

28  [2] Plaintiffs have requested judicial notice of a declaration filed in a separate lawsuit that attaches a copy of a prior version of Aramark's contract with Santa Rita Jail.  ECF No. 29 at 2.  Because the Court need not address that document in its analysis, it does not consider the request.

action until the final disposition of this action." *Id.* ¶ 42. Plaintiffs additionally seek to certify three subclasses: (1) a "Pretrial Detainee Subclass," represented by Ruelas, Davis, and Mason and comprising pre-trial detainees who perform or performed services for Aramark while incarcerated at Santa Rita Jail, *id.* ¶ 43; (2) the "Women Prisoner Subclass," represented by Ruelas, Jones, and Mason and comprising women who perform or performed services for Aramark while incarcerated at Santa Rita Jail, *id.* ¶ 44; and (3) the "Immigration Detainee Subclass," represented by Nunez-Romero and comprising all detainees awaiting immigration proceedings who perform or performed services for Aramark while incarcerated at Santa Rita Jail, *id.* ¶ 45.

Plaintiffs bring ten claims. First, the pretrial and immigration detainee subclasses allege that County Defendants violated the Thirteenth Amendment by forcing them to work without pay. *Id.* ¶¶ 67-69. Second, the pretrial and immigration detainee subclasses allege that both County Defendants and Aramark violated the federal Trafficking Victims Protection Act ("TVPA") by forcing them to work without pay "under threat of physical punishment and restraint." *Id.* ¶¶ 70-72. Third, the women prisoners subclass alleges that by assigning women inmates shorter shifts at night and assigning male inmates longer shifts during the day, the County violated the Equal Protection Clause of the Fourteenth Amendment. *Id.* ¶¶ 73-77. Fourth, all Plaintiffs allege that County Defendants' failure to provide a meaningful opportunity to be heard before denying Plaintiffs wages was a violation of the Due Process Clause of the Fourteenth Amendment. *Id.* ¶¶ 78-83.

Plaintiffs' fifth through eighth causes of action are claims for violations of the California Labor Code, brought by all Plaintiffs against all Defendants (except for the claim for failure to pay equal wages under California Labor Code Section 1197.5, which is brought solely by the women prisoner subclass). *Id.* ¶¶ 84-99. Plaintiffs bring their ninth claim exclusively against Aramark, for violation of California's Unfair Competition Law ("UCL"). *Id.* ¶¶ 100-06. Lastly, Plaintiffs allege violations of California's Bane Act by both County Defendants and Aramark. *Id.* ¶¶ 107-08. Plaintiffs seek general and special damages, punitive damages, declaratory and injunctive relief, and attorney's fees and costs. *Id.* at 18.

County Defendants moved to dismiss Plaintiffs' complaint on December 13, 2019. ECF

3

No. 13.  Plaintiffs filed an opposition, ECF No. 14, and County Defendants filed a reply, ECF No.

16.  This Court took County Defendants' motion under submission without a hearing.  ECF No.

36.  Aramark moved to dismiss the complaint on January 17, 2020.  ECF No. 23.  Plaintiffs filed

an opposition, ECF No. 28, and Aramark filed a reply, ECF No. 35.  This Court held a hearing on

March 4, 2020.

## II.   JURISDICTION

As Plaintiffs make claims under 42 U.S.C. § 1983 and 18 U.S.C. § 1589, this Court has

subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction

over Plaintiffs' state law claims under 28 U.S.C. § 1367.

## III.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests."  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly,* 550 U.S.

544, 555 (2007) (citation omitted).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Dismissal

under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or

sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.,*

521 F.3d 1097, 1104 (9th Cir. 2008).  The Court must "accept all factual allegations in the

complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

*Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir. 2005).

## IV.   DISCUSSION

County Defendants argue that Plaintiffs' federal claims are barred because they failed to

exhaust their administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA").

ECF No. 13 at 2.  They additionally argue that certain Plaintiffs' state claims are barred because

they failed to exhaust under the California Government Claims Act.  *Id.* at 2-3.  Lastly, County

4

1    Defendants argue that Plaintiffs have failed to state any claims under the California Labor Code or

2    the Bane Act.  *Id.*  Aramark argues that Plaintiffs have failed to state claims under the TVPA, the

3    California Labor Code, the UCL, or the Bane Act.  ECF No. 23 at 8-9.

4        **A.    Federal Claims**

5            **1.    PLRA Exhaustion**

6        County Defendants argue that Plaintiffs' federal claims are barred because the complaint

7    "fails to allege Plaintiffs, or any of them, complied with any administrative remedies available to

8    them regarding the conditions at the Jail," as required by the PLRA.  ECF No. 13 at 12.

9        The PLRA provides that "[n]o action shall be brought with respect to prison conditions

10   under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or

11   other correctional facility until such administrative remedies as are available are exhausted."  42

12   U.S.C. § 1997e(a).  "Exhaustion is a prerequisite to all prisoner suits about prison life, whether

13   they involve general circumstances or particular episodes, and whether they allege excessive force

14   or some other wrong."  *Gaspard v. Hedgpeth*, No. 12-CV-1058-JST (PR), 2013 WL 1819335, at

15   *1 (N.D. Cal. Apr. 30, 2013) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

16       "Failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead

17   and prove.'"  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549

18   U.S. 199, 204, 216 (2007)).  "In the rare event that a failure to exhaust is clear on the face of the

19   complaint, a defendant may move for dismissal under Rule 12(b)(6)."  *Id.*  However, "a plaintiff is

20   not required to say anything about exhaustion in his complaint."  *Id.* at 1169.  County Defendants

21   argue that because Plaintiffs allege exhaustion under the California Government Claims Act but

22   not under the PLRA, their failure to exhaust under the latter is clear from the face of their

23   complaint.  ECF No. 16 at 6.  They cite no authority for this proposition or to counter *Albino*'s

24   holding that Plaintiffs are not required to plead exhaustion.  Accordingly, their motion to dismiss

25   on this ground is denied.

26           **2.    TVPA Claim**

27       The pretrial and immigration detainee subclasses bring a TVPA claim against both County

28   Defendants and Aramark, alleging that they "were forced to perform work for defendants without

pay" and "were and continue to be coerced to work without compensation under threat of physical punishment and restraint."  Compl. ¶ 71.

Subsection (a) of the TVPA imposes liability on primary offenders, or "[w]hoever knowingly provides or obtains the labor or services of a person" by one or a combination of the following four means:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

18 U.S.C. § 1589(a)(1)-(4).  Subsection (b) imposes liability on venture offenders, or any entity that "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in" conduct prohibited by Subsection (a) where that entity knew or acted with "reckless disregard of the fact that the venture has engaged in" the prohibited conduct. *Id.* § 1589(b).  Section 1595(a) authorizes civil remedies for violations of Section 1589.  *Id.* § 1595(a).

