DAN SIEGEL, SBN 056400
ANNE BUTTERFIELD WEILLS, SBN 139845
EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Emails: danmsiegel@gmail.com; abweills@gmail.com;
emilyrose@siegelyee.com

Attorneys for Plaintiffs
ARMIDA RUELAS, DE'ANDRE EUGENE COX,
BERT DAVIS, KATRISH JONES,
JOSEPH MEBRAHTU, DAHRYL REYNOLDS,
MONICA MASON, LUIS NUNEZ-ROMERO,
and SCOTT ABBEY

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMIDA RUELAS; DE'ANDRE EUGENE COX; BERT DAVIS; KATRISH JONES; JOSEPH MEBRAHTU; DAHRYL REYNOLDS; MONICA MASON; LUIS NUNEZ-ROMERO; SCOTT ABBEY and all others similarly situated,<br><br>          Plaintiffs,<br><br>      vs.<br><br>COUNTY OF ALAMEDA; GREGORY J. AHERN, SHERIFF; ARAMARK CORRECTIONAL SERVICES, LLC; and DOES 1 through 10,<br><br>          Defendants. | Case No. 4:19-cv-07637-JST<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT ARAMARK CORRECTIONAL SERVICES, INC.'s MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**Hearing:** October 21, 2020<br>**Time:** 2 p.m.<br>**Courtroom:** Oakland Courthouse, Courtroom 6 – 2nd Floor<br>1301 Clay Street, Oakland, CA 94612<br><br>**Hon. Jon S. Tigar** |

# Table of Contents

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ....................................................................................................................... 2

I.     Plaintiffs' First Amended Complaint Alleges a Trafficking Victims Protection
       Reauthorization Act Violation Against Aramark. ............................................... 3

       A.     Plaintiffs have Standing to Bring their TVPRA Claim. ........................... 4

       B.     Plaintiffs' Allege that Aramark is a Perpetrator of Trafficking. ............5

       C.     Plaintiffs Plead that Aramark Benefitted from its Venture with the County and
              the Sheriff. ............................................................................... 6

II.    The Court's Sound Order Finding that Pretrial Detainees are Covered by the California
       Labor Code Should Not be Disturbed. ............................................................... 9

       A.     Plaintiffs Plead Labor Code Violations. ................................................10

              1.     Proposition 139 Does not Foreclose Plaintiffs' Claims............................10

              2.     Plaintiffs May Seek Damages under the Thirteenth Amendment. .......... 11

              3.     The Penal Code is not Adverse to Plaintiffs Claims for Wages. ..............12

       B.     Plaintiffs' First Amended Complaint Alleges Facts Showing Aramark Suffers or
              Permits Plaintiffs to Work. ...................................................................13

              1.     Plaintiffs Plausibly Allege that Aramark Exercised Control over Some
                     Aspects of Plaintiffs' Work..........................................................14

              2.     Aramark Allows Plaintiffs to Work Knowing they are not Paid, and Fails to
                     Remedy the Wrongdoing Over which they Have Control. ..................... 15

              3.     Plaintiffs Allege a Common Law Employment Relationship. .................16

              4.     Plaintiffs are Entitled to Wages under Labor Code sections 201 and 202.18

III.   Plaintiffs Allege that Aramark Engaged in Unfair Competition. ...................................18

IV.    Plaintiffs Allege Sufficient Facts to Support their Bane Act Claim against Aramark. ...19

V.     The Court Should Allow Further Amendment ...............................................................19

CONCLUSION.................................................................................................................. 20

# Table of Authorities

**Page(s)**

**FEDERAL CASES**

*Ambriz v. Coca Cola Co.*, 2013 WL 5947010, at *1 (N.D. Cal. Nov. 5, 2013)..............................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................2

*Ass'n for L.A. Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986 (9th Cir. 2011)................2

*B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *1 (N.D. Cal. July 30, 2020)..7

*Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269 (11th Cir. 2020) ........................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................2

*Bell v. Wolfish*, 441 U.S. 520 (1979)...............................................................10

*Bent v. Barr*, 445 F. Supp. 3d 408 (N.D. Cal. 2020) ...............................................10

*Betancourt v. Advantage Human Resourcing, Inc.*, 2014 WL 4365074, at *1 (N.D. Cal. Sept. 3, 2014)...........................................................................................15

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) ...................................................14

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011)...............................2

*Carey v. Piphus*, 435 U.S. 247 (1978) .............................................................11

*Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999) ....................................................8

*Copeland v. C.A.A.I.R., Inc.*, 2019 WL 4307125, at *1 (N.D. Okla. Sept. 11, 2019) ....................6

*Copeland v. California State Contractors Licensing Bd.*, 2018 WL 3203040, at *1 (C.D. Cal. Apr. 9, 2018)....................................................................................11

*Dang v. Cross*, 422 F.3d 800 (9th Cir. 2005) ......................................................11

*Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152 (9th Cir 2012)........................................18

*Dennis v. Sparks*, 449 U.S. 24 (1980) .............................................................12

*Erickson v. Pardus*, 551 U.S. 89 (2007) .............................................................2

*Foman v. Davis*, 371 U.S. 178 (1962)...............................................................20

*Gest v. Bradbury*, 443 F.3d 1177 (9th Cir. 2006) .................................................3, 5

*Haralson v. United Airlines*, Inc., 224 F. Supp. 3d 928 (N.D. Cal. 2016) .............................14

*Henry A. v. Willden*, 678 F.3d 991 (9th Cir. 2012)...................................................3

*J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *1 (N.D. Cal. Aug. 20, 2020) ..........................7, 9

*J.C. v. Choice Hotels Int'l, Inc.*, Slip Op., 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020) . 6, 7

*Johnson v. Serenity Transportation, Inc.*, 2016 WL 270952, at *1 (N.D. Cal. Jan. 22, 2016) ...15

*Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003) ..................................................12

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ..................................................3

*Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923 (N.D. Cal. 2019)................................................ 4, 5

*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986) ......................................... 11

*Mendez v. Cty. of Los Angeles*, 897 F.3d 1067 (9th Cir. 2018)................................. 11

*Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017) ................................................ 8