Plaintiffs argue that County Defendants are liable as primary offenders and that Aramark is liable as both a primary and a venture offender.  ECF No. 28 at 9-14.  The County does not move to dismiss Plaintiffs' TVPA claim on 12(b)(6) grounds, but Aramark argues that neither it nor County Defendants are liable under either subsection.  ECF No. 23 at 12-14.

### a.      Primary Offender Liability

Aramark argues that it cannot be held liable as a primary offender because, while Plaintiffs allege various threats and coercion by Sheriff's deputies, they do not allege "that Aramark made any threats or coerced Plaintiffs, nor could they plausibly allege such because Aramark has no role in or responsibility for Plaintiffs' conditions of imprisonment at Santa Rita."  ECF No. 23 at 12. In response, Plaintiffs invoke Subsection (a)(4), which prohibits knowingly obtaining labor "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person

6

1    did not perform such labor or services, that person or another person would suffer serious harm or

2    physical restraint." ECF No. 28 at 10. Plaintiffs contend that Aramark's contract with the County

3    constitutes a "scheme . . . that caused [P]laintiffs to believe they would suffer serious harm or

4    physical restraint in the form of solitary confinement or additional time in jail." ECF No. 28 at 10.

5         Plaintiffs cite *Owino v. CoreCivic, Inc.*, No. 17-cv-1112 JLS (NLS), 2018 WL 2193644, at

6    *11 (S.D. Cal. May 14, 2018) for their Section 1589(a) argument. ECF No. 28 at 10. But in that

7    case, civil immigration detainees sued a private company that operated the detention center in

8    which they were housed, alleging that the company had coerced them into performing

9    uncompensated work by threatening solitary confinement if they did not comply. *Owino*, 2018

10   WL 2193644, at *11. Unlike in *Owino*, Aramark does not operate the Santa Rita Jail and

11   Plaintiffs do not allege that Aramark made the threats at issue. Plaintiffs cite no other authority

12   for the proposition that "entering into a contract to obtain uncompensated labor" from an entity

13   "who exert[s] physical control over plaintiffs is unlawful conduct under section 1589(a)(4)." ECF

14   No. 28 at 10. The other cases they cite, which the Court addresses below, involve Section 1589(b)

15   liability. Accordingly, Plaintiffs have failed to allege that Aramark is a primary offender under the

16   TVPA.

17                    **b.    Venture Offender Liability**

18        Plaintiffs next argue that Aramark is liable as a venture offender because it "knowingly

19   receives a financial benefit from its venture with Alameda County." *Id.* Plaintiffs cite *Ricchio v.

20   McLean*, 853 F.3d 553, 556 (1st Cir. 2017), in which the plaintiff alleged a Section 1589(b)

21   violation by claiming that motel owner defendants had (1) established a "venture" with a man who

22   held her captive in his motel room, and (2) "knowingly benefited, that is, 'receiv[ed something] of

23   value,' § 1589(b), through renting space in which [the man] obtained, among other things, forced

24   sexual labor or services from [plaintiff]." ECF No. 28 at 10. The *Ricchio* court held that, by

25   alleging that the motel owners had refused the plaintiff's pleas for help, had seen her captor

26   physically abuse her, and had watched her physical condition deteriorate, the plaintiff had alleged

27   that they "acted, at the least, in reckless disregard of the fact that the venture included such

28   conduct on [the captor's] part." 853 F.3d at 556.

1    Plaintiffs also cite *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 952-53 (N.D. Cal. 2019),

2    in which Tesla and Eisenmann were held liable for a subcontractor's use of coerced immigrant

3    labor in constructing a new Tesla facility.  The *Lesnik* court held that plaintiffs had alleged that

4    Tesla and Eisenmann had "benefited 'financially' or by 'receiving anything of value'" from the

5    subcontractor's labor practices by alleging that those practices "were committed to fulfill a

6    contract signed with Tesla and Eisenmann."  *Id.* at 953.  The court also held that the plaintiffs had

7    alleged "that Eisenmann 'knew or should have known'" about these practices by alleging that

8    Eisenmann had submitted false letters for the workers' visas and occasionally supervised their

9    work.  *Id.*  Likewise, the plaintiffs had adequately alleged Tesla's knowledge by alleging that

10   Tesla knew the workers were performing work prohibited by their visas and without the required

11   licenses and that Tesla kept records of the employees' excessive work hours and job hazards.  *Id.*

12   As in *Lesnik*, Plaintiffs have sufficiently alleged that Aramark financially benefits from a

13   venture with the County via Aramark's contract with the County.  Compl. ¶ 21.  In order to state a

14   claim for venture liability on Aramark's part, however, the Plaintiffs must also have stated a claim

15   of primary liability by the County.  *See Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019)

16   ("We will first address whether plaintiffs have pled facts sufficient to support a claim against a

17   primary offender, because this is a necessary element for venture liability.").  Aramark argues that

18   "Plaintiffs have not stated, and cannot state, a cognizable claim that the County and Sheriff

19   violated § 1589(a), because it is well-settled under California law that '[i]nmates may be required

20   to work in accordance with prison rules.'"  ECF No. 23 at 13 (quoting *Hunter v. Odom*, No. 19-cv-

21   00847-JST, 2019 WL 1560458, at *2 (N.D. Cal. Apr. 10, 2019)).[3]  The Court need not address this

22   argument, however, because Plaintiffs have failed to allege the knowledge or "reckless disregard"

23   required to state a venture liability claim.  *See* 18 U.S.C. §§ 1589(b), 1595(a).

24   Plaintiffs allege that they performed work "under the supervision of Aramark employees

25   and under guard of County of Alameda Sheriff's Deputies."  Compl. ¶ 24.  However, unlike in

---

[3] While the Court does not address Aramark's argument regarding the County's primary liability under the TVPA, it notes that *Hunter* involved "[p]risoners who are duly tried, convicted and sentenced for the commission of a crime," 2019 WL 1560458, at *2, not pretrial and immigration detainees like those who bring the TVPA claim in this case.

8

*Ricchio* and *Lesnik*, Plaintiffs do not allege that Aramark observed the threats by Sheriff's deputies, or that the company kept any records that would reflect these threats. *Id.* ¶ 26. Plaintiffs ask the Court to "infer from these allegations that . . . Aramark witnesses these coercive tactics employed by the Deputies while they supervise plaintiffs during shifts or is otherwise aware of these tactics based on their need to fulfill quotas regardless of plaintiffs' unwilling participation." ECF No. 28 at 11. Such an inference, however, would be too speculative based on the alleged facts. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Accordingly, the Court dismisses Plaintiffs' TVPA claim against Aramark with leave to amend.