*New York State Nurses Ass'n v. Albany Med. Ctr.*, 2020 WL 4001056, at *1 (N.D.N.Y. July 15, 2020) ........................................................................................................... 5

*Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228 (N.D. Cal. 2015) ............................13

*Owino v. CoreCivic, Inc.*, 2018 WL 2193644, at *1 (S.D. Cal. May 14, 2018).....................passim

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998)............................................... 14

*Ramos v. Sessions*, 293 F. Supp. 3d 1021 (N.D. Cal. 2018)........................................ 10

*Richardson v. City of Antioch*, 722 F. Supp. 2d 1133 (N.D. Cal. 2010) .......................... 19

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ..................................... 3

*STACEY BRIDGES, Plaintiff, v. J.C. POE, JR., et al., Defendants,* 2020 WL 5408915, at *1 (N.D. Ala. Sept. 9, 2020)........................................................................................ 9

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)...................................................... 2

*United States v. Toviave*, 761 F.3d 623 (6th Cir. 2014) ............................................. 8

*Ward v. Caulk*, 650 F.2d 1144 (9th Cir. 1981) ..................................................... 11

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000)........................................................ 3

*Youngberg v. Romeo*, 457 U.S. 307 (1982) ......................................................... 10

*Yuckming Chiu v. Citrix Sys., Inc.,* 2011 W L 6018278, at *1 (C.D. Cal. Nov. 23, 2011) ........... 18

STATE CASES

*Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138 (2005) ................................... 19

*Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163 (2000) ...............................12, 18

*Garcia v. Seacon Logix, Inc.*, 238 Cal. App. 4th 1476 (2015) ....................................17

*Guerrero v. Superior Court*, 213 Cal.App.4th 912 (2013)........................................ 14

*Jones v. Kmart Corp.*, 17 Cal. 4th 329 (1998) .................................................... 19

*Martinez v. Combs*, 49 Cal. 4th 35 (2010)................................................. 13, 15, 16

*Reno v. Baird*, 18 Cal. 4th 640 (1998) ............................................................ 19

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989) ......................... 16

*Tieberg v. Unemployment Ins. App. Bd.*, 2 Cal. 3d 943 (1970) .................................... 16

STATUTES

18 U.S.C. § 1589 .................................................................................................... 4, 8

18 U.S.C. § 1595 ....................................................................................................... 4

*Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011). ................................................. 4

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982) .................................... 8

**TREATISES**

2012 *Moore's Federal Practice* § 12.34[1][a] (2012) ............................................. 2

**OTHER AUTHORITIES**

H.R. CONF. REP. 106-939, 5-6 .................................................................................. 8

**INTRODUCTION**

Plaintiffs Armida Ruelas, De'Andre Eugene Cox, Bert Davis, Katrish Jones, Joseph Mebrahtu, Dahryl Reynolds, Monica Mason, Luis Nunez-Romero, and Scott Abbey worked for Alameda County and Aramark in Alameda County jail's industrial kitchen, making meals for prisoners in Alameda County and in other counties. Plaintiffs, each of whom worked during their detention pretrial, were forced to work under threat of discipline or extended jail sentences and were not compensated for their work. The County and Aramark operate their enterprise by contract, wherein the County relinquishes to Aramark certain controls over the prisoner-employee workforce.

Plaintiffs filed their Complaint against the County of Alameda and Aramark on November 20, 2019. (ECF No. 1.) Each defendant filed a motion to dismiss. On June 26, 2020, the Court issued its order on defendants' motions to dismiss. (ECF No. 46 ("Order").) As to the claims against Aramark, the Court declined to dismiss plaintiffs' Unfair Competition Law claim and granted plaintiffs leave to amend their complaint to allege with more specificity the supervision and control defendant Aramark had over plaintiffs' work. The Court found that plaintiffs who worked as pretrial detainees are covered by the California Labor Code.

Plaintiffs filed their First Amended Complaint on July 10, 2020. (ECF No. 48.) Plaintiffs detailed the control that Aramark had over their working conditions and alleged that Aramark knew of and participated in the threats used to coerce plaintiffs into working without compensation. Plaintiffs pled facts sufficient to advance their claims against Aramark for violations of the Trafficking Victims Protection Reauthorization Act, violations of the Labor Code, and violations of the Bane Act.

Aramark moves to dismiss plaintiff's First Amended Complaint, arguing:

1) Plaintiffs lack standing to bring their TVPA claim against Aramark;

2) Plaintiffs do not allege a TVPA claim against Aramark;

3) Plaintiffs cannot claim the protections of the Labor Code;

4) Plaintiffs do not allege an employment relationship with Aramark;

5) Plaintiffs do not allege a predicate offense for their UCL claim against Aramark; and

6) Plaintiffs do not plead sufficient facts against Aramark for a Bane Act claim.

In response, plaintiffs will show that:

1) Plaintiffs have standing to redress their injuries against Aramark;

2) Plaintiffs plead facts sufficient to state a TVPRA claim against Aramark;

3) Plaintiffs, as pretrial detainees, are protected by the California Labor Code;

4) Plaintiffs and the putative class were or are employees of Aramark;

5) Aramark engaged in unfair competition by utilizing plaintiffs' forced labor to profit; and

6) Plaintiffs plead sufficient facts regarding Aramark's threats to coerce their forced labor.

## ARGUMENT

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Rule 8(a) '*does not impose a probability requirement at the pleading stage*; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556) (emphasis in *Starr*).

"The party moving for dismissal has the burden of showing that no claim has been stated." 2012 *Moore's Federal Practice* § 12.34[1][a] (2012) (citations omitted). "When ruling on a motion to dismiss, [a court] accept[s] all factual allegations in the complaint as true[,] … construe[s] the pleadings in the light most favorable to the nonmoving party," and "draws all reasonable inferences in favor of the plaintiff." *Ass'n for L.A. Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). The relevant inquiry is "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Dismissal is proper only "if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Ass'n for L.A. Deputy Sheriffs*, 648 F.3d at 991. If the motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not

possibly be cured by the allegation of other facts." *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012) (citations omitted).