### B.    State Law Claims

County Defendants contend that certain Plaintiffs' California Labor Code and Bane Act claims are barred because they did not exhaust their administrative remedies prior to filing suit. ECF No. 13 at 9-10. In the alternative, County Defendants argue that Plaintiffs have not stated Labor Code claims because County Defendants "are not required to pay the Plaintiffs' wages and cannot be held liable for failure to do so or for restitution of wages not paid." *Id.* at 9.

Aramark likewise argues that Plaintiffs' Labor Code claims fail because "[u]nder California law, inmates are not employees, and services they perform in jail are governed by the Penal Code, not the Labor Code," and the Penal Code does not require compensation of inmates in county jails. ECF No. 23 at 8. Even if Plaintiffs were governed by the Labor Code, Aramark argues, they have not pleaded an employment relationship with Aramark. *Id.* at 8-9. Aramark further argues that female Plaintiffs have failed to state a claim of unequal pay and that Plaintiffs' UCL and Bane Act claims also fail. *Id.* at 9.

### 1.    California Government Claims Act Exhaustion

County Defendants move to dismiss Plaintiffs Mebrahtu, Reynolds, Mason, and Nunez-Romero's Labor Code and Bane Act claims for failure to comply with the presentation requirements of the California Government Claims Act. ECF No. 13 at 18-20. The Government Claims Act requires claimants to file a written claim relating to "a cause of action for death or for

9

injury to person or to personal property or growing crops" within sixth months of accrual, and any other claim within one year of accrual.  Cal. Gov. Code § 911.2(a).  "[T]he date of accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented . . . ."  *Id.* § 901.  Section 910 outlines the requirements of a claim, including that the claimant identify the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted."  Cal. Gov. Code § 910(c).  A public entity presented with a sufficient claim "must act within 45 days or the claim is deemed to have been denied."  *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 707 (1989) (citing Cal. Gov. Code § 912.4).  "Once a claim is denied or deemed to have been denied, the claimant may then proceed to file a lawsuit."  *Id.*

The Government Claims Act applies to actions brought for "money or damages."  Cal. Gov. Code § 950.2; *see also City of Los Angeles v. Super. Ct.*, 168 Cal. App. 4th 422, 430 (Cal. Ct. App. 2008)).  In these cases, "failure to file a claim is fatal to the action."  *City of San Jose v. Super. Ct.*, 12 Cal. 3d 447, 454 (1974).  "The policy underlying the claims presentation requirements is to afford prompt notice to public entities. This permits early investigation and evaluation of the claim and informed fiscal planning in light of prospective liabilities."  *Sparks v. Kern Cty. Bd. of Supervisors*, 173 Cal. App. 4th 794, 798 (Cal. Ct. App. 2009).  However, "[t]he act should not be applied to snare the unwary where its purpose has been satisfied."  *City of S. Lake Tahoe Retirees Ass'n v. City of S. Lake Tahoe*, No. 215-cv-02502-KJM (CKD), 2016 WL 4001120, at *5 (E.D. Cal. July 26, 2016) (citing *Elias v. San Bernardino Cty. Flood Control Dist.*, 68 Cal. App. 3d 70, 74 (Cal. Ct. App. 1977)).  For this reason, "a claim need not strictly comply with § 910 in order to be considered a claim."  *Santos v. Merritt College*, No. 07-cv-5227-EMC, 2008 WL 4570708, at *3 (N.D. Cal. Oct. 14, 2008).  Rather, substantial compliance is sufficient.  *Id.*

"Because 'the purpose of [the Government Claims Act] is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation,' *City of San Jose v. Superior Court,* 12 Cal. 3d 447,

455 (1974), 'a claim need not contain the detail and specificity required of a pleading, but need only fairly describe what [the] entity is alleged to have done,' *Connelly v. Cnty. of Fresno,* 146 Cal. App. 4th 29, 38 (Ct. App. 2006)." *Flock v. County of Alameda*, No. 12-CV-01003 NC, 2012 WL 4051120, at *4 (N.D. Cal. Sept. 13, 2012). "It is well-recognized that courts should construe the Government Claims Act liberally in favor of plaintiffs so as not to harshly deny relief to injured parties." *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, No. CIV. 2:09-3441 WBS K, 2010 WL 3633737, at *5 (E.D. Cal. Sept. 14, 2010) (citing *Munoz v. California*, 33 Cal. App. 4th 1767, 1778 (Cal. Ct. App. 1995)).

Plaintiffs first argue that Mebrahtu, Reynolds, Mason, and Nunez-Romero are exempt from the presentation requirements because they are considered "public employees." ECF No. 14 at 11 (citing Cal. Gov. Code § 905(c), which exempts "[c]laims by public employees for fees, salaries, wages, mileage, or other expenses and allowances"). However, Plaintiffs cite no authority for the assertion that inmate-employees are "public employees," which the California Government Code defines as "any person employed by any public agency," except those elected or appointed to office. Cal. Gov. Code § 3501(d). Given that the issue at the center of this lawsuit is whether Plaintiffs' are, in fact, employees, the Court concludes that they may not skirt the Claims Act requirements by invoking this exception.

The Court will now address County Defendants' arguments as to particular claimants.

### a.     Mebrahtu and Reynolds

Plaintiffs Ruelas, Cox, Davis, Jones, Mebrahtu, and Reynolds submitted a claim to the County on August 12, 2019 on behalf of themselves and "all others similarly situated."[4] ECF No. 15-2 at 6.[5] In this claim, Mebrahtu alleges that he "is formerly incarcerated in Santa Rita Jail and

---

[4] The claim was mailed on August 8, 2019 and received on August 12, 2019. ECF No. 15-2 at 5, 9. The parties do not address which date constitutes the date the claim was "presented" to the County pursuant to Section 911.2. Without deciding the issue, the Court uses August 12, 2019 for the purpose of this order.