The Court has subject matter jurisdiction over plaintiffs' claims where plaintiffs allege that "(1) [they have] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006). "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Deficiencies in factual allegations regarding standing may be cured by amendment.

## I.   Plaintiffs' First Amended Complaint Alleges a Trafficking Victims Protection Reauthorization Act Violation Against Aramark.

The Trafficking Victims Protection Reauthorization Act,[1] subsection (a), allows victims of trafficking to seek civil liability against "[w]hoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

---

[1] The Trafficking Victims Protection Act was reauthorized and renamed in 2008. Pub.L. 110-457, Title II, § 222(b)(3), Dec. 23, 2008, 122 Stat. 5068.

18 U.S.C. § 1589(a)(1)-(4). Subsection (b) of section 1589 allows a trafficking victim to seek civil remedies against any entity that "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a)" where the entity operates while "knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means[.]" 18 U.S.C § 1589(b). Section 1589 describes conduct that is subject to criminal penalties. The entity that benefits knowingly or in reckless disregard of the fact that the venture had engaged in conduct prohibited by 1589(a)(1)-(4) is subject to the criminal penalties laid out in 1589(d).

"The TVPRA includes a civil cause of action under 18 U.S.C. § 1595 that allows victims to seek damages and attorneys' fees from the 'perpetrator' of a violation of, *inter alia*, laws prohibiting trafficking and forced labor." *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 951 (N.D. Cal. 2019). "[Section] 1595(a) also extends liability beyond perpetrators to anyone who 'knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known' committed a violation of applicable trafficking and forced labor laws." *Id.* Therefore, to demonstrate civil liability, plaintiffs must show that someone is a perpetrator of trafficking or that someone "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

## A.    Plaintiffs have Standing to Bring their TVPRA Claim.

Aramark argues for the first time in its motion to dismiss plaintiffs' First Amended Complaint that plaintiffs do not have standing to bring their TVPRA claim against Aramark. (Defendant Aramark Correctional Services, LLC's Notice of Motion and Motion to Dismiss First Amended Complaint ("MTD") at 7:22-9:11.) Aramark argues that to have standing, each plaintiff must allege that he or she was personally threatened by or in the presence of an Aramark employee. (MTD 8:1-3.) Aramark asks too much. The victim of trafficking may bring a claim under the TVPRA against the perpetrators. *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011).

1

2    Plaintiffs meet the standing requirements for their TVPRA claim because "(1) [they

3    have] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or

4    imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged

5    action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury

6    will be redressed by a favorable decision." *Gest*, 443 F.3d at 1181 (9th Cir. 2006). Plaintiffs'

7    injuries, as pled, are that they were forced to work for free and under threat of discipline.

8    (First Amended Complaint, ECF No. 48 ("FAC") at ¶ 31.) Plaintiffs allege that "plaintiffs and

9    other prisoner-employees of ARAMARK are coerced to work." (FAC at ¶ 31.) Plaintiffs allege

10   that "Sheriff's deputies threaten plaintiffs and other prisoner-employees of ARAMARK that if

11   they refuse to work, they will receive lengthier jail sentences or be sent to solitary

12   confinement, where they would be confined to a small cell for 22 to 24 hours a day." (FAC at ¶

13   31.) Further, plaintiffs allege that the threats of Sheriff's deputies are made in the presence of

14   Aramark employees and that Aramark also participates in the coercion by threatening to

15   report plaintiffs to Sheriff's deputies for punishment. (FAC at ¶¶ 32-33.) The injury to

16   plaintiffs—being trafficked through forced labor—is direct and particularized. These

17   allegations are sufficient for Article III standing on plaintiffs' TVPRA claim against Aramark.

18       **B.   Plaintiffs' Allege that Aramark is a Perpetrator of Trafficking.**

19       Plaintiffs allege that Aramark perpetrates trafficking in violation of the TVPRA by

20   forcing plaintiffs' labor under the threat that Aramark will report plaintiffs to Sheriffs'

21   deputies for punishment. (FAC at ¶ 33.) Plaintiffs allege that the punishment they are

22   threatened with is solitary confinement or lengthier jail sentences. (FAC at ¶ 31.) A perpetrator

23   is someone who "knowingly . . . obtains the labor or services of a person . . . by means of any

24   scheme, plan, or pattern intended to cause the person to believe that, if that person did not

25   perform such labor or services, that person or another person would suffer serious harm or

26   physical restraint[.]" 18 U.S.C. 1589(a)(4). The threatened harm must be such that it would

27   "compel a reasonable person to perform labor to avoid the harm." *Lesnik,* 374 F. Supp. 3d at

28   952. *See also New York State Nurses Ass'n v. Albany Med. Ctr.*, No. 119CV1265FJSCFH, 2020
     WL 4001056, at *4 (N.D.N.Y. July 15, 2020) ("The question is not whether each individual felt

---

*Ruelas v. County of Alameda,* No. 4:19-cv-07637-JST
Plaintiffs' Opposition to Aramark's Motion to Dismiss - 5

compelled to continue her employment as a result of defendants' conduct, but whether a reasonable person of the same background and in the same circumstances would find that conduct a threat of serious harm sufficient to compel continued work." (internal quotations omitted)). "[T]he plain language of the TVPA brings within its scope for-profit government contractors operating work programs[.]" *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1278 (11th Cir. 2020) (discussing immigration detention facilities).

"At the very least, solitary confinement constitutes serious harm . . . [and] the threat of solitary confinement, sufficiently alleges the means to achieve forced labor." *Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2018 WL 2193644, at *11 (S.D. Cal. May 14, 2018), *reconsideration denied*, 2019 WL 1367815 (S.D. Cal. Mar. 26, 2019). It is not necessary that the perpetrator have the means to impose the discipline. The threat to turn plaintiffs over to an authority for discipline that is an abuse of the law is sufficient. *See Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2019 WL 4307125, at *8 (N.D. Okla. Sept. 11, 2019) ("Plaintiffs argue that, *inter alia*, the fact that [defendant operator of drug rehab] required them to work 'under constant threat of incarceration,' including threatening them with prison if their work was deemed unsatisfactory, or if they were unable to work due to injury, constitutes threatened abuse of law or legal process. The Court agrees. ") Plaintiffs' allegations sufficiently demonstrate that Aramark is liable under the TVPRA as a perpetrator.