[5] Plaintiffs filed an unopposed request for judicial notice of this claim and the County's response to it. ECF No. 15. Because Defendants do not question the authenticity of the claim and it is incorporated into the complaint by reference, *see* Compl. ¶ 65, the Court grants this request. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th

United States District Court
Northern District of California

worked as an incarcerated Aramark employee in the jail kitchen for approximately eleven months between 2014 and 2018" and that he "never received any monetary compensation for his labor." *Id.* at 7.  Reynolds alleges that he "is formerly incarcerated in Santa Rita Jail and worked as an incarcerated Aramark employee in the jail kitchen for approximately one year," also without monetary compensation, and that he "sustained cumulative injuries to his legs and lumbar region" as a result of "the demanding working conditions." *Id.*  The County responded to the class claim on August 19, 2019, rejecting "causes of action occurring between February 12, 2019 to August 12, 2019" and returning the claim as untimely insofar as it related to causes of action occurring prior to February 12, 2019. *Id.* at 2.  The County did not identify any other issues with the claim. *Id.*

County Defendants argue that Mebrahtu's claim is time-barred and that Reynolds's claim fails to state the required "date of the accident." ECF No. 13 at 18-19.  Plaintiffs respond that any defects in Mebrahtu and Reynolds's claims are cured by the fact that Ruelas, Cox, Davis, and Jones presented a compliant class claim.[6] ECF No. 14 at 12-13.  Plaintiffs are correct that putative class members need not file individual claims to satisfy the Government Claims Act, *City of San Jose*, 12 Cal. 3d at 457, and Defendants concede as much, ECF No. 16 at 11.  However, they argue that a class claim cannot revive claims made by class representatives that are "time barred" or "otherwise defective." *Id.* at 11-12.

To assess substantial compliance, the Court first looks to whether there is "*some* compliance with *all* of the statutory requirements," and next to whether this compliance is "sufficient to constitute *substantial* compliance[.]" *City of San Jose*, 12 Cal. 3d at 456-57 (emphasis in original).  A class claim "must provide the name, address, and other specified information concerning the *representative* plaintiff and then sufficient information to identify and make ascertainable the class itself." *Id.* at 457 (emphasis in original).  It appears likely that neither Mebrahtu's nor Reynolds's portion of the class claim states the "date . . . of the occurrence or

_____

Cir. 2005).

[6] Defendants do not dispute the sufficiency of Ruelas, Cox, Davis, and Jones's claims.  ECF No. 16 at 11.

transaction which gave rise to the claim asserted" with sufficient precision to serve as representative plaintiffs.  Cal. Gov. Code § 910(c); *see Martinez v. County of Sonoma*, No. 15-cv-01953-JST, 2016 WL 39753, at *4 (N.D. Cal. Jan. 4, 2016) (substantial compliance where class claim provided a "narrowly-defined timeframe" of four months and alleged that named representative's injuries "occurred 'during those periods,' 'daily,' and 'regularly'").  However, because the County did not object to the sufficiency of Mebrahtu or Reynolds's claims in its response to the class claim, the County Defendants have waived this defense.  Cal. Gov't Code § 910.8 ("If . . . a claim as presented fails to comply substantially with the requirements of Sections 910 and 910.2, . . . the board . . . may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein."); *id.* § 911 ("Any defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to the defect or omission as provided in Section 910.8. . . ."); *see also Green v. State Ctr. Cmty. Coll. Dist.*, 34 Cal. App. 4th 1348, 1354 (Cal. Ct. App. 1995) ("If the public entity fails to send this notice, it *waives* any defenses as to the sufficiency of the claim based upon a defect or omission.") (emphasis in original).

The Court agrees with Defendants, however, that Mebrahtu cannot serve as a class representative because he has not sufficiently alleged that he suffered an injury within one year of filing the class claim.  *See* Cal. Gov. Code § 911.2(a).  Accordingly, the Court dismisses Mebrahtu's Labor Code and Bane Act claims against County Defendants with leave to amend.[7]

### b.    Mason and Nunez-Romero

County Defendants argue that Mason and Nunez-Romero's state claims are also barred because Plaintiffs filed this lawsuit before the County responded to Mason and Nunez-Romero's government claim.  ECF No. 13 at 19-20.  In the complaint, Mason and Nunez-Romero allege that

---

[7] Apart from their argument that they fall under the Government Claims Act's exception for public employees, Plaintiffs do not dispute that their Labor Code and Bane Act claims are brought for "money or damages."  Cal. Gov. Code § 950.2; *see also City of Los Angeles v. Super. Ct.*, 168 Cal. App. 4th 422, 430 (Cal. Ct. App. 2008)).  Accordingly, the claim presentation requirement applies to these claims.

United States District Court
Northern District of California

1   they "filed a California Government Claim on their behalf and on behalf of others similarly

2   situated regarding the matters asserted herein . . . on November 8, 2019."  Compl. ¶ 66.  Pursuant

3   to Section 912.4, the County had 45 days to respond to that claim.  Cal. Gov. Code § 912.4.

4   Plaintiffs filed the instant complaint on November 20, 2019, just twelve days later, and do not

5   allege that the County rejected Mason and Nunez-Romero's claim, as required by the Government

6   Claims Act, *see id.* § 945.4.

7           Plaintiffs argue that this defect is not fatal to Mason and Nunez-Romero's claims, citing

8   cases in which "courts have refused to dismiss [prematurely filed complaints] because by

9   submitting the timely claim, 'plaintiffs had substantially complied with the claim presentation

10  requirement."  ECF No. 14 at 15 (quoting *California v. Super. Ct.*, 32 Cal. 4th 1234, 1244 (2004)

11  (listing cases)).  But the cases listed in *Superior Court* hinge on the fact that plaintiffs had

12  "satisfied the purpose behind the [claim presentation] requirement – to give the entity the

13  opportunity to investigate and settle the claim before suit was brought."  32 Cal. 4th at 1244; *see,*

14  *e.g.*, *Cory v. City of Huntington Beach*, 43 Cal. App. 3d 131, 136 (Cal. Ct. App. 1974) ("[T]he city

15  could not have been prejudiced by the premature filing of the action since the complaint was not

16  served until the time period had run."); *Taylor v. City of Los Angeles*, 180 Cal. App. 2d 255, 263

17  (Cal. Ct. App. 1960) ("In the present case, the complaint was not filed too late but, rather, several

18  days before the rejection of the claim. At the time the answer of the city was filed, the city had

19  received every benefit which a provision for rejection prior to suit is intended to serve.").

20          Plaintiffs cite no cases holding that a complaint filed twelve or fewer days after a

21  government claim was filed substantially complied with the claim presentation requirement.

22  Because such a window cannot reasonably be seen as giving the County "the opportunity to

23  investigate and settle the claim before suit was brought," *Super. Ct.*, 32 Cal. 4th at 1244, the Court

24  dismisses Mason and Nunez-Romero's Labor Code and Bane Act claims against County

25  Defendants for failure to comply with the Government Claims Act.  While they may not serve as

26  named Plaintiffs, the Court notes that they may participate in the suit as putative class members,

27  presuming they are similarly situated to other named Plaintiffs.