### C. Plaintiffs Plead that Aramark Benefitted from its Venture with the County and the Sheriff.

Several Northern District of California cases decided since the Court's Order shed light on plaintiffs' pleading burden under section 1595(a). A plaintiff seeking a civil remedy under section 1595(a) "is not required to allege an overt act in furtherance of a [] trafficking venture in order to sufficiently plead her section 1595 civil liability claim." *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, Slip Op., 2020 WL 3035794, at *1 n. 1 (N.D. Cal. June 5, 2020) ("I agree with the statutory construction analysis in *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019), where the court concluded that applying the 'participation in a venture' definition from the criminal liability section of the TVPRA, section 1591(e)(4), to the civil liability section of the TVPRA, section 1595, would void the 'should have known' language in the civil remedy."). *See also B.M. v. Wyndham Hotels & Resorts, Inc.*, No.

20-CV-00656-BLF, 2020 WL 4368214, at *3 (N.D. Cal. July 30, 2020) ("Accordingly, [plaintiff] is not required to allege an overt act in furtherance of or actual knowledge of a [] trafficking venture in order to sufficiently plead her section 1595 civil liability claim."); *J.B. v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2020 WL 4901196, at *8 (N.D. Cal. Aug. 20, 2020) ("To carry over § 1591's "participation in a venture" definition would impose a heightened *mens rea* standard inconsistent with the plain language of § 1595.").[2] Aramark is therefore liable even absent any overt act in furtherance of the venture.

As the Court did not reach the arguments in its Order, Aramark again argues that it cannot be held liable if the County is not first held liable as the primary perpetrator under the TVPA. (MTD at 10:4-17.) Citing a single unpublished opinion, Aramark argues that the County of Alameda cannot be liable because it was not contemplated as a "perpetrator" or "whoever" in 18 U.S.C. § 1589. (MTD at 10:4-17.) However, plaintiffs may bring their claim against Aramark without bringing their claim against the venture partner. This is illustrated by *J.C.*, *B.M.*, and *J.B.*, all of which are brought solely against the beneficiaries of the trafficking schemes. *See J.C.*, 2020 WL 3035794, at *1 ("In this suit, plaintiff J.C. sues defendants Choice Hotels International, Inc. ("Choice"), Hilton Worldwide Holdings, Inc. ("Hilton") and Marriott International, Inc. ("Marriott") for claims arising from trafficking her at several hotels in California and Virginia."); *B.M.*, 2020 WL 4368214, at *1 ("Plaintiff B.M. is a survivor of sex trafficking. She brings this action against three hotel chains alleging violation of Trafficking Victims Protection Reauthorization Act ('TVPRA') for profiting from her sex trafficking."); *J. B.*, 2020 WL 4901196, at *1 ("Plaintiff brings the following claims against all Defendants: beneficiary liability for participation in sex trafficking venture under the Trafficking Victims Protection Reauthorization Act ('TVPRA').").

---

[2] Section 1591 addresses sex trafficking where section 1589 addresses forced labor. However, both sections are civilly enforced through section 1595. Both criminal sections use "participation in a venture." Compare 18 U.S.C. § 1589(b) *with* 18 U.S.C. § 1591(a)(2). Section 1591 defines "participation in a venture" whereas section 1589 does not. Regardless, these cases interpret the meaning of "participation in a venture" in section 1595, and conclude that no overt act on behalf of the venture partner is required.

A civil remedy is available against the perpetrator **or** the person financially benefitting from the venture. 18 U.S.C. § 1589. The use of "or" indicates that plaintiffs may bring their claim against either or both offenders. Therefore, while plaintiffs must and do plead the County of Alameda's wrongdoing, the plain language of the statute allows a plaintiff to seek civil remedies against either or both the primary offender and the venture partner. Any other interpretation would lead to the absurd result that a private employer that financially benefits from a public entity's trafficking of victims is beyond the reach of the TVPA. The Court should avoid such absurd results "if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

It is widely acknowledged that the TVPA was "passed to implement the Thirteenth Amendment against slavery or involuntary servitude." *United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014). *See also Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017), *as amended* (Mar. 3, 2017); *Miranda-Martinez v. Fed. Corr. Inst. #2*, No. 219CV07742JFWMAA, 2019 WL 5791454, at *5 (C.D. Cal. Sept. 25, 2019), *report and recommendation adopted*, 2019 WL 5784738 (Nov. 4, 2019); *Owino,* 2018 WL 2193644, at *3. Counties undoubtedly may be liable for violations of the Thirteenth Amendment. *Christie v. Iopa*, 176 F.3d 1231, 1234 (9th Cir. 1999) (Counties may be sued under 42 U.S.C. § 1983 for violations of the United States Constitution.) The legislative history of the TVPA demonstrates the legislature's wide-ranging contempt for trafficking, calling it "an evil requiring concerted and vigorous action" and "involving grave violations of human rights". H.R. CONF. REP. 106-939, 5-6. Such clear origins and strong language indicates that the legislature intended the TVPA to be enforceable against any entity, including municipalities, that violate its provisions, or, in the alternative, that the TVPA be enforceable against the private entity financially benefitting from a venture to coerce involuntary labor whether the primary perpetrator is sued or not. Either of these interpretations is consistent with the legislative intent and avoids absurd results.

Finally, even if the County as a municipality cannot be a perpetrator because it is not a person within the meaning of the statute, Sheriff Ahern is a person and can be liable as the perpetrator. *See, e.g.*, *STACEY BRIDGES, Plaintiff, v. J.C. POE, JR., et al., Defendants,* No.

6:19-CV-01399-LSC, 2020 WL 5408915, at *6-9 (N.D. Ala. Sept. 9, 2020) (permitting a TVPRA claim based on joint venture liability to proceed against the chief of police for trafficking that occurred inside the jail.) Plaintiffs' complaint sufficiently alleges that Sheriff Ahern had at least constructive knowledge of the forced labor in the kitchen. (FAC at ¶¶ 27-28.) Constructive knowledge is sufficient in venture liability. *See J. B.*, 2020 WL 4901196, at *9 ("Other courts defining participation under § 1595 have, 'in the absence of direct association,' required 'a showing of a continuous business relationship between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement.' [citations]. The Court agrees with this articulation of the constructive knowledge requirement.").