28

United States District Court
Northern District of California

1

2.        **Labor Code Claims**

2        Plaintiffs make four California Labor Code claims: (1) failure to pay wages, Cal. Labor

3    Code §§ 201, 202, 218; (2) failure to pay minimum wage, *id.* § 1194; (3) failure to pay overtime

4    wages, *id.*; and (4) failure to pay equal wages in violation of the California Equal Pay Act, *id.* §

5    1197.5.  Compl. ¶¶ 84-99.  Plaintiffs argue that they are entitled to wages under California

6    Proposition 139, which allowed for-profit entities to contract with state prisons and county jails for

7    the purpose of using inmate labor.  ECF No. 24-2 at 2[8]; ECF No. 28 at 14.  Plaintiffs also argue

8    that they are entitled to the protections of the Labor Code because they have alleged an

9    employment relationship between themselves, Aramark, and the County.  ECF No. 14 at 8; ECF

10   No. 28 at 17.

11       Aramark moves to dismiss Plaintiffs' Labor Code claims on the ground that, because

12   Plaintiffs are county jail inmates rather than state prisoners, Proposition 139 does not entitle them

13   to compensation for their work.[9]  ECF No. 23 at 15.  Alternatively, Aramark argues that Plaintiffs

14   have not alleged an employment relationship with Aramark.  ECF No. 23 at 16.  County

15   Defendants move to dismiss Plaintiffs' Labor Code claims against them on the grounds that, even

16   if Proposition 139 does require compensation of Plaintiffs, it is Aramark, not the County, that is

17   required to provide that compensation.  ECF No. 13 at 12.

18       a.        **Proposition 139**

19       In authorizing joint employment ventures with for-profit entities, Proposition 139 amended

20   the California Constitution to provide that "[s]uch programs shall be operated and implemented

21   pursuant to statutes enacted by or in accordance with the provisions of the Prison Inmate Labor

22   Initiative of 1990, and by rules and regulations prescribed by the Director of Corrections and, for

23   county jail programs, by local ordinances."  ECF No. 24-2 at 2; Cal. Const. Art. 14 § 5.

24

25
[8] Aramark has filed an unopposed request for judicial notice of Proposition 139, which the Court
26   grants.  ECF No. 24 at 2; *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6
     (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public
27   record").
[9] Aramark also moves to dismiss Plaintiffs' Equal Pay Act claim on the ground that Plaintiffs do
28   not allege unequal pay.  ECF No. 23 at 21.  Plaintiffs concede this argument in their opposition.
     ECF No. 28 at 8.  The Court thus dismisses this claim with leave to amend.

United States District Court
Northern District of California

1    Proposition 139 also amended California Penal Code Sections 2717 *et seq.*, which apply solely to

2    state prisons.  ECF No. 24-2 at 3-4.  One of these amendments provides that "[t]he compensation

3    of prisoners engaged in programs pursuant to contract between the Department of Corrections and

4    joint venture employers for the purpose of conducting programs which use inmate labor shall be

5    comparable to wages paid by the joint venture employer to non-inmate employees performing

6    similar work for that employer."  *Id.* at 4; Cal. Penal Code § 2717.8.

7         While Plaintiffs concede that Proposition 139 did not similarly modify the Penal Code

8    sections applying to county jails, they argue that the Section 2717.8 language is "instructive"

9    when it comes to joint employment ventures with county jails.  ECF No. 28 at 15-16.  Plaintiffs

10   contend that "[w]ithout explicit language to that effect, it cannot be argued that prisoners in jail are

11   excluded from being jointly employed by the county and a private employer and permitted

12   wages."  *Id.* at 16.  In support of this assertion, Plaintiffs cite Proposition 139's purpose section,

13   which focuses on the need to reimburse the state "or counties" for the costs of incarceration as

14   well as to allow prisoners to support their families and assist in their own rehabilitation.  ECF No.

15   24-2 at 2.  Plaintiffs argue that because counties were "explicitly included" in Proposition 139's

16   authorization of joint employment ventures, prisoners in county jails "must be permitted wages."

17   ECF No. 28 at 16.

18        But the one does not follow the other.  In passing Proposition 139, California voters chose

19   to amend the state prison section of the Penal Code to mandate compensation for prisoners but *not*

20   to amend the corresponding Penal Code section for county jails.  Instead, they left the question of

21   compensation for joint employment ventures in county jails up to municipalities.  *See also* Voter

22   Information Guide for 1990, General, ECF No. 29-3 at 67 ("[Proposition 139] allows contracting

23   for the use of local jail inmate labor and provides that such contracts be governed by local

24   ordinances.  However, the measure does not specify the content of the local ordinances.").[10]

25   Plaintiffs point to no local ordinance entitling them to compensation, and the Court has found

26

27   [10] The Court grants Plaintiffs' unopposed request for judicial notice of the 1990 voter guide.  *See*
     ECF No. 29; *Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6; *Chamness v. Bowen*, No. CV 11-
28   01479 ODW (FFMx), 2011 WL 13128410, at *5 (C.D. Cal. Mar. 30, 2011) (granting judicial
     notice of official voter guides).

United States District Court
Northern District of California

1    none.  Filling in this gap with the equivalent of Section 2717.8 for county jails, as Plaintiffs ask

2    the Court to do, would fly in the face of the statutory maxim that "a matter not covered is to be

3    treated as not covered."  Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of

4    Legal Texts 93-100 (2012) (cited in *Shea v. Kerry*, 961 F. Supp. 2d 17, 29 n.3 (D.D.C. 2013))

5    (explaining canon of construction that "[n]othing is to be added to what the text states or

6    reasonably implies (casus omissus pro omisso habendus est)").[11]

### b.    Employment Relationship

8        Plaintiffs argue that, even if Proposition 139 does not establish their right to compensation,

9    they are entitled to the protections of the Labor Code because they have alleged an employment

10   relationship with Aramark and the County.  ECF No. 28 at 17.  But this skips over the question of

11   whether Plaintiffs have a right to compensation underlying their claims for unpaid wages, and, if

12   so, whether the Labor Code provides county jail inmates a means of recovering these wages.

13       Before addressing these questions, the Court distinguishes between two subsets of

14   Plaintiffs: those who have been convicted of crimes and those who have not.  The Court evaluates

15   the claims separately for each group.