**II.    The Court's Sound Order Finding that Pretrial Detainees are Covered by the California Labor Code Should Not be Disturbed.**

In the Order on defendants' first motions to dismiss, the Court concluded that pretrial detainees are not excluded from the protections of the California Labor Code. (Order 20:8-10.) The Court referenced *Owino* for support. In *Owino*, the court determined that immigration detainees, as persons who had not been convicted of a crime, were subject to the protections of the California Labor Code because there was no explicit exclusion of detainees in the text of the statute. 2018 WL 2193644, at *21-22. The Court similarly found that pretrial detainees, as persons who had not been convicted of a crime, were not explicitly excluded from the protections of the California Labor Code. (Order 20:8-10.)

Despite the Court's invitation, Aramark cites no authority that holds that pretrial detainees are excluded from the California Labor Code. Rather, Aramark fashions their argument as a plea with the Court to simply reconsider its sound Order. However, Aramark does not cite any persuasive authority that the Labor Code excludes pretrial detainees.

Aramark argues that pretrial detainees should be treated the same as convicted prisoners in the jail when it comes to forced work without pay. (MTD at 12:21-13:4.) However, the Court was clear that the Thirteenth Amendment protects pretrial detainees from being forced to perform labor, ensuring that they cannot be treated the same as convicted prisoners who may be forced to work. (Order at 20:1-11.) The analogy to immigration detainees, as the Court invited, and its reference to *Owino*, rather than convicted prisoners, is a far more apt

comparison. Convicted prisoners may be punished and indeed are confined in jail as a means of punishment. *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). Pretrial detainees and immigration detainees are confined with the essential objective of ensuring their presence in court. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979) ("the essential objective of pretrial confinement is to insure the detainees' presence at trial.") (internal quotations omitted)); *Ramos v. Sessions*, 293 F. Supp. 3d 1021, 1029 (N.D. Cal. 2018) (factors for confinement of immigration detainee are flight risk or danger to the community). Neither may be subject to conditions that amount to punishment. *Bell*, 441 U.S. at 535 (pretrial detainee); *Bent v. Barr*, 445 F. Supp. 3d 408, 416 (N.D. Cal. 2020) (immigration detainee). Both may avail themselves of the Labor Code's protections if they demonstrate that they are employed by the persons for whom they perform work. (Order at 20:9-10 n. 13.)

### A.   Plaintiffs Plead Labor Code Violations.

#### 1.   Proposition 139 Does not Foreclose Plaintiffs' Claims.

The constitutional amendment pursuant to Proposition 139 mandates that the County administer any contracts with private entities like the one at issue here pursuant to local ordinances. Cal. Const. art. XIV, § 5. The County here executed a contract with Aramark without reference to a separate ordinance. (ECF No. 29-2.) The contract, legislatively approved by the Board of Supervisors (Exhibit 1 to Declaration of EmilyRose Johns in support of Plaintiff's Request for Judicial Notice ("Johns Dec.") at 18), sets the terms to which Aramark and the County are bound. The County's approval of the contract was the equivalent of a local ordinance. The contract's section on prevailing wages states "Pursuant to Labor Code Section 1770 et seq., [Aramark] shall pay to persons performing labor in and about Work provided for in Contract not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the Work is performed . . ." (ECF No. 29-2 at W-6-W-7[3].) The phrase "persons performing labor in and about Work provided for in Contract" is broad and explicit.

---

[3] Plaintiffs cite to the internal document page numbers because the ECF filing page numbers are obscured.

Aramark argues that granting pretrial detainees rights to wages under the Labor Code would "circumvent the express intent behind Proposition 139." (MTD at 13:23-24.) However, the express intent of proposition was to reduce the cost of incarceration by allowing prisoners to work and earn money to support their families and pay for their own room, board, and restitution; a purpose that is advanced by paying wages to detainees. (ECF No. 29-3 at 67.) The two are not at odds.

### 2. Plaintiffs May Seek Damages under the Thirteenth Amendment.

Aramark argues that wages are not a remedy available to plaintiffs under the Thirteenth Amendment. (MTD at 15:1-17.) Plaintiffs' private right of action for a violation of the Thirteenth Amendment arises pursuant to 42 U.S.C. § 1983. (FAC at ¶¶ 74-76.) It is well established that section 1983 creates a private right of action for damages against persons who, acting under the color of state law, deprive another of a right or rights secured by federal law. *Mendez v. Cty. of Los Angeles*, 897 F.3d 1067, 1074 (9th Cir. 2018), *cert. denied sub nom. Los Angeles Cty., Cal. v. Mendez*, 139 S. Ct. 1292, 203 L. Ed. 2d 414 (2019) ("A § 1983 claim creates a species of tort liability, with damages determined 'according to principles derived from the common law of torts.'" (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986)). *See also Dang v. Cross*, 422 F.3d 800, 806 (9th Cir. 2005) (punitive damages available under § 1983); *Copeland v. California State Contractors Licensing Bd.*, No. 2:17-CV-08767-GW-KES, 2018 WL 3203040, at *3 (C.D. Cal. Apr. 9, 2018), *report and recommendation adopted*, No. 2:17-CV-08767-GW-KES, 2018 WL 3203069 (C.D. Cal. June 26, 2018) ("There is no private right of action under the Fourteenth Amendment; constitutional claims for damages must be asserted under 42 U.S.C. § 1983.").

Plaintiffs may be awarded compensatory damages, nominal damages, and punitive damages against the constitutional tortfeasor under section 1983. *Carey v. Piphus*, 435 U.S. 247, 257 (1978) (compensatory and nominal damages); *Ward v. Caulk*, 650 F.2d 1144, 1148 (9th Cir. 1981) (punitive damages). Wages are suitable compensatory damages for forced labor.