### i.    Convicted Plaintiffs

17       It is well established that, absent a specific statutory provision, prisoners who have been

18   "duly convicted" of crimes "do not have a legal entitlement to payment for their work."  *Serra v.*

19   *Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010) (citation omitted).  This is because "the Thirteenth

20   Amendment, a general prohibition against involuntary servitude, . . . expressly excepts from that

21   general prohibition forced labor 'as a punishment for crime whereof the party shall have been duly

22   convicted.'"  *Id.* (quoting U.S. Const. amend., XIII §1).[12]  Where state statutes do create such an

23

24   _____

     [11] As Judge Katzmann notes in his useful treatise on statutory construction, "canons have their
25   limits as guides to adjudication."  Robert Katzmann, <u>Judging Statutes</u> 51 (2014).  The legislative
     history of a statute, for example, is often a better guide to the meaning of that statute than a canon
26   of construction.  *Id.* at 50-54.  In this instance, however, the Court finds no conflict between the
     two.
27
     [12] The Court uses the term "convicted" to encompass all Plaintiffs for whom incarceration at Santa
28   Rita jail, and the ensuring work in its kitchen, was "imposed as legal punishment for a crime."  *See*
     *United States v. Kozminski*, 487 U.S. 931, 943 (1988).

United States District Court
Northern District of California

1   entitlement, "courts have consistently held that such statutes granting inmates a protected property

2   interest in their wages may also limit and define the contours of such interest." *Ward v. Ryan*, 623

3   F.3d 807, 811 (9th Cir. 2010) (collecting cases). California requires that inmates in state prisons

4   be paid for their work and mandates that "in no event shall that compensation exceed one-half the

5   minimum wage provided in Section 1182 of the Labor Code, except as otherwise provided in [the

6   Penal Code]." Cal. Penal Code § 2811; *see Davis v. Villagrana*, No. 1:09-cv-01897-AWI-SMS

7   PC, 2011 WL 318328, at *3 (E.D. Cal. Feb. 1, 2011) (rejecting due process claim for wages

8   higher than those dictated by the Penal Code).

9           When it comes to county jails, however, the Penal Code, like the state constitutional

10   provision amended by Proposition 139, delegates the issue to municipalities. *See* Cal. Penal Code

11   § 4017 (stating that "[a]ll persons confined in the county jail . . . under a final judgment of

12   imprisonment rendered in a criminal action or proceeding [or] . . . as a condition of probation after

13   suspension of imposition of a sentence or suspension of execution of sentence may be required by

14   an order of the board of supervisors or city council to perform labor on the public works or

15   ways"); *id.* § 4019.3 ("The board of supervisors may provide that each prisoner confined in or

16   committed to a county jail shall be credited with a sum not to exceed two dollars ($2) for each

17   eight hours of work done by him in such county jail."). Because Plaintiffs point to no local

18   ordinance entitling them to compensation for their work, they have not demonstrated a "legal

19   entitlement" to such compensation. *Serra*, 600 F.3d at 1196.

20           Even if they had, the Labor Code does not give Plaintiffs who have been convicted of

21   crimes a means of recovering such compensation. Plaintiffs argue that "[n]othing in the language

22   of the California Constitution or the sections of the Penal Code dealing with jails denies prisoners

23   in county jails the protections of the California Labor Code" and that, "absent statutory language

24   to the contrary, prisoners in county jail are not categorically excluded from being employees under

25   the labor code." ECF No. 28 at 15. In support, Plaintiffs cite cases applying the Labor Code's

26   worker's compensation provisions to a worker performing court-mandated community service, *see*

27   *Arriaga v. County of Alameda*, 9 Cal. 4th 1055, 1059 (1995), and to a county jail inmate who had

28   volunteered to work in exchange for a shorter sentence, *Pruitt v. Workmen's Comp. Appeals Bd.*,

United States District Court
Northern District of California

*Nevada Cty.*, 261 Cal. App. 2d 546, 552 (Cal. Ct. App. 1968).  *Id.*  Both cases, however, focus on the constitutional and legislative mandate that worker's compensation be liberally construed. *Arriaga*, 9 Cal. 4th at 1065; *Pruitt*, 261 Cal. App. 2d at 553.  Moreover, the Labor Code specifically provides that "[e]ach inmate of a state penal or correctional institution" is entitled to worker's compensation – which is not at issue in this case.  Cal. Labor Code § 3370(a).

Other than the worker's compensation provisions, the Court has identified just one other section of the Labor Code that explicitly references prisoners or inmates.  *See* Cal. Labor Code § 6304.2 (classifying "any state prisoner engaged in correctional industry" an "employee" for the purposes of the occupational health and safety provisions of the Labor Code).  The Penal Code, meanwhile, presumes that the Labor Code does *not* apply to duly convicted prisoners unless specifically indicated.  As discussed above, the Penal Code caps compensation for state prisoners at "one-half the minimum wage provided in Section 1182 of the Labor Code, except as otherwise provided in [the Penal Code]."  Cal. Penal Code § 2811.  This and other provisions of the Penal Code, *see, e.g.*, *id.* § 2700 (empowering Department of Corrections to require able-bodied prisoners to work as many hours "as shall be prescribed by the rules and regulations of the Director of Corrections"), are flatly inconsistent with the Labor Code.  *See Owino*, 2018 WL 2193644, at *21 (holding that Section 2811 of the California Penal Code "expressly exempts [state prison] inmates from the Labor Code's minimum wage requirements").  So while it may be true, as Plaintiffs contend, that county jail inmates "are not categorically excluded from being employees under the labor code," ECF No. 28 at 15, neither can the Court conclude that they are *included* in the Labor Code unless the Penal Code says so.  Because Plaintiffs point to no portion of the Penal Code indicating that Sections 201, 202, 218, or 1194 of the Labor Code apply to convicted inmates, the Court concludes that these inmates cannot invoke these sections to recover wages.