Aramark argues that plaintiffs did not sue them for a violation of the Thirteenth Amendment so wages as a remedy are not recoverable against it. (MTD at 15:12-17.) This is

incorrect for two reasons. First, plaintiffs seek to hold Aramark liable for their violation of California Business and Professions Code section 17200 *et seq.*, also known as California Unfair Competition Law or "UCL." (FAC at ¶¶ 102-108.) "A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices." *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 173 (2000). Unlawfully withheld wages are recoverable under this equitable action. *Id.* at 177 ("We conclude that orders for payment of wages unlawfully withheld from an employee are also a restitutionary remedy authorized by section 17203.").

Further, while plaintiffs do not explicitly address their Thirteenth Amendment claim to Aramark, the gravamen of their complaint puts Aramark on notice that they too have violated plaintiffs' right to be free from forced labor.[4] Plaintiffs allege that Aramark and the County jointly orchestrated and perform the scheme that utilizes unpaid forced labor in the jail's industrial kitchen. (FAC at ¶¶ 22-30.) "[A] § 1983 action can lie against a private party when 'he is a willful participant in joint action with the State or its agents.'" *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (*quoting Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).[5] Plaintiffs can and will, if provided leave from the Court, allege a Thirteenth Amendment violation against Aramark pursuant to section 1983.

### 3. The Penal Code is not Adverse to Plaintiffs Claims for Wages.

If for no other reason than their contract demands it, Aramark must pay pretrial detainees who "perform[] labor in and about Work provided for in Contract . . ." (ECF No. 29-2 at W-6) The Court found that pretrial detainees are proper beneficiaries of the California

---

[4] "Plaintiffs are not required to allege legal theories." *Fontana v. Haskin*, 262 F.3d 871, 887 (9th Cir. 2001) (noting only that "doing so makes it more likely that the opposing party will have notice and better understanding of what is at issue.").

[5] The Ninth Circuit has recognized at least four criteria to identify state action: "'(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.'" *Id.* (*quoting Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835-36 (9th Cir. 1999)). "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Id.* Here, it is clear from the allegations in plaintiffs' complaint as well as the Sheriff's letter awarding the contract to Aramark that Aramark is a state actor under any or all of the theories of public function, joint action, and/or nexus. (FAC at ¶ 23; Johns Dec. Ex. 2 at 1-2.)

Labor Code absent their exclusion in the language of the Labor Code or case law that demonstrates otherwise. (Order at 20:10-11 n.13.) Aramark does not cite a case or statute excluding pretrial detainees from the provisions of the Labor Code. Rather, Aramark again urges the Court to adopt the economic realities test under the FLSA. (MTD at 16:18-17:10.) The Court must again decline, as the California Supreme Court unequivocally rejected that test in favor of the *Martinez* test. *Owino*, 2018 WL 2193644, at *24 ("The California Supreme Court cannot be much clearer when it said '[i]n no sense is the IWC's definition of the term 'employ' based on federal law.'" (quoting *Martinez v. Combs*, 49 Cal. 4th 35, 66 (2010)).

### B. Plaintiffs' First Amended Complaint Alleges Facts Showing Aramark Suffers or Permits Plaintiffs to Work.

An employer is liable to an employee for its violations of the California Labor Code. The test for an employer-employee relationship in California is laid out in *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010), *as modified* (June 9, 2010). (*See* Order at 20:11-13.) Plaintiffs demonstrate that Aramark is their employer by showing that Aramark (a) "exercise[s] control over the wages, hours or working conditions" or (b) "suffer[s] or permit[s] to work," or (c) "engage[s], thereby creating a common law employment relationship." *Martinez,* 49 Cal. 4th at 64. A joint employer relationship exists if any one of these three tests are satisfied. *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1233 (N.D. Cal. 2015).

Plaintiffs allege that Aramark participates in supervision of employees to make sure they do not violate safety rules. (FAC at ¶ 24.) Aramark supervises the quality and amount of work performed. (FAC at ¶ 24.) It establishes quotas that inform how many prisoner-employees are required to work, how many shifts are required, and when shifts may end. (FAC ¶¶ 24, 25.) Aramark may also fire a prisoner-employee by informing the County that that prisoner-employee may not return to work. (FAC at ¶ 26.) Aramark performs informal evaluations of prisoner-employees to determine who should be assigned to which tasks in the kitchen and who should serve as team leaders. (FAC at ¶ 28.)

In addition to these allegations, the contract between the County of Alameda and Aramark supplies indisputable facts regarding the control Aramark has over prisoner-

employees.[6] Aramark is "responsible for" twelve separate functions. Of particular relevance to the inquiry at hand are the following:

> (3) The planning, scheduling, supervision, and training of all inmate food service workers . . . (5) The effective use of any County Jail Facility ("Jail") "cook-chill" production facility to ensure that it is utilized to its fullest capacity . . . (10) The compliance of all employees and inmate workers under contractor's direction, according to the policies and procedures established by ACSO; particularly those involving security operations[.]"

(ECF No. 29-2 at W-21-W-22.) The facts alleged in plaintiffs' First Amended Complaint and the responsibilities of Aramark as described in their contract with the County demonstrate that Aramark is plaintiffs' employer under either of the three prongs.

### 1.    Plaintiffs Plausibly Allege that Aramark Exercised Control over Some Aspects of Plaintiffs' Work.

Plaintiffs' First Amended Complaint alleges facts that show Aramark exercised control over some aspect of plaintiffs' working conditions. *Haralson v. United Airlines*, Inc., 224 F. Supp. 3d 928, 940 (N.D. Cal. 2016). *See also Castaneda v. Ensign Grp., Inc.*, 229 Cal. App. 4th 1015, 1019 (2014) ("The broad definition of an employer includes 'any person ... who directly *or indirectly, or through an agent or any other person,* employs *or exercises control* over the wages, hours, or working conditions of [an employee].'" (quoting *Guerrero v. Superior Court*, 213 Cal.App.4th 912, 947 (2013) (other citations and modifications omitted) (italics in *Castaneda*)).