For this reason, the Court dismisses the convicted Plaintiffs' Labor Code claims.  Because amendment would be futile, dismissal is without leave to amend.  *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

United States District Court
Northern District of California

### ii.      Non-Convicted Plaintiffs

Plaintiffs who have not been convicted of crimes are protected by the Thirteenth Amendment's prohibition against involuntary servitude.  *See McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012).  "[A]lthough a state may subject a pretrial detainee to restrictions and conditions of the detention facility, such conditions may not violate the Constitution."  *Id.*  Forcing someone to work "by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process[,]" violates the Thirteenth Amendment. *Kozminski*, 487 U.S. at 952; *see also McGarry*, 687 F.3d at 511.  Defendants make no arguments as to why, despite this constitutional prohibition, pretrial detainees are not entitled to wages or Labor Code protections.  The Court thus denies the motions to dismiss the claim for failure to pay wages insofar as that claim is made by non-convicted Plaintiffs.[13]

As for these Plaintiffs' Section 1194 claims for failure to pay minimum wage or overtime, the Court must also evaluate whether they meet the employee test laid out in *Martinez v. Combs*, 49 Cal. 4th 35, 49 (2010).  *Martinez* held that the Industrial Welfare Commission's ("IWC") wage orders define an "employer" subject to liability under Section 1194 as a person who "directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person."  49 Cal. 4th at 52, 71, 109 (quoting Wage Order No. 14) (emphasis omitted).  Pursuant to the IWC, "employ" is defined to mean "to engage, suffer, or permit to work."  *Id.* at 57 (quoting Wage Order No. 14).  "To employ, then, under the IWC's definition, has three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship."  *Id.* at 64.  "Any of the three is sufficient to create an employment relationship."  *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1233 (N.D. Cal. 2015).  "While [the] plaintiff is not required to conclusively establish that defendants [a]re her

---

[13] In addition to the pretrial detainee subclass, this category also includes members of the immigration detainee subclass who have not been convicted of crimes.  *See Owino*, 2018 WL 2193644, at *21-22 (holding that civil immigration detainees were employees for the purposes of the California Labor Code because they had not been convicted of a crime, they met the employee test laid out in *Martinez v. Combs*, 49 Cal. 4th 35, 49 (2010), and "Defendant has not demonstrated that the Labor Code, or any case law, specifically exempts alien detainees from the Labor Code").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    joint employers at the pleading stage, [the] plaintiff must at least allege some facts in support of

2    this legal conclusion." *Johnson v. Serenity Transp., Inc.*, 141 F. Supp. 3d 974, 988 (N.D. Cal.

3    2015) (quoting *Hibbs-Rines v. Seagate Techs., LLC*, No. 08-cv-05430-SI, 2009 WL 513496, at *5

4    (N.D. Cal. Mar. 2, 2009)).

5           Under the first *Martinez* prong, "control over 'any one of the three aspects – wages, hours,

6    or working conditions – is sufficient to impute employer liability under California wage and hour

7    law.'" *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 939 (N.D. Cal. 2016) (quoting

8    *Torres v. Air to Ground Servs., Inc.*, 300 F.R.D. 386, 395 (C.D. Cal. 2014)).  "Supervision of the

9    work, in the specific sense of exercising control over how services are performed, is properly

10   viewed as one of the 'working conditions' mentioned in the wage order." *Martinez*, 49 Cal. 4th at

11   76.  However, a "single conclusory allegation . . . that [the plaintiff] was supervised and/or

12   managed by [defendant] employees" is not sufficient to support an inference of control.  *Haralson*,

13   224 F. Supp. 3d at 939-40.

14          Plaintiffs allege that they worked "under the supervision of ARAMARK employees and

15   under guard of COUNTY OF ALAMEDA Sheriff's Deputies." Compl. ¶ 24.  Standing alone, this

16   conclusory allegation does not support an inference of control by Aramark.  *Haralson*, 224 F.

17   Supp. 3d at 939-40.  Plaintiffs' further allegation that "Defendants divide the work day so that

18   male prisoners are assigned to longer, daytime shifts, and female prisoners are assigned to shorter,

19   nighttime shifts," Compl. ¶ 23, provides more support for this inference but constitutes improper

20   group pleading.  *See, e.g.*, *Boyer v. Becerra*, No. 17-cv-06063-YGR, 2018 WL 2041995, at *7

21   (N.D. Cal. Apr. 30, 2018) (citation, internal quotation marks, and alterations omitted) ("Courts

22   consistently conclude that a complaint which lump[s] together multiple defendants in one broad

23   allegation fails to satisfy the notice requirement of Rule 8(a)(2)."); *Fagbohungbe v. Caltrans*, No.

24   13-cv-03801-WHO, 2014 WL 644008, at *3 n.4 (N.D. Cal. Feb. 19, 2014) ("The general

25   allegation regarding 'defendants' is also insufficient on its face because it does not identify which

26   specific defendants . . . .").  Plaintiffs also allege that Aramark sets "quotas," Compl. ¶ 30, but do

27   not explain for what or how these quotas demonstrate Aramark's control over Plaintiffs' working

28   conditions.  Rather, the complaint references these quotas in describing how the Sheriff's deputies

21

forced female prisoners to work in place of male prisoners who were on strike.  *Id.*  Taken

together, these allegations do not sufficiently allege that Aramark exercised control over Plaintiffs'

wages, hours, or working conditions.  While Plaintiffs make more specific allegations about

County Defendants, these allegations go to the ways in which these Defendants allegedly forced

Plaintiffs to work – not the control they had over this work.  Accordingly, Plaintiffs have not

alleged control by County Defendants, either.

Under *Martinez*'s second prong – to suffer or permit to work – "the basis of liability is the

defendant's knowledge of and *failure to prevent* the work from occurring."  49 Cal. 4th at 70.  In

*Martinez*, defendants did not have the power to prevent the plaintiffs from working because a third

party "had the exclusive power to hire and fire [the] workers, to set their wages and hours, and to

tell them when and where to report to work."  *Id.*

Aramark argues that Plaintiffs have not alleged "that Aramark assigned Plaintiffs to

kitchen duty – or could have prevented that assignment."  ECF No. 23 at 18 (citing allegations that

Sheriff's deputies coerced Plaintiffs to work, Compl. ¶¶ 26, 27, 30).  Aramark also quotes

Plaintiffs' opposition to County Defendants' motion to dismiss, in which they argue that

"[County] Defendants . . . make plaintiffs and the putative class's labor possible by selecting

prisoners to work, setting their schedules, and imposing discipline on workers at their discretion."

*Id.* (quoting ECF No. 14 at 6).  Plaintiffs counter that "the defendants share responsibility for a

number of aspects of the scheme that makes plaintiffs' labor possible."  *Id.* at 18-19 (citing Compl.

¶¶ 22, 23, 29).  Yet the portions of the complaint they cite for this joint responsibility improperly

lump Defendants together, as discussed above, giving the Court no basis to infer Aramark's

individual responsibility.  *See Boyer*, 2018 WL 2041995, at *7.  Plaintiffs also argue that the

allegation of a contract between Aramark and the County to provide unpaid labor is sufficient to

demonstrate that Aramark has "ultimate control over [P]laintiffs' work and therefore suffer[s] or

permit[s] plaintiffs to work."  ECF No. 28 at 18.  Plaintiffs cite no authority for this proposition,

however, which cuts against the *Martinez* court's rejection of the argument that the facts that

defendants knew plaintiffs were working and benefitted from their work were sufficient to meet

this prong.  *See* 49 Cal. 4th at 69-70.  Plaintiffs have thus not alleged that they were employees of

Aramark via the second *Martinez* prong.