Aramark trains prisoner-employees on how to perform their work. (ECF No. 29-2 at W-21-W-22.) Plaintiffs allege that Aramark supervises performance, safety, and the quality and amount of work of prisoner-employee. (FAC at ¶¶ 24, 28; ECF No. 29-2 at W-21-W-22.) Plaintiffs allege that Aramark sets quotas that determine how many prisoner-employees it will need from those selected by the County of Alameda as eligible to work. (FAC at ¶¶ 24, 25.)

---

[6] The Court took judicial notice of the contract. (11:22 fn 5). Further, "[a] district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998), *as amended* (July 28, 1998) *superseded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006) (*quoting Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).

---

*Ruelas v. County of Alameda,* No. 4:19-cv-07637-JST
Plaintiffs' Opposition to Aramark's Motion to Dismiss - 14

Finally, the First Amended Complaint alleges that Aramark has the power to terminate plaintiffs by telling the Sheriff's deputies that prisoner-employees may not return to the kitchen. (FAC at ¶ 26.) These allegations sufficiently allege that Aramark exercises control over plaintiffs working conditions. *See Johnson v. Serenity Transportation, Inc.*, No. 15-CV-02004-JSC, 2016 WL 270952, at *16 (N.D. Cal. Jan. 22, 2016) (allegations that employer had "control over certain of the drivers' daily activities while performing calls" and that employer "is one of [joint employer's] largest customers" leading to the "plausibl[e] infer that the [employer's] removal of drivers from their work route removes the driver from employment at [joint employer]" was sufficient to show control over working conditions under the first *Martinez* prong."). Rather than simply "quality control and maintenance of standards" as Aramark argues (MTD at 19:1-3), plaintiffs' allegations show that Aramark supervises the working conditions "in the specific sense of exercising control over how services are performed . . ." *Martinez*, 49 Cal. 4th at 76. Further, according to the Contract, Aramark is responsible for paying persons who perform work in the scope of the Contract. That plaintiffs cannot allege that Aramark set their wages is not persuasive where Aramark "did not consider whether any were due and owing." *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-CV-01788-JST, 2014 WL 4365074, at *4–6 (N.D. Cal. Sept. 3, 2014). Plaintiffs allege sufficient facts to show an employment relationship under the first *Martinez* prong.

### 2. Aramark Allows Plaintiffs to Work Knowing they are not Paid, and Fails to Remedy the Wrongdoing Over which they Have Control.

"A proprietor who knows that persons are working in his or her business without having been formally hired, or while being paid less than the minimum wage, clearly suffers or permits that work by failing to prevent it, while having the power to do so." *Martinez*, 49 Cal.4th at 69. Plaintiffs First Amended Complaint alleges with specificity the relationship between the County of Alameda and Aramark and demonstrates that Aramark suffers or permits plaintiffs and the putative class to work.

Aramark's sole argument is that plaintiffs' allegations are inconsistent with their argument in opposition to the County's motion to dismiss. (MTD at 19:4-15.) Plaintiffs argued that Sheriff's Deputies "make plaintiffs' labor possible by selecting prisoners to work, setting

their schedules, and imposing discipline on workers at their discretion." There is nothing inconsistent with this argument and the facts alleged in plaintiffs' First Amended Complaint and with the contents of the Contract between the County of Alameda and Aramark that describes Aramark's control over training, assignment to work in the kitchen and within the kitchen, supervision, and firing. As the Court found in its Order, "[b]ecause Plaintiffs were or are inmates confined in Santa Rita Jail, every aspect of their lives was or is controlled by the County, the Sheriff, and their agents." (Order at 23:3-4.)

Plaintiffs allege that the Sheriff's Deputies determine eligibility to work and that Aramark determines how many prisoner-employees it needs and assigns them to work assignments in the kitchen. (FAC at ¶¶ 25; 28.) Plaintiffs also allege that Aramark can terminate employment of prisoner-employees. (FAC at ¶ 26.) It is consistent and logical that Aramark's power is enforced by the Sheriff's Deputies. (Order at 23:3-4.) Plaintiffs' allegations are not inconsistent or foreclosed by their argument regarding the control that Sheriff's Deputies exercise over them. These consistent allegations demonstrate that Aramark knows that prisoner-employees are working and not being paid, and that they have the power to prevent it, not insignificantly by paying workers as they agreed to do in the Contract or by using their power to terminate workers who were not hired or paid properly by the County.

### 3.   Plaintiffs Allege a Common Law Employment Relationship.

Plaintiffs' allegations demonstrate a common law employment relationship with Aramark, sufficient to meet the third prong of *Martinez*. 49 Cal. 4th at 64. "'[T]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired . . .'" *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989) (quoting *Tieberg v. Unemployment Ins. App. Bd.*, 2 Cal. 3d 943, 946 (1970)). "[T]he right to control work details is the 'most important' or 'most significant' consideration." *S. G. Borello & Sons, Inc.*, 48 Cal. 3d at 350. Further, the right of the employer to fire the employee at will is "strong evidence of an employment relationship." *Id.* (internal citations, quotations, and modifications omitted.)

Plaintiffs allege that Aramark supervises the quality and amount of work performed by prisoner-employees and monitor performance. (FAC at ¶¶ 24, 25, 28.) Aramark establishes

quotas that dictate how the work day will proceed, including how long a shift may need to be for that day. (FAC at ¶ 25.) Finally, Aramark may terminate prisoner employees. (FAC at ¶ 26.) Plaintiffs' allegations demonstrate how Aramark controls the manner and means of accomplishing the work.

Aramark argues that plaintiffs fail to explain how Aramark's quotas control the manner and means of the work. As demonstrated in the preceding paragraph, this allegation does not stand alone. However, plaintiffs do explain how quotas control the manner and means of work where they allege that the quotas "dictate how much work prisoners must complete before their shift ends," "how many prisoner-employees are required to work and how many shifts are required." (FAC at ¶ 25.) Aramark controls the manner and means of accomplishing the desired result because they dictate the shift lengths, make assignments for the workday, and retain the power to terminate prisoner-employees. *Garcia v. Seacon Logix, Inc.*, 238 Cal. App. 4th 1476, 1485 (2015) (finding an employment relationship where the employer required employees to arrive at specific times, employer controlled assignments, and employer could refuse work to employees).