Plaintiffs have, however, sufficiently alleged that County Defendants suffered or permitted them to work.  Because Plaintiffs were or are inmates confined in Santa Rita Jail, every aspect of their lives was or is controlled by the County, the Sheriff, and their agents.  Plaintiffs allege that Sheriff's deputies both force them to work and "threaten to terminate prisoners' employment if they need to take a sick day or are injured."  Compl. ¶ 26.  This is sufficient to allege that the County Defendants suffer or permit the Plaintiffs to work.  The non-convicted Plaintiffs have thus sufficiently alleged that they were employed by County Defendants for the purposes of Section 1194 and have stated claims against those defendants for failure to pay minimum wage and overtime.

Under the third *Martinez* prong, Plaintiffs can qualify as employees if they allege "a common law employment relationship."  *Ochoa*, 133 F. Supp. 3d at 1235 (citing *Martinez*, 49 Cal. 4th at 64).  According to California common law, the "principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired."  *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989) (citation omitted); *see also Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522 (2014) (quoting *Borello*, 48 Cal. 3d at 357) ("What matters is whether the hirer 'retains all necessary control' over its operations.").  As explained above, Plaintiffs have made no allegations about Aramark's control over their work other than the conclusory allegation that they were supervised by Aramark employees.  This allegation is insufficient to support an inference of a common law employment relationship.

Because Plaintiffs have failed to allege that they were employees of Aramark under any of the *Martinez* prongs, they have not stated Section 1194 claims for failure to pay minimum wage or overtime.  Accordingly, the Court dismisses these claims as to Aramark with leave to amend.

### 3.    UCL Claim

Aramark also moves to dismiss Plaintiffs' UCL claim on the ground that Plaintiffs have not stated any claim under other laws or statutes that could tether a UCL claim.  ECF No. 23 at 21-22; *see Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1132 (N.D. Cal. 2014) ("An act is

1    unlawful under the UCL if it violates another law."); *Langan v. United Servs. Auto. Ass'n*, 69 F.

2    Supp. 3d 965, 983 (N.D. Cal. 2014) (conduct may be found "unfair" if it is "tethered to [a] specific

3    constitutional, statutory, or regulatory provision").  As discussed above, however, Plaintiffs have

4    stated a Labor Code claim against Aramark for failure to pay non-convicted Plaintiffs wages.

5    Because "virtually any state, federal or local law can serve as the predicate for an action under [the

6    UCL]," *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012), the Court

7    concludes that Plaintiffs have stated a UCL claim and denies Aramark's motion to dismiss this

8    claim.

9                    **4.       Bane Act Claim**

10           Lastly, both Aramark and County Defendants move to dismiss Plaintiffs' Bane Act claim.

11   ECF No. 13 at 20; ECF No. 23 at 22.  The County Defendants argue only that Plaintiffs have

12   failed to exhaust under the California Government Claims Act. ECF No. 13 at 20-22.  The Court

13   has already addressed these arguments above.  *See infra* IV.B.1 (dismissing Labor Code and Bane

14   Act claims by Mebrahtu, Mason, and Nunez-Romero for failure to exhaust).  County Defendants

15   additionally argue that the class claim Ruelas, Cox, Davis, Jones, Mebrahtu, and Reynolds

16   submitted to the County on August 12, 2019 did not put the County on notice of a potential Bane

17   Act Claim.  ECF No. 16 at 15-16.  But the 2019 claim stated that the claimants "fear punishment

18   and reprisals, including placement in solitary confinement, if they refuse to work" and put the

19   County on notice that Plaintiffs sought recovery "on the basis of all applicable legal theories."

20   ECF No. 15-2 at 7.

21           County Defendants cite no authority for the proposition that the language in Plaintiffs'

22   claim was insufficient to satisfy the Government Claims Act, and the Court concludes that the

23   claim satisfied the exhaustion requirement.[14]  The Court thus denies County Defendants' motion

24   to dismiss Plaintiffs' Bane Act claim.

25           Next, Aramark argues that Plaintiffs have not alleged either of the required elements for a

26   _____

27   [14] In their reply brief, County Defendants also argue that Plaintiffs have alleged insufficient facts
     to support their Bane Act Claim.  ECF No. 16 at 17.  The Court disregards this argument as it was
28   made for the first time on reply.  *See Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 930 n.6 (N.D.
     Cal. 2015).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Bane Act claim against Aramark.  ECF No. 23 at 22-23.  The necessary elements for a Bane Act

2   claim are "(1) intentional interference or attempted interference with a state or federal

3   constitutional or legal right, and (2) the interference or attempted interference was by threats,

4   intimidation or coercion." *Lawrence v. City and County of San Francisco*, 258 F. Supp. 3d 977,

5   994-95 (N.D. Cal. 2017) (citing *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (Cal. Ct.

6   App. 2015)); *see also* Cal. Civ. Code § 52.1(b)-(c).  The right at issue must be constitutional or

7   statutory.  *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004).

8          Plaintiffs have met the first element by alleging that Aramark intentionally interfered with

9   the non-convicted Plaintiffs' right to wages under the California Labor Code.  As discussed above,

10  however, Plaintiffs' only allegations of force or coercion are by Sheriff's deputies, not Aramark.

11  *See* Compl. ¶¶ 26, 27, 30.  Plaintiffs have thus failed to allege the second element of this claim

12  against Aramark.  Accordingly, the Court dismisses this claim with leave to amend.

13                                    **CONCLUSION**

14         For the foregoing reasons, the Court dismisses Plaintiffs' (1) TVPA claim against

15  Aramark; (2) Labor Code claim for failure to pay wages, but only as it pertains to convicted

16  Plaintiffs; (3) Labor Code claims against County Defendants for failure to pay minimum wage and

17  overtime, but only as they pertain to convicted Plaintiffs; (4) Labor Code claims against Aramark

18  for failure to pay minimum wage and overtime; (5) Equal Pay Act claim; (6) Bane Act claim, but

19  only against Aramark; and (7) Plaintiffs Mebrahtu, Mason, and Nunez-Romero's Labor Code and

20  Bane Act claims against County Defendants.  With the exception of the Labor Code claim for

21  failure to pay convicted Plaintiffs wages as well as Mebrahtu, Mason, and Nunez-Romero's

22  claims, all dismissals are with leave to amend.

23         **IT IS SO ORDERED.**

24  Dated:  June 26, 2020

25                                    _____

26                                    JON S. TIGAR
                                      United States District Judge
27

28