Aramark notes that plaintiffs allege that they are under the guard of Sheriffs' Deputies when they work in the kitchen, but Aramark makes no argument regarding how this fact changes their employment relationship with plaintiffs. (MTD at 19:23-27.)[7] Indeed, that Aramark avails itself of the coercive nature of incarceration to achieve their profit goals supports Aramark's liability.

Under either prong of the Martinez test, plaintiffs demonstrate that Aramark is their employer.

///

---

[7] Contrary to Aramark's characterization, the First Amended Complaint does not allege that Aramark "may interact with inmates only 'with guidance from COUNTY OF ALAMEDA.'" (MTD at 19:23-25.) Aramark's parsing of plaintiffs' allegation in this manner misleads the Court. The allegation to which Aramark refers states, "Defendant ARAMARK, with guidance from the COUNTY OF ALAMEDA *on classification status*, assigns prisoner-employees to their specific tasks, such as working in the scullery, working on the assembly lines, and sanitation." (FAC at ¶ 28 (emphasis added).) That the County remains responsible for classification and advises Aramark about classification status of prisoner-employees is simply "common sense."

---

4.    **Plaintiffs are Entitled to Wages under Labor Code sections 201 and 202.**

"Under California Labor Code sections 201 and 202, employers are required to pay employees unpaid earned wages immediately upon termination, upon resignation if the employees resign after giving at least a 72–hour notice of resignation, and within 72 hours of giving notice of resignation if the employees do not give at least a 72–hour notice. *Ambriz v. Coca Cola Co.*, No. 13-CV-03539-JST, 2013 WL 5947010, at *7 (N.D. Cal. Nov. 5, 2013). Aramark argues that plaintiffs do not allege facts sufficient to demonstrate that they are entitled to wages pursuant to California Labor Codes sections 201, 202, and 218. (MTD at 20:3-18.) However, plaintiffs allege that they worked for Aramark, provide the approximate dates during which they worked, and allege that they were not paid any wages at all. (FAC at ¶¶ 30, 40-48.) Whether they were "terminated" or "resigned" is immaterial as the time for Aramark to pay plaintiffs "unpaid earned wages" has passed under any either circumstance. Plaintiffs do not need to allege more. *Ambriz,* 2013 WL 5947010, at *4 ("The Court finds that Plaintiff is not required to allege the non-existence of something, such as meal breaks, with any greater specificity than he has done here, because 'there is no more factual content Plaintiff *could* have alleged.'" (quoting *Yuckming Chiu v. Citrix Sys., Inc.,* No. 11–cv–1121–DOC, 2011 W L 6018278, at *3 (C.D. Cal. Nov. 23, 2011) (emphasis in original)).

III.    **Plaintiffs Allege that Aramark Engaged in Unfair Competition.**

As the Court acknowledged in its Order, "virtually any state, federal, or local law can serve as the predicate action under the [UCL].'" (Order at 24:3-8 (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir 2012)).) Aramark violates plaintiffs' constitutional and statutory rights to get an unfair advantage. Plaintiffs' First Amended Complaint adds allegations that demonstrate Aramark's employment relationship with plaintiffs. (FAC at ¶¶ 24-28.) As their employer, Aramark violated plaintiffs' rights under the Labor Code. Violation of the Labor Code is a sufficient predicate offense. *Cortez*, 23 Cal. 4th at 177 ("The employer has acquired the money to be paid by means of an unlawful practice that constitutes unfair competition as defined by section 17200.").

///

**IV.     Plaintiffs Allege Sufficient Facts to Support their Bane Act Claim against Aramark.**

Aramark interfered with plaintiffs' right to compensation under the Labor Code and with their right to be free from forced labor under the Thirteenth Amendment by threats, coercion and intimidation. Labor Code violations are a statutory right within the meaning of the Bane Act. Plaintiffs allege in their First Amended Complaint that Aramark is present for the threats issued against plaintiffs by the Sheriffs' deputies. (FAC at ¶ 32.) Plaintiffs also allege that Aramark employees threaten to turn plaintiffs over to the Sheriffs' deputies for discipline. (FAC at ¶ 33.) Aramark's threats are sufficient where "a reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat of violence." *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010). Threats of solitary confinement, where a person is confined for 22-24 hours a day, for failing to work is sufficient to meet this element. *Owino*, 2018 WL 2193644, at *11.

Aramark is further liable where it aids and abets the County defendants in violating the plaintiffs' rights by threats, coercion, or intimidation. *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144 (2005) ("California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort."). *See also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998) (discussing hypotheticals where a private actor may be liable under the Bane Act where they are assisted by government actors in violating the rights of others). "Aiding and abetting occurs when one helps another commit a prohibited act." *Reno v. Baird*, 18 Cal. 4th 640, 655-56 (1998). Aid and abet "may fairly be construed to imply an intentional participation *with knowledge of the object to be attained.*" *Casey*, 127 Cal. App. 4th at 1146 (emphasis in original). Aramark is present for the threats made by deputies in furtherance of their goal to force plaintiffs to perform unpaid labor in the kitchen.

**V.     The Court Should Allow Further Amendment.**

Aramark raises several new arguments in their motion to dismiss plaintiff's First Amended Complaint. Should the Court find that any claims in plaintiffs' First Amended Complaint should be dismissed, particularly where it is based on new argument raised by Aramark, the Court should grant plaintiffs' leave to amend to cure the defect. *Foman v. Davis*,

371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.") Further amendment would not be futile, and plaintiffs should be permitted to test their claims on the merits.

**CONCLUSION**

For the foregoing reasons, the Court should deny defendant's Motion to Dismiss Plaintiffs' First Amended Complaint.


Dated: September 18, 2020

SIEGEL, YEE, BRUNNER & MEHTA


By  /s/EmilyRose Johns
    EmilyRose Johns

Attorneys for Plaintiffs
ARMIDA RUELAS, DE'ANDRE EUGENE COX, BERT DAVIS, KATRISH JONES, JOSEPH MEBRAHTU, DAHRYL REYNOLDS, MONICA MASON, LUIS NUNEZ-ROMERO, and SCOTT ABBEY