1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    ARMIDA RUELAS, et al.,                    Case No. 19-cv-07637-JST

8                    Plaintiffs,
                                               **AMENDED ORDER GRANTING IN**
9          v.                                  **PART AND DENYING IN PART**
                                               **DEFENDANTS' MOTIONS TO**
10   COUNTY OF ALAMEDA, et al.,                **DISMISS**

11                   Defendants.               Re: ECF Nos. 51, 52

12

13         Before the Court are motions to dismiss the first amended complaint filed by Defendants

14   Alameda County and Sheriff Gregory J. Ahern ("County Defendants"), ECF No. 51, and

15   Defendant Aramark Correctional Services, LLC ("Aramark"), ECF No. 52.  The Court will deny

16   the motions in part and grant them in part.

17   **I.     BACKGROUND**

18          **A.     Factual History[1]**

19         Plaintiffs Armida Ruelas, De'Andre Eugene Cox, Bert Davis, Katrish Jones, Joseph

20   Mebrahtu, Dahryl Reynolds, Monica Mason, Luis Nunez-Romero, and Scott Abbey are or were

21   "pre-trial detainees, detainees facing deportation, [and] federal detainees" confined in Alameda

22   County's Santa Rita Jail.  First Amended Complaint ("FAC"), ECF No. 48 ¶ 1.  Plaintiffs are or

23   were performing "industrial food preparation services and cleaning" for Aramark pursuant to a

24   contract between Aramark and Alameda County.  *Id.*  "Aramark is a private, for-profit company

25   that sells food prepared by prisoners to third parties" outside of Alameda County.  *Id.*  This

26

27   _____
     [1] For purposes of these motions, the Court accepts as true the factual allegations of Plaintiffs' first
28   amended complaint.  *Smith v. City of Oakland*, No. 19-cv-05398-JST, __ F. Supp. 3d __, 2020
     WL 2517857, at *2 (N.D. Cal. Apr. 2, 2020).

*United States District Court*
*Northern District of California*

1   contract was made possible by California Proposition 139, which allows private companies to hire

2   county jail inmates. *Id.* ¶ 18. Alameda County contracted with Aramark "as early as July 1,

3   2015." *Id.* ¶ 22.

4        Plaintiffs allege that Aramark's contract with Alameda County allows Aramark "to employ

5   persons imprisoned in Santa Rita Jail without compensating them." *Id.* Under the contract,

6   "[p]risoners prepare and package food" in Santa Rita's kitchen "and clean and sanitize the

7   kitchen" after preparation has finished. *Id.* ¶ 23. Plaintiffs allege that "Aramark employees

8   manage the kitchen operation and observe the Sheriff's deputies' supervision of the prisoner-

9   employees." *Id.* Employees of Aramark "supervise the quality and amount of work that prisoners

10  accomplish" and "supervise prisoner-employee conduct and report misconduct to the deputies for

11  discipline." *Id.* ¶ 24. Further, Aramark "establishes quotas for prisoners that dictate how much

12  work prisoners must complete before their shift ends" and "determines from its quotas how many

13  prisoner-employees are required to work and how many shifts are required." *Id.* ¶ 25.

14       Plaintiffs allege that County Defendants may "remove [prisoner-employees'] eligibility to

15  work in the jail and subject them to disciplinary action" if Sheriff's deputies are "displeased with

16  the quality or quantity of the work performed or the conduct of a prisoner-employee." *Id.* ¶ 26.

17  Plaintiffs allege that "if Aramark is displeased with a prisoner-employee, it can tell the County that

18  the prisoner-employee may not return to work for Aramark." *Id.* County Defendants and

19  Aramark "arranged to divide the work day so that male prisoners are assigned to longer, daytime

20  shifts, and female prisoners are assigned to shorter, nighttime shifts." *Id.* ¶ 27. Plaintiffs allege

21  County Defendants "determine which prisoners are eligible to work and place them in worker

22  housing units," and Aramark "assigns prisoner-employees to their specific tasks." *Id.* ¶ 28.

23  Plaintiffs allege that "Sheriff's deputies threaten plaintiffs and other prisoner-employees of

24  Aramark that if they refuse to work, they will receive lengthier jail sentences or be sent to solitary

25  confinement, where they would be confined to a small cell for 22 to 24 hours a day." *Id.* ¶ 31.

26  The deputies "also threaten to terminate prisoners' employment if they need to take a sick day or

27  are injured." *Id.* Plaintiffs allege that such threats are sometimes made "in the presence of

28  Aramark employees," *id.* ¶ 32, and that Aramark employees threaten "to report [prisoner-

1   employees] to the Sheriff's deputies for punishment if they attempt to leave work early due to

2   illness or injury," *id.* ¶ 33.

3          In late October 2019, male prisoner workers, including those working for Aramark, staged

4   a worker strike at Santa Rita "to advocate for improved conditions at the jail[.]" *Id.* ¶ 37.

5   Plaintiffs allege that in response, Sheriff's deputies forced female prisoners, including Plaintiffs

6   Ruelas and Mason, to cover the men's shifts "so that Aramark could meet their quotas[.]" *Id.*

7   Deputies allegedly threatened these women by telling them they would "not be provided meals

8   unless they worked." *Id.*

9          **B.     Procedural History**

10         Plaintiffs filed the original complaint on November 20, 2019 on behalf of themselves, a

11  class of individuals incarcerated in Santa Rita Jail who perform or performed services for

12  Aramark, ECF No. 1, Complaint ¶ 41, and three subclasses: (1) a "Pretrial Detainee Subclass,"

13  represented by Ruelas, Davis, and Mason and comprising pretrial detainees who perform or

14  performed services for Aramark while incarcerated at Santa Rita jail, *id.* ¶ 43; (2) the "Women

15  Prisoner Subclass," represented by Ruelas, Jones, and Mason and comprising women who perform

16  or performed services for Aramark while incarcerated at Santa Rita Jail, *id.* ¶ 44; and (3) the

17  "Immigration Detainee Subclass," represented by Nunez-Romero and comprising all detainees

18  awaiting immigration proceedings who perform or performed services for Aramark while

19  incarcerated at Santa Rita Jail, *id.* ¶ 45.  Plaintiffs brought ten claims, including claims under the

20  Thirteenth Amendment, the Trafficking Victims Protection Act ("TVPA"), the Fourteenth

21  Amendment, the California Labor Code, California's Unfair Competition Law ("UCL"), and

22  California's Bane Act.  *Id.* ¶¶ 67-108.

23         County Defendants moved to dismiss Plaintiffs' complaint on December 13, 2019.  ECF

24  No. 13.  This Court took County Defendants' motion under submission without a hearing.  ECF

25  No. 36.  Aramark moved to dismiss the complaint on January 17, 2020.  ECF No. 23.  The Court

26  held a hearing on March 4, 2020.  ECF No. 37.

27         On June 26, 2020, this Court granted in part and denied in part County Defendants and

28  Aramark's motions to dismiss.  ECF No. 46.  The Court dismissed Plaintiffs' (1) TVPA claim

1    against Aramark; (2) Labor Code claim for failure to pay wages, but only as it pertained to

2    convicted plaintiffs; (3) Labor Code claims against County Defendants for failure to pay minimum

3    wage and overtime, but only as they pertained to convicted Plaintiffs; (4) Labor Code claims

4    against Aramark for failure to pay minimum wage and overtime; (5) Equal Pay Act claim; (6)

5    Bane Act claim, but only against Aramark; and (7) Plaintiffs Mebrahtu, Mason, and Nunez-

6    Romero's Labor Code and Bane Act claims against County Defendants. *Id.* at 25. All dismissals

7    were with leave to amend except for the Labor Code claim for failure to pay convicted Plaintiffs

8    wages as well as Mebrahtu, Mason, and Nunez-Romero's claims. *Id.*

9           On July 10, 2020, Plaintiffs filed the FAC. ECF No. 48. Plaintiffs add a new plaintiff,

10    Scott Abbey, *id.* ¶ 1, and reassert nine of the ten claims from the original complaint, *see id.* ¶¶ 74-

11    110. Plaintiffs add Jones, Reynolds, Cox, Mebrahtu, and Abbey as representatives of the pretrial

12    detainee subclass. *Id.* ¶ 51. Plaintiffs no longer bring claims under California's Equal Pay Act.,

13    *cf. id.*, or seek to represent convicted jail inmates, *see id.* ¶ 50.

14           On August 14, 2020, County Defendants and Aramark filed the instant motions to dismiss.

15    ECF Nos. 51, 52. Plaintiffs opposed both motions and County Defendants and Aramark replied.

16    ECF Nos. 53, 54, 56, 57. The Court held a hearing on October 21, 2020.

## II.    JURISDICTION

18           As Plaintiffs make claims under 42 U.S.C. § 1983 and 18 U.S.C. § 1589, this Court has

19    subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction

20    over Plaintiffs' state law claims under 28 U.S.C. § 1367.

## III.    LEGAL STANDARD

22           A complaint must contain "a short and plain statement of the claim showing that the

23    pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and

24    the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S.

25    544, 555 (2007) (citation omitted). "To survive a motion to dismiss, a complaint must contain

26    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

27    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has

28    facial plausibility when the plaintiff pleads factual content that allows the court to draw the

United States District Court
Northern District of California

4

1   reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Dismissal

2   under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or

3   sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*,

4   521 F.3d 1097, 1104 (9th Cir. 2008).  The Court must "accept all factual allegations in the

5   complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

6   *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

7   **IV.    DISCUSSION**

8   County Defendants argue that Plaintiffs fail to state any claims under the California Labor

9   Code, the TVPA, or 42 U.S.C. § 1983.  They additionally argue that Plaintiffs Mebrahtu, Mason,

10  and Nunez-Romero's claims are barred because this Court previously dismissed their claims

11  without leave to amend, and that Plaintiff Abbey fails to state any claims against County

12  Defendants.  Aramark argues that Plaintiffs fail to state a claim under the TVPA, the California

13  Labor Code, the UCL, or the Bane Act.

14  **A.    TVPA Claims**

15  The pretrial and immigration detainee subclasses bring a claim under the TVPA against

16  both County Defendants and Aramark.  FAC ¶ 77-79.  Plaintiffs allege that they "were and

17  continue to be coerced to work without compensation under threat of physical punishment and

18  restraint." *Id.* ¶ 78.

19  Subsection (a) of the TVPA imposes liability on primary offenders, or "[w]hoever

20  knowingly provides or obtains the labor or services of a person" by one or a combination of the

21  following four means:

22          (1) by means of force, threats of force, physical restraint, or threats of
            physical restraint to that person or another person;
23          (2) by means of serious harm or threats of serious harm to that person
            or another person;
24          (3) by means of the abuse or threatened abuse of law or legal process;
            or
25          (4) by means of any scheme, plan, or pattern intended to cause the
            person to believe that, if that person did not perform such labor or
26          services, that person or another person would suffer serious harm or
            physical restraint[.]
27

28  18 U.S.C. § 1589(a)(1)-(4).  Subsection (b) imposes liability on venture offenders, or any entity

United States District Court
Northern District of California

that "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in" conduct prohibited by Subsection (a) where that entity knew or acted with "reckless disregard of the fact that the venture has engaged in" the prohibited conduct. *Id.* § 1589(b).  Section 1595(a) authorizes civil remedies for violations of Section 1589.  *Id.* § 1595(a).

Plaintiffs argue that County Defendants are primary offenders of the TVPA, ECF No. 53 at 13, and that Aramark is liable as both a primary and a venture offender, ECF No. 54 at 10-14. County Defendants move to dismiss the claim on the ground that the TVPA does not apply to public entities.  ECF No. 51 at 21.  Aramark moves to dismiss Plaintiffs' TVPA claim on the grounds that Plaintiffs do not have standing to sue Aramark, ECF No. 52 at 15, and that Plaintiffs failed to state a claim for either primary or venture liability under the TVPA, *id.* at 16.

### 1.    Standing to Sue Aramark

Aramark argues that Plaintiffs lack standing to pursue a TVPA claim against Aramark because "not one Plaintiff alleges that he or she was personally threatened by or in the presence of any Aramark employee." ECF No. 52 at 14.  Aramark relies on *O'Shea v. Littleton*, 414 U.S. 488 (1974), for support.  There, the Supreme Court held that general allegations were insufficient to support standing because "[n]one of the named plaintiffs is identified as himself having suffered any injury in the manner specified."  *O'Shea*, 414 U.S. at 495.  Aramark asserts that no named Plaintiff personally claims to have been "threatened by or in the presence of an Aramark employee, much less that he or she involuntarily worked in the kitchen because of such threats." ECF No. 52 at 15.  Accordingly, Aramark concludes, "Plaintiffs have failed to allege actual, particularized injury against Aramark."  *Id.*

Plaintiffs argue that they have standing to bring their TVPA claim because, contrary to Aramark's assertions, each plaintiff need not "allege that he or she was personally threatened by or in the presence of an Aramark employee."  ECF No. 54 at 9.  Plaintiffs contend that their injury – "being trafficked through forced labor – is direct and particularized."  *Id.* at 10.

Article III standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (internal quotation marks and citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Accordingly, "each element must be supported . . . with the manner and degree of evidence required at the successive stages of litigation." *Id.*

Plaintiffs have standing to sue Aramark. Contrary to Aramark's argument, Plaintiffs need not plead that each of them "was *personally* threatened by or in the presence of an Aramark employee" to plead a particularized injury traceable to Aramark. *See* ECF No. 52 at 14 (emphasis in original). Rather, Plaintiffs need only show that they have "suffered an injury in fact," "traceable to the challenged conduct" and "likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. Unlike *O'Shea*, where the Supreme Court found that "the claim against petitioners allege[d] injury only in the most general terms," 414 U.S. at 495, Plaintiffs allege that Aramark and County Defendants forced them to work without compensation, even when they were sick or injured, through threats of discipline that included solitary confinement. ECF No. 54 at 10; *see* FAC ¶¶ 31-33. Plaintiffs' injury is traceable to Aramark because Plaintiffs allege that Aramark coerced them into forced labor by threatening to report Plaintiffs to Sheriff's deputies who could place them in solitary confinement, FAC ¶ 31. Plaintiffs' injury is redressable by a favorable judicial decision if Aramark can be held liable as offenders under the TVPA. *See Lujan*, 504 U.S. at 560-61. The Court finds this sufficient to hold that Plaintiffs have standing. *See id.; see also Spokeo*, 136 S. Ct. at 1547.

### 2. Primary Offender Liability

#### a. County Defendants

County Defendants assert that they cannot be held liable as primary offenders because governmental entities cannot be held liable under the TVPA. ECF No. 51 at 21. County Defendants rely on *Nuñag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 2011 WL 13153190 (C.D. Cal. May 12, 2011), to support their argument. *Nuñag-Tanedo* held that "neither the term

1    'perpetrator' nor the term 'whoever' extend to governmental entities under the TVPA."  2011 WL

2    13153190 at *12.  Aramark also argues that County Defendants are not liable as primary

3    offenders, and cites an Eleventh Circuit opinion, *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269

4    (11th Cir. 2020), for additional support.  In *Barrientos*, the Eleventh Circuit read the TVPA by

5    reference to the Dictionary Act, which defines "whoever" to "include corporations, companies,

6    associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  951

7    F.3d at 1277.  Aramark contends that because both *Nuñag-Tanedo* and *Barrientos* interpreted the

8    TVPA by reference to the Dictionary Act, this Court must also do so.  ECF No. 57 at 11.

9         Plaintiffs respond that, as *Nuñag-Tanedo* acknowledged, there is no "hard and fast rule"

10   excluding a sovereign from the definition of "person," and that *Nuñag-Tanedo*'s reading of the

11   TVPA as excluding governmental entities runs counter to Supreme Court precedent.  ECF No. 53

12   at 13.  For support, Plaintiffs first cite *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*,

13   500 U.S. 72, 83 (1991), in which the Supreme Court wrote, "[O]ur conventional reading of person

14   may . . . be disregarded if the purpose, the subject matter, the context, the legislative history, or the

15   executive interpretation of the statute indicate an intent, by the use of the term, to bring state or

16   nation within the scope of the law."  500 U.S. at 83 (internal quotation marks, alterations, and

17   citation omitted).  Plaintiffs also cite *Monell v. Dep't of Soc. Servs. of City of New* York, 436 U.S.

18   658 (1978), in which the Supreme Court held that a municipal corporation falls under the "usual

19   meaning of the word person," 436 U.S. at 688 (internal quotation marks omitted).  ECF No. 53 at

20   13.  Plaintiffs contend further that following *Nuñag-Tanedo* would "render the Supreme Court's

21   instruction in *Int'l Primate Prot. League* meaningless" because it "would foreclose courts' future

22   inquiry into whether the definition of person included the sovereign."  *Id.* at 14.

23        Plaintiffs also point out that the TVPA was enacted to "implement the Thirteenth

24   Amendment against slavery or involuntary servitude."  *Id.*  As such, given that counties may

25   decidedly be liable for violations of the Thirteenth Amendment, they must also be liable under the

26   statute that carries out its protections.  *Id.*  Finally, Plaintiffs argue that the TVPA's legislative

27   history "demonstrates the legislature's wide-ranging contempt for trafficking," and "indicates that

28   the legislature intended the TVPA to be enforceable against anyone – including municipalities –

United States District Court
Northern District of California

8

1   that violate its provisions."  *Id.*

2          The Court is persuaded by Plaintiffs' argument that finding municipalities immune from

3   liability under the TVPA would contradict Supreme Court precedent.  The Supreme Court

4   instructed in *Int'l Primate Prot. League* to disregard the usual reading of "person" if "the purpose,

5   the subject matter, the context, the legislative history, or the executive interpretation of the statute

6   indicate an intent to bring state or nation within the scope of the law."  500 U.S. at 83 (internal

7   quotation marks, alterations, and citation omitted).  County Defendants' argument that

8   municipalities do not fall within the TVPA's definition of "person" or "whoever" does not

9   comport with this instruction given the purpose and context of the TVPA.

10         The Court first notes that the TVPA was enacted to implement the Thirteenth Amendment.

11  *See United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014).  The legislative history of the

12  TVPA demonstrates Congress's contempt for human trafficking, and intent to bring all traffickers

13  within the TVPA's ambit.  ECF No. 53 at 14; H.R. Conf. Rep. 106-939, at 5-6 (2000) (deeming

14  trafficking "an evil requiring concerted and vigorous action" and "involving grave violations of

15  human rights").  Furthermore, Congress did not explicitly exclude municipalities from liability

16  under the TVPA.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. at 688 (holding

17  that a municipal corporation falls under the "usual meaning of the word person" (internal

18  quotation marks omitted)).  Defendants offer the Court no reason why Congress would have

19  excluded the sovereign from liability, without doing so explicitly, in the context of a law that was

20  intended to give "the highest priority to investigation and prosecution of trafficking offenses."

21  H.R. Rep. 106-487(I), at 27 (1999).[2]  And, as Plaintiffs rightly point out, it would be incongruous

22  that a county could be liable for violations under the Thirteenth Amendment, *Christie v. Iopa*, 176

23  F.3d 1231, 1234 (9th Cir. 1999), yet be excluded from liability under the statute that implements

24  that amendment's protections.  Accordingly, the Court concludes that the context of the TVPA

25  indicates an intent by Congress to bring the sovereign within the scope of the law.  For these

26

27  _____
    [2] *Barrientos v. CoreCivic, Inc.* does not change the Court's analysis.  In *Barrientos*, the Eleventh
    Circuit held that a for-profit government contractor could be held liable under the TVPA.  *See*
28  *Barrientos*, 951 F.3d at 1279-80.  It did not address whether liability could lie against a
    governmental entity.  *See id.*

United States District Court
Northern District of California

1    reasons, the Court finds that Plaintiffs may sue County Defendants as primary offenders under the

2    TVPA, and denies County Defendants' motion to dismiss Plaintiffs' TVPA claim.

3                               **b.      Aramark**

4          Aramark argues that it cannot be liable as a primary offender because it "does not operate

5    the Santa Rita Jail and therefore lacks the power to coerce inmates into the kitchen."  ECF No. 52

6    at 8.  Aramark asserts that because it does not have the authority to punish Plaintiffs, Plaintiffs

7    cannot maintain a "claim of primary liability under Section 1589(a)."  *Id.* at 16.  Aramark notes

8    that "Plaintiffs' sole new allegation for primary offender liability is that unspecified Aramark

9    employees 'coerce' unspecified inmates 'by threatening to report them to Sheriff's deputies for

10   punishment'" for attempting to leave work early.  *Id.* at 15 (citing FAC ¶ 33).  Aramark contends

11   that this allegation is conclusory and insufficient given that Aramark does not have the authority to

12   punish Plaintiffs.

13         Plaintiffs respond that Aramark "perpetrates trafficking in violation of the TVPRA by

14   forcing plaintiffs' labor under the threat that Aramark will report plaintiffs to Sheriff's deputies for

15   punishment."  ECF No. 54 at 10.  For support, Plaintiffs cite *Owino v. CoreCivic, Inc.,* 2018 WL

16   2194644, at *24 (S.D. Cal. May 14, 2018), which held that plaintiffs alleging they were threatened

17   with solitary confinement had stated a claim against defendants.  Plaintiffs further contend that

18   "[i]t is not necessary that the perpetrator have the means to impose the discipline," but rather,

19   "[t]he threat to turn plaintiffs over to an authority for discipline that is an abuse of the law is

20   sufficient."  ECF No. 54 at 11.  Plaintiffs rely on *Copeland v. C.A.A.I.R.*, 2019 WL 4307125, at *8

21   (N.D. Okla. Sept. 11, 2019), for this proposition.

22         The FAC alleges that "Aramark employees . . . coerce plaintiffs and other prisoner-

23   employees to work by threatening to report them to the Sheriff's deputies for punishment if they

24   attempt to leave work early due to illness or injury."  FAC ¶ 33.  The Court previously noted that

25   unlike the defendants in *Owino*, Aramark does not operate the Santa Rita Jail, and thus, Aramark

26   does not have the authority to punish or coerce Plaintiffs directly.  ECF No. 46 at 7.  However,

27   Plaintiffs' new allegation that Aramark employees threaten to report Plaintiffs to Sheriff's deputies

28   for punishment for attempting to leave work early when they are sick or injured, ECF No. 54 at

United States District Court
Northern District of California

1    10, is sufficient to show that Aramark could be a primary offender under the TVPA.  Even though

2    Aramark does not technically have the authority to place prisoner-employees in solitary

3    confinement, Plaintiffs sufficiently allege that Aramark obtains Plaintiffs' labor by threats of

4    physical restraint.  That the physical restraint would be imposed by the County rather than

5    Aramark does not change the analysis.  Aramark employees' threats to report Plaintiffs to coerce

6    them to work carry the same effect as if Sheriff's deputies made the threats; no matter who makes

7    the threats, they lead to Plaintiffs providing labor for fear that they will be placed in solitary

8    confinement.  18 U.S.C. § 1589(a)(1), (a)(4); *see Owino,* 2018 WL 2194644 at \*24; *see also*

9    *Lesnik v. Eisenmann SE,* 374 F. Supp. 3d 923, 952 (N.D. Cal. 2019) (threatened harm under the

10   TVPA must be "serious enough to compel a reasonable person to perform labor to avoid the

11   harm") (citation omitted).

12          Plaintiffs also rely on *Copeland*, which held that plaintiffs had alleged a TVPA claim

13   because defendants' threats of incarceration "constitute[d] threatened abuse of law or legal

14   process."  2019 WL 4307125 at \*8.  Here, Plaintiffs' allegation is similar in that Aramark

15   threatens to report prisoner-employees to Sheriff's deputies – who have the power to put them in

16   solitary confinement or impose lengthier sentences – for punishment if they refuse to work.  FAC

17   ¶ 31.  Plaintiffs sufficiently allege that Aramark abused the legal process.  The purpose of longer

18   jail sentences and solitary confinement is not to force pretrial detainees to provide labor.  Yet,

19   Aramark threatened inmates that they could face punishments – which Plaintiffs understood to

20   include solitary confinement and lengthier sentences – if they refused to work.  18 U.S.C.

21   § 1589(a)(3); *see Copeland*, 2019 WL 4307125 at \*8 ("Abuse or threatened abuse of law or legal

22   process is defined as the use or threatened use of the law or legal process in any manner or for any

23   purpose for which the law was not designed, in order to exert pressure on another person to cause

24   that person to take some action or refrain from taking some action." (citing 22 U.S.C. § 7102(1))

25   (internal quotation marks omitted)).  Accordingly, the Court finds that Plaintiffs have alleged

26   primary offender liability under the TVPA against Aramark.

27          **3.      Venture Offender Liability**

28          In addition to Aramark's primary offender liability, the Court finds that Plaintiffs have also

United States District Court
Northern District of California

sufficiently alleged that Aramark is a venture offender under the TVPA.  *See Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019).

Aramark argues that Plaintiffs cannot state a claim for venture liability under the TVPA because Section 1589(b) requires a primary offender and Plaintiffs have not stated a cognizable claim that County Defendants are primary offenders.  ECF No. 52 at 16.  Aramark further argues that Plaintiffs fail to allege the knowledge or reckless disregard required to state a venture liability claim under the TVPA.  *Id.*  Relying on *Noble v. Weinstein*, 335 F. Supp. 3d 504, 523-24 (S.D.N.Y. 2018), Aramark contends that liability under the TVPA "cannot be established by association alone," and that "specific conduct that furthered the forced labor venture" must be alleged.  *Id.* at 16-17 (alterations omitted).  Aramark notes that although the FAC alleges that Aramark employees "made or observed threats made by deputies, Plaintiffs do not identify a single Aramark employee by name or function who allegedly made or observed such threats, nor the substance of any such threats."  *Id.* at 17.  Without more, Aramark argues, such assertions "are entitled to no weight."  *Id.* (citing *Iqbal*, 556 U.S. at 678).

Plaintiffs assert that Aramark is liable even absent an "overt act in furtherance of the venture."  ECF No. 54 at 12.  Plaintiffs cite a recent decision holding that a plaintiff seeking a civil remedy under Section 1595(a) "is not required to allege an overt act in furtherance of a . . . trafficking venture in order to sufficiently plead her section 1595 civil liability claim."  *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 WL 3035794, at *1, n.1 (N.D. Cal. Jun. 5, 2020).  Plaintiffs assert that they "may bring their claim against Aramark without bringing their claim against the venture partner."  ECF No. 54 at 12.

As explained above, the Court holds that County Defendants are liable as primary offenders under the TVPA.  *See supra* IV.A.2.a.  Thus, the only question left to resolve at this stage is whether Plaintiffs have pleaded sufficient facts to state that Aramark is liable as a venture offender.  The Court finds that they have.  Under the TVPA, "[w]hoever knowingly benefits, financially . . . from participation in a venture which has engaged in the providing or obtaining of labor or services by any means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such

means, shall be punished . . . ." 18 U.S.C. § 1589(b).  Plaintiffs allege that Aramark receives a financial benefit in the form of an "economic windfall as a result of the uncompensated labor of prisoners confined in Santa Rita Jail." *Id.* ¶ 38.  And Aramark is involved with scheduling work days for prisoner employees and assigning them to their specific tasks.  *See* FAC ¶¶ 27-28.  Plaintiffs also allege that Aramark employees "observe the Sheriff's deputies' supervision of the prisoner-employees, including threats of force," and that Aramark employees themselves threaten to report employees to Sheriff's deputies for punishment. *Id.* ¶¶ 23, 32, 33.  These facts are sufficient to plead that Aramark knowingly benefited financially from its participation in the venture with County Defendants.  Aramark's observation of the threats demonstrates that it knew or should have known of County Defendants' threats of force, yet continued to participate in the venture and receive a financial benefit notwithstanding.  *See Lesnik*, 374 F. Supp. 3d at 953 ("[G]iven [defendant's] direct involvement in every aspect of the events at issue, the Court finds that [defendant] knew or should have known of [primary offender's] treatment of its employees.").  Accordingly, Aramark's motion to dismiss Plaintiffs' TVPA claim is denied.

### B.      Labor Code Claims

Plaintiffs make three California Labor Code claims: (1) failure to pay wages, Cal. Lab. Code §§ 201, 202, 218; (2) failure to pay minimum wage, *id.* § 1194; and (3) failure to pay overtime premium wages, *id.*  FAC ¶¶ 91-101.  Plaintiffs argue that they are entitled to wages under California Proposition 139, which Plaintiffs state, "mandated that counties 'operate and implement the program . . . by rules and regulations prescribed by . . . local ordinance.'"  ECF No. 53 at 7 (quoting Cal. Const. art. XIV, § 5).  Plaintiffs further assert that the Labor Code, rather than the Penal Code, controls Plaintiffs' claims.  ECF No. 53 at 9; ECF No. 54 at 17-18.  The Court concludes that although Proposition 139 does not support Plaintiffs' claim for wages, Plaintiffs have pleaded sufficient facts to state claims against County Defendants and Aramark under Labor Code Section 1194.

### 1.      Proposition 139

Proposition 139 allowed for-profit entities to contract with state prisons and county jails for the purpose of using inmate labor.  Proposition 139 authorized joint employment ventures with

13

1    for-profit entities by amending the California Constitution to create prison work programs, which

2    county jail programs implement through local ordinances.  ECF No. 24-2 at 2; Cal. Const. art. 14,

3    § 5.

4        County Defendants assert that Proposition 139 left individual municipalities to determine

5    how to compensate inmates held and performing work in county jails, if at all.  ECF No. 51 at 14.

6    Thus, County Defendants conclude, Proposition 139 does not entitle Plaintiffs to wages because

7    Alameda County has not adopted an ordinance or provision in its administrative code requiring

8    wages be paid to county jail inmates performing work pursuant to contracts with private

9    companies.  *Id.* at 15.  Aramark similarly argues that Proposition 139 "forecloses the wage claims

10   of non-convicted jail inmates" because, as Aramark reads the proposition, "Plaintiffs' prayer is

11   properly directed to the Alameda County Board of Supervisors – not to the federal court."  ECF

12   No. 52 at 20.

13       Plaintiffs assert that Proposition 139 mandated County Defendants to enact a local

14   ordinance regarding the compensation of prisoner-employees before contracting with Aramark to

15   provide inmate labor.  *Id.* at 7-8.  Consequently, Plaintiffs argue that County Defendants

16   "eschewed the directive of the California Constitution" when it entered into a contract with

17   Aramark "without a local ordinance."  ECF No. 53 at 8.

18       Plaintiffs argue further that "in the absence of a local ordinance regulating the program,"

19   County Defendants and Aramark are bound by their contract to pay inmate workers wages.  ECF

20   No. 53 at 8; *see* ECF No. 55-3.[3]  The contract provides in pertinent part that

> [p]ursuant to Labor Code Sections 1770 *et seq.*, [Aramark] shall pay
> to person performing labor in and about Work provided for in
> Contract not less than the general prevailing rate of per diem wages
> for work of a similar character in the locality in which the Work is
> performed, and not less than the general prevailing rate of per diem
> wages for legal holiday and overtime work in said locality . . . .

---

[3] Plaintiffs filed an unopposed request for judicial notice of the contract between Aramark and County Defendants, ECF No. 55-3 at 2, which the Court grants because the contract is a matter of public record.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 742, 746 n.6 (9th Cir. 2006).

United States District Court
Northern District of California

1    ECF No. 55-3 at 10-11.  Because County Defendants and Aramark's contract contains a clause

2    binding Aramark to pay for work performed, Plaintiffs argue that the Court should construe this

3    contract as a "local ordinance" pursuant to Article 14.

4        The Court does not find the contract between Aramark and County Defendants to be a

5    "local ordinance" under Article 14.  Nowhere in Proposition 139 or the California Constitution

6    does it state that a contract can function as an ordinance in the absence of a local ordinance

7    governing county jail programs, and Plaintiffs cite no authority to support the position that it can.[4]

8    In addition, County Defendants were not mandated by Proposition 139 to enact a local ordinance

9    before entering a joint employment venture with Aramark.  Plaintiffs cite no authority to support

10   their theory that such an ordinance is required, and the Court declines to read such a mandate into

11   Proposition 139.  The Court therefore concludes that Proposition 139 does not provide Plaintiffs

12   with a right to compensation.

13       However, the Court also concludes that Proposition 139 does not preclude wage claims

14   under the Labor Code in all circumstances.  Aramark argues that Proposition 139 gave local

15   governments the exclusive authority to determine wages for people incarcerated in county jails –

16   including pretrial detainees.  Defendants reason that Plaintiffs therefore can be forced to work for

17   Aramark without wages because no local ordinance prohibits this arrangement.  But the Court

18   does not interpret Proposition 139 to require that conclusion or to preclude application of the

19   Labor Code to Plaintiffs.

20       Proposition 139 makes no mention of pretrial detainees.  It also does not address wages for

21   incarcerated individuals who reside in a jail that is not governed by a local ordinance prescribing

22   or prohibiting conditions for joint venture contracts between jails and private companies.

23   Proposition 139 therefore does not address the circumstances at hand.  If anything, the text of

24   Proposition 139 – and specifically its requirements that (1) individuals incarcerated in state prisons

25   working for a private company be paid and (2) inmate labor not replace non-incarcerated

26

27   [4] Unlike *Vasquez v. State of California*, 105 Cal. App. 4th 849 (2003), on which Plaintiffs rely,
     Plaintiffs do not bring claims to compel County Defendants or Aramark to pay prevailing wages

28   under their contract.  The Court therefore does not consider whether Defendants have fulfilled
     their prevailing wage obligations under the contract.

individuals on strike – supports a finding that the voters intended non-convicted individuals incarcerated in county jails working for private companies be paid for their labor.  *See* Cal. Penal Code § 2717.8.

Proposition 139 provides individuals incarcerated in state prison working for private companies – who have been convicted of crimes, unlike the detainees at issue here – default wages comparable to "non-inmate employees in similar work."  Cal. Penal Code § 2717.8.  Although these wages are subject to certain deductions, those deductions could "not, in the aggregate, exceed 80 percent of gross wages."  *Id.*  Proposition 139 also amended the California Constitution to prohibit jails or prisons from entering a contract with an employer that would "initiate employment by inmates in the same job classification as non-inmate employees of the same employer who are on strike."  Cal. Const. Art. 14 § 5(b).  The text of Proposition 139 therefore reflects a careful balance of interests, including the interest of protecting jobs that would otherwise go to non-incarcerated individuals.  It is clear in context that the purpose of Proposition 139's wage provision is not only to benefit incarcerated individuals, but also to ensure that private corporations could not replace a non-incarcerated workforce with free labor from the county jail. The balance of interests reflected in Proposition 139 is inconsistent with an arrangement that authorizes incarcerated individuals – including non-convicted detainees – to be forced to work for a private company without wages, and it certainly does not require that result.

### 2.     California Penal Code

County Defendants advance three arguments for why Plaintiffs' claims for unpaid wages lie in the Penal Code as opposed to the Labor Code.  ECF No. 51 at 15-18.  First, County Defendants contend that the Labor Code does not apply in light of the "comprehensive statutory scheme" governing inmate conditions, as laid out in the California Penal Code.  ECF No. 51 at 15. County Defendants argue that "[n]either the California Constitution nor Title 4 of the Penal Code provides any rights for inmates of county jails to receive wages for the work performed while incarcerated."  *Id.* at 16.  For support, County Defendants direct the Court to the legislative context of the Penal Code.  *See id.*  Specifically, County Defendants argue that the California legislature has "addressed the availability of compensation [for] county jail inmates involved in work

1    programs through the use of credits and reductions in sentences . . . for satisfactorily performing

2    labor as required by the Sheriff" in Section 4019(b) of the Penal Code.  *Id.*  Section 4019(b) states,

3    in pertinent part, that

4               "for each four-day period in which a prisoner is confined in or
            committed to a facility as specified in this section, one day shall be
5           deducted from the prisoner's period of confinement unless it appears
            by the record that the prisoner has refused to satisfactorily perform
6           labor as assigned by the sheriff, chief of police, or superintendent of
            an industrial farm or road camp."

7

8    Cal. Penal Code § 4019(b).  County Defendants assert that by enacting the Penal Code, the

9    legislature has addressed the issue of compensation for all inmates and has decided not to provide

10   wages.  ECF No. 51 at 24.

11        Second, County Defendants assert that the Labor Code addresses inmates solely in the

12   context of workers' compensation, ECF No. 51 at 17 (citing Cal. Lab. Code § 3370, *et seq.*), and

13   that the Labor Code "otherwise conflicts with . . . the Penal Code."  *Id.* at 17-18.  For example,

14   County Defendants point out that the Penal Code allows state prison inmates to be paid below the

15   minimum wage and classifies paid inmate work as a privilege, not a right.  *Id.*  County Defendants

16   read this to mean that "the Labor Code applies exclusively to non-incarcerated persons, and the

17   Penal Code applies exclusively to incarcerated persons, except in the sole context of workers'

18   compensation laws."  *Id.* at 18.  County Defendants argue further that the same scheme applies to

19   detainees awaiting immigration proceedings because Section 4005(a) of the Penal Code states that

20   "[t]he sheriff shall receive, and keep in the county jail, any prisoner committed thereto by process

21   or order issued under the authority of the United States . . . ."  Cal. Penal Code § 4005(a).  *Id.*

22        Aramark similarly contends that the "Penal Code does not authorize non-convicted county

23   jail inmates to recover under the Labor Code."  ECF No. 52 at 21.  Aramark argues that the

24   Court's prior observation that relevant portions of the Penal Code are inconsistent with the Labor

25   Code applies "not only to convicted inmates – but to all Santa Rita Jail inmates, including the non-

26   convicted inmates . . . ."  *Id.*  Because the legislature made no distinction between convicted and

27   non-convicted inmates when enacting the Penal Code's provisions pertaining to county jails,

28   Aramark argues, the Penal Code necessarily applies to all inmates, convicted or not.  *Id.* at 22.

1
2
3
4
5
6
7
8
9

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Finally, County Defendants, as well as Aramark, assert that prisoners are not considered employees under federal law.  County Defendants primarily cite *Hale v. Arizona*, 993 F.2d 1387 (9th Cir. 1993), in support of this argument, *id.* at 19-20, which held that there was no employer-employee relationship between state prisoners and the state under the economic realities test of the Federal Labor Standards Act ("FLSA").  993 F.2d at 1395.  Aramark similarly argues that this case is analogous to cases decided under the FLSA insofar as "[Plaintiffs'] liberty is lawfully constrained during their incarceration and they are not able to participate freely in the labor market, but their standard of living is provided for"; thus, pretrial detainees cannot be considered employees under the Labor Code.  *Id.* at 22-23.

Plaintiffs respond that the Penal Code does not control and is not adverse to their Labor Code claims and that Plaintiffs may not be held under conditions that violate the Constitution.  ECF No. 53 at 9 (citing ECF No. 46 at 20); ECF No. 54 at 17.  Plaintiffs assert that pretrial detainees cannot be forced to perform uncompensated work under threat, and therefore, "any labor referenced in the Penal Code as it applies to pretrial detainees cannot mean forced uncompensated labor for a private company."  ECF No. 53 at 9.  Plaintiffs further argue that nothing precludes them from the protections of the Labor Code and that requiring they be paid for work performed for a private contractor "does not offend any provision of the Penal Code or Labor Code."  ECF No. 53 at 10.

In opposing Aramark, Plaintiffs argue that "[i]f for no other reason than their contract demands it, Aramark must pay pretrial detainees."  ECF No. 54 at 17.  Plaintiffs also ask the Court to disregard cases that construe the FLSA to exclude pretrial detainees because this case is not governed by federal labor law, but California labor law.  *Id.* (citing *Owino v. CoreCivic, Inc.,* 2018 WL 2194644, at *24 (S.D. Cal. May 14, 2018)).  In reply, Aramark argues that *Owino* is inapposite because the plaintiffs were civil immigration detainees "subject not to the California Penal Code, but to ICE regulations stating that detainees could only perform basic housekeeping tasks."  ECF No. 57 at 16.  Aramark argues that a better comparison is to *Villarreal v. Woodham*, 113 F.3d 202 (11th Cir. 1997).  In *Villarreal*, the court held that pretrial detainees were not entitled to wages under the FLSA because correctional facilities provide pretrial detainees with

18

"everyday needs such as food, shelter, and clothing." 113 F.3d at 206-07. Aramark does not ask the Court to apply the FLSA's economic realities test, but rather, to apply the same reasoning as *Villarreal* in finding that Plaintiffs are not employees. ECF No. 57 at 16.

Defendants advance unpersuasive arguments for why the Penal Code and the Labor Code are mutually exclusive. Contrary to County Defendants' argument, nothing in the statutory scheme governing the conditions of inmates indicates that the Labor Code excludes Plaintiffs, nor that the Penal Code governs Plaintiffs. For example, insofar as the Labor Code addresses inmates, it only discusses state prison inmates, without reference to county jail inmates. *See, e.g.,* Cal. Lab. Code §§ 3370, 6304.2. As this Court noted in its previous order, the Penal Code presumes that the Labor Code does not apply to convicted state prison inmates unless specifically indicated. ECF No. 46 at 19; *see* Cal. Penal Code § 2811 ("[I]n no event shall [state prisoner compensation] exceed one-half the minimum wage provided in Section 1182 of the Labor Code, *except as otherwise provided in this code*.") (emphasis added). However, while the Penal Code explicitly addresses employment and wages of state prisoners, both in relation to the minimum wage, *see, e.g.*, *id.*, and in the context of incarcerated individuals working for a private company through a joint venture program, *see id.* § 2717.8, the Penal Code does not address such matters for pretrial detainees confined in county jails, *see id.* § 4000, *et seq.* Similarly, although the Penal Code authorizes "the board of supervisors or city council" to require "[a]ll persons confined in the county jail . . . *under a final judgment of imprisonment rendered in a criminal action or proceeding* . . . to perform labor on the public works or ways in the county or city," there is no similar provision regarding non-convicted incarcerated persons. *Id.* § 4017. The Court reads these omissions to imply that the California legislature did not intend to exclude non-convicted detainees working for a private corporation from the Labor Code's protections.

Cases involving claims under the FLSA do not determine the outcome here because, as Plaintiffs note, this case is governed by California labor law rather than federal labor law. *See Owino*, 2018 WL 2194644, at *24 ("The defect in Defendant's argument is that California's employment definition is explicitly different from FLSA's economic reality test. The California Supreme Court cannot be much clearer when it said '[i]n no sense is the IWC's definition of the

term 'employ' based on federal law.'") (citations omitted). Furthermore, though this case involves a "custodial relationship" similar to the relationship described in *Villarreal*, 113 F.3d at 206, there are important distinctions. In *Villarreal*, the court noted that the FLSA did not apply because "the labor produce[d] goods and services utilized by the prison." 113 F.3d at 207 (citation omitted). Here, Aramark, a private party, sells the goods that inmates produce to third parties outside of Alameda County. FAC ¶ 1. Thus, it cannot be said that the workers have been "taken out of the national economy" as they were in *Villarreal*.[5] *See* 113 F.3d at 207 (quoting *Danneskjold v. Hausrath*, 82 F.3d 37, 42-43 (2d Cir. 1996)). The Court therefore declines to hold that this case is analogous to FLSA cases.

The fact that Plaintiffs were working for the benefit of Aramark, rather than to provide goods and services utilized by the prison or "on the public works or ways in the county," also supports the Court's conclusion that the Penal Code does not foreclose Plaintiffs' Labor Code claims. *See* Cal. Penal Code § 4017 ("persons confined in the county jail . . . *under a final judgment of imprisonment rendered in a criminal action* . . . may be required by an order of the board of supervisors or city council to perform labor *on the public works or ways in the county*" (emphasis added)). And as Aramark acknowledges in its motion, "[w]ith respect to the payment of wages . . . Proposition 139 only amended . . . the Penal Code relating to state prisons," rather than county jails. ECF No. 51 at 14. As discussed above, when the voters saw fit to allow joint venture programs between state prisons and private companies, it was with the understanding that incarcerated individuals would receive wages comparable to non-incarcerated employees of the private company, subject to certain deductions by the prison. *See* Cal. Penal Code § 2717.8. As a reflection of that mandate from the voters, the Penal Code distinguishes wages earned by incarcerated individuals working for a private company from wages earned by incarcerated individuals working for the Prison Industry Authority. *Compare id. with id.* §§ 2700, 2811. The

---

[5] The other cases that County Defendants and Aramark cite are similar to *Villarreal* insofar as plaintiffs there were taken out of the national economy. In *Tourscher v. McCullough*, 184 F.3d 236, 243 (3d Cir. 1999), the economic reality was such that plaintiff's labor "did not compete with private employers." In *Hale*, where the labor was pursuant to mandated state prison work programs, the court held that the plaintiff's labor "belonged to the institution." 993 F.2d at 1395.

United States District Court
Northern District of California

1    Penal Code was not similarly amended as to county jails because Proposition 139 left wages to be

2    determined by local ordinance.  The Penal Code therefore does not give any guidance regarding

3    the wages owed to non-convicted detainees working for a private company in a county jail and

4    cannot be read to preclude this population from the protections of the Labor Code.

5         In the absence of regulation from the Penal Code or any relevant local ordinance, the Court

6    concludes that Plaintiffs – non-convicted detainees working for a private company that sells the

7    goods produced by Plaintiffs to third parties outside of Alameda County – are entitled to the

8    protections of the Labor Code.

9              **3.       Failure to Pay Wages (Labor Code Sections 201 and 202)[6]**

10        The Court now considers whether Plaintiffs allege claims under Sections 201 and 202 of

11   the Labor Code.  The Court will deny Plaintiffs' Section 201 and 202 claims for failure to state a

12   claim.

13        Aramark argues that Plaintiffs do not allege facts sufficient to demonstrate that they are

14   entitled to wages under Sections 201 and 202 because those sections are "facially inapplicable."

15   ECF No. 52 at 26.  Aramark asserts that "Sections 201 and 202 require that employers pay

16   _____

17   [6] In its prior order, the Court denied the Defendants' motions to dismiss Plaintiffs' claim for
     failure to pay wages as made by non-convicted Plaintiffs because "Defendants ma[d]e no
18   arguments as to why, despite [the Thirteenth Amendment prohibition on involuntary servitude],
     pretrial detainees are not entitled to wages or Labor Code protections."  ECF No. 46.  County
19   Defendants now argue that pretrial detainees are not entitled to wages under either the Labor Code
     or the Thirteenth Amendment.  ECF No. 51 at 25.  Aramark also argues that the Thirteenth
20   Amendment does not establish a right to wages, and that the Labor Code was not enacted to
     implement the Thirteenth Amendment.  ECF No. 52 at 21.  The Court recognizes that Plaintiffs
21   allege both forced labor claims (under the TVPA and the Thirteenth Amendment) and
     uncompensated labor claims (under the Labor Code), and that Plaintiffs argue that unpaid wages is
22   an appropriate remedy under the Thirteenth Amendment.  The Court addresses Parties' arguments
     regarding Plaintiffs' Thirteenth Amendment claim below, *see infra* IV.C.1, but need not address
23   the Thirteenth Amendment in the context of Plaintiffs' Labor Code claims.  The Court also need
     not reach Plaintiffs' prayer for relief – which is a remedy, not a claim – at this stage.  Fed. R. Civ.
24   P. 12(b)(6); *see Mecum v. Wells Fargo Bank, N.A.*, No. C15-1302JLR, 2016 WL 1047435, at *5
     (W.D. Wash. Mar. 9, 2016) ("Because a prayer for relief is a remedy and not a claim, a Rule
25   12(b)(6) motion to dismiss for failure to state a claim is not a proper vehicle to challenge the
     requested relief."); *Monaco v. Liberty Life Assur. Co.*, No. C06-07021 MJJ, 2007 WL 420139, at
26   *6 (N.D. Cal. Feb. 6, 2007) (holding that "a complaint is not subject to a motion to dismiss for
     failure to state a claim under Rule 12(b)(6) because the prayer seeks relief that is not recoverable
27   as a matter of law" (emphasis omitted)).

28

employees within a certain amount of time upon separation of employment," and since Plaintiffs do not allege that they resigned or were terminated from the kitchen, the claims should be dismissed. *Id.* Aramark and Plaintiffs both rely on *Ambriz v. Coca Cola Co.*, No. 13-cv-03539-JST, 2013 WL 5947010, at *7 (N.D. Cal. Nov. 5, 2013), which denied a defendant's motion to dismiss plaintiffs' failure to pay final wages claim. Aramark asks the Court to follow *Ambriz* insofar as some form of termination or resignation must have occurred for Plaintiffs to have valid Section 201 and 202 claims. ECF No. 52 at 26 (citing *Ambriz*, 2013 WL 5947010, at *7). Plaintiffs, on the other hand, read *Ambriz* to support the proposition that whether Plaintiffs were terminated or resigned is "immaterial" because "the time to pay plaintiffs unpaid earned wages has passed under any . . . circumstance." ECF No. 54 at 23.

The Court concludes that Plaintiffs have not pleaded sufficient facts to state a claim under either Section 201 or Section 202. Plaintiffs do not allege that they resigned or were terminated, or when. The approximate dates of employment listed in the FAC, *see* FAC ¶¶ 45, 47, 48, without more, are insufficient to show resignation or termination under Sections 201 and 202. Plaintiffs have not alleged any facts regarding how or why their employment ended, and the Court cannot conclude whether a plaintiff resigned or was terminated merely from a date. The Court also observes that the notion that an inmate could "resign" is incompatible with Plaintiffs' allegations that inmates were forced to work. The Court therefore dismisses Plaintiff's Section 201 and 202 failure to pay wages claim with leave to amend. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts") (citation omitted).

### 4.     Failure to Pay Minimum and Overtime Wages (Section 1194 Claims)

Aramark contends that even if Plaintiffs can avail themselves of the Labor Code, Plaintiffs have failed to state any Labor Code claims against Aramark because Plaintiffs fail to allege an employment relationship with Aramark, ECF No. 52 at 24. In *Martinez*, the California Supreme Court held that the Industrial Welfare Commission's ("IWC") wage orders define an "employer" as a person who "directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." 49 Cal. 4th at 52,

71, 109 (quoting Wage Order No. 14) (emphasis omitted).  Pursuant to the IWC, "employ" is defined to mean "to engage, suffer, or permit to work."  *Id.* at 57 (quoting Wage Order No. 14). "To employ, then, under the IWC's definition, has three alternative definitions.  It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship."  *Id.* at 64.  "Any of the three is sufficient to create an employment relationship."  *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1233 (N.D. Cal. 2015).  "While [the] plaintiff is not required to conclusively establish that defendants [a]re her joint employers at the pleading stage, [the] plaintiff must at least allege some facts in support of this legal conclusion."  *Johnson v. Serenity Transp., Inc.*, 141 F. Supp. 3d 974, 988 (N.D. Cal. 2015) (quoting *Hibbs-Rines v. Seagate Techs., LLC*, No. 08-cv-05430-SI, 2009 WL 513496, at *5 (N.D. Cal. Mar. 2, 2009)).

The Court finds that Plaintiffs have alleged an employment relationship with Aramark under the first *Martinez* prong.  Under that prong, "control over 'any one of the three aspects – wages, hours, or working conditions – is sufficient to impute employer liability under California wage and hour law.'"  *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 939 (N.D. Cal. 2016) (quoting *Torries v. Air to Ground Servs., Inc.*, 300 F.R.D. 386, 395 (C.D. Cal. 2014)). "Supervision of the work, in the specific sense of exercising control over how services are performed, is properly viewed as one of the 'working conditions' mentioned in the wage order." *Martinez*, 49 Cal. 4th at 76.  However, a "single conclusory allegation . . . that [the plaintiff] was supervised and/or managed by [defendant] employers" is not sufficient to support an inference of control.  *Haralson*, 224 F. Supp. 3d at 939-40.

Plaintiffs allege the following: "Aramark employees and County of Alameda Sheriff's deputies both supervise prisoner-employees to make sure they do not violate safety rules. Aramark employees supervise the quality and amount of work that prisoners accomplish. Aramark employees also supervise prisoner-employee conduct and report misconduct to the deputies for discipline."  FAC ¶ 24.  Plaintiffs further allege that "Aramark establishes quotas for prisoners that dictate how much work prisoners must complete before their shift ends."  *Id.* ¶ 25. Plaintiffs also allege that "if Aramark is displeased with a prisoner-employee, it can tell the

County that the prisoner-employee may not return to work for Aramark." *Id.* ¶ 26.  In its previous order, the Court found that Plaintiffs' threadbare allegation that Aramark supervised Plaintiffs was insufficient to allege any control by Aramark over their work conditions.  ECF No. 46 at 21.  However, Plaintiffs' new allegations demonstrate that Aramark dictates the length of prisoner-employees' shifts, and that Aramark can effectively terminate them if Aramark is dissatisfied with them.  Plaintiffs thus allege sufficient facts to show that Aramark exercises some control over Plaintiffs' working conditions.  *See Johnson v. Serenity Transportation, Inc.*, No. 15-cv-02004-JSC, 2016 WL 270952, at *16 (N.D. Cal. Jan. 22, 2016) (holding that defendant's removal of truck drivers from their work route effectively removed the drivers from employment, sufficient to show that defendant exercised control over the drivers' working conditions).  Therefore, the allegations support a finding of an employment relationship under the first prong of *Martinez*.  Accordingly, the Court denies Aramark's motion to dismiss Plaintiffs' Section 1194 claims for failure to pay minimum wage and overtime.

The Court need not consider whether Plaintiffs have asserted an employment relationship with County Defendants under the first prong of *Martinez* because, as the Court held in its previous order, Plaintiffs' allegations support a finding of an employment relationship under *Martinez*'s second prong.  *See* ECF No. 46 at 23.  Under *Martinez*'s second prong – to suffer or permit to work – "the basis of liability is defendant's knowledge of and *failure to prevent* the work from occurring."  49 Cal. 4th at 70 (emphasis in original).  In *Martinez*, defendants did not have the power to prevent the plaintiffs from working because a third party "had the exclusive power to hire and fire [the] workers, to set their wages and hours, and to tell them when and where to report to work."  *Id.*  As this Court explained in its prior order, every aspect of Plaintiffs' lives was or is controlled by the County, the Sheriff, and their agents.  ECF No. 46 at 23.  Plaintiffs allege that Sheriff's deputies force them to work and "threaten to terminate prisoners' employment if they need to take a sick day or are injured."  FAC ¶ 31.  This is sufficient to demonstrate that the County Defendants suffer or permit the Plaintiffs to work.  Thus, Plaintiffs have sufficiently alleged that they were employed by County Defendants for the purposes of Section 1194.

Finally, County Defendants assert that the Section 1194 claim for unpaid overtime fails

United States District Court
Northern District of California

because state law regulations "exempt employees of the State or any political subdivision thereof, including any city, county, or special district from the overtime requirements of the Labor Code." ECF No. 51 at 18 (citing 8 Cal. Code of Regulations § 11010). Plaintiffs make no argument to the contrary. Because County Defendants are exempt from the state overtime laws, 8 Cal. Code of Regulations § 11010, their motion to dismiss Plaintiffs' Section 1194 claim for failure to pay overtime wages is granted. Dismissal is without leave to amend because amendment would be futile. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

For the foregoing reasons, Plaintiffs have alleged an employment relationship with all Defendants. Therefore, the Court denies Aramark's motion to dismiss Plaintiffs' Section 1194 claims for failure to pay minimum wage and overtime wages. The Court denies County Defendants' motion to dismiss Plaintiffs' Section 1194 claim for failure to pay minimum wage, but grants County Defendants' motion to dismiss Plaintiffs' Section 1194 claim for failure to pay overtime wages because state entities are exempt from state overtime laws.

### C.    Claims Under 42 U.S.C. § 1983

County Defendants submit that Plaintiffs' claims under Section 1983 fail because they are premised on the fact that Plaintiffs are entitled to compensation for work performed in Santa Rita Jail, which, County Defendants argue, they are not. ECF No. 51 at 23.

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under Section 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability under Section 1983 "arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Respondeat superior liability does not lie in Section 1983; a supervisor is only liable under Section 1983 "if

the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Id.*

### 1.    Thirteenth Amendment Claim

The Thirteenth Amendment provides: "Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."  U.S. Const. amend. XIII, § 1.  Plaintiffs who have not been convicted of crimes are protected by the Thirteenth Amendment's prohibition against involuntary servitude.  *See McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012).

County Defendants contend that Plaintiffs' Thirteenth Amendment claim fails because they have no right to compensation for work performed in Santa Rita Jail.  ECF No. 51 at 23-24. County Defendants argue that all Plaintiffs – pretrial detainees and immigration detainees included – "are governed by Title 4 of the California Penal Code . . . ."  *Id.* at 24.  County Defendants conclude that because Plaintiffs cannot be compensated for their labor, they are, "like convicted criminals," not entitled to the Thirteenth Amendment's protection from involuntary servitude.  *Id.* at 25.

Plaintiffs respond that Section 1983 authorizes damages against County Defendants for violating Plaintiffs' Thirteenth Amendment rights.  ECF No. 53 at 15.  Plaintiffs argue that they may seek compensatory, nominal, and punitive damages in the form of wages under the Thirteenth Amendment because "[w]ages are suitable compensatory damages for forced labor," and "[d]efendants cite no contrary case law."  *Id.*

As the Court noted above, the issue of remedies for any violation of the Thirteenth Amendment is not before the Court at this stage of the proceedings.  *See supra* IV.B.3 n.6.  At this stage, the Court need only resolve whether Plaintiffs have sufficiently pleaded a Thirteenth Amendment claim against County Defendants under Section 1983.

Plaintiffs allege that County Defendants force them to work before they have been convicted or while awaiting immigration proceedings.  FAC ¶¶ 51, 53, 75, 76.  Rather than refute this allegation, County Defendants argue that Plaintiffs have not stated a Thirteenth Amendment claim because they are not entitled to payment for their labor and the Thirteenth Amendment

26

1   therefore does not apply.  ECF No. 51 at 23-24.  As the Court noted, claims of unpaid labor are

2   distinct from claims of forced labor.  *See supra* IV.B.3 n.6.  In support of their forced labor claims,

3   Plaintiffs allege that County Defendants forced them to work under the threat of punishment,

4   including lengthier sentences and solitary confinement.  This allegation is sufficient to plead that

5   County Defendants have violated Plaintiffs' Thirteenth Amendment rights, and Plaintiffs therefore

6   satisfy the first element of a Section 1983 claim.  *See Atkins*, 487 U.S. at 48.  Plaintiffs have also

7   sufficiently pleaded that the persons who violated their rights were acting under color of state law,

8   as County Defendants are governmental entities who were acting under state law as the

9   administrators of Santa Rita Jail.  *Id.*  As such, County Defendants' motion to dismiss Plaintiffs'

10  Thirteenth Amendment claim is denied.[7]

### 2.    Fourteenth Amendment Claims

11

12          The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life,

13  liberty or property, without due process of law; nor deny to any person within its jurisdiction the

14  equal protection of the laws."  U.S. Const. amend. XIV, § 1.

### a.    Equal Protection Claim

15

16          The women prisoner subclass alleges a violation of the Fourteenth Amendment's equal

17  protection clause against County Defendants.  FAC ¶ 80-84.  County Defendants move to dismiss

18  on the ground that the FAC does not allege that the denial of out of cell time caused any plaintiff

19  any injury.[8]  ECF No. 51 at 25.  According to County Defendants, "the generic statement that out

20  of cell time is crucial for the physical and mental health of prisoners is wholly insufficient to state

21

22  [7] Plaintiffs have not brought a Thirteenth Amendment claim against Aramark.  Nonetheless,
    Plaintiffs argue that Aramark violated the Thirteenth Amendment and that "the gravamen of
23  [Plaintiffs'] complaint puts Aramark on notice that they . . . have violated plaintiffs' right to be
    free from forced labor."  ECF No. 54 at 17.  Plaintiffs request leave by the Court to add a Section
24  1983 claim against Aramark for violating the Thirteenth Amendment.  *Id.*  The Court grants
    Plaintiffs' request.  *See Topadzhikyan v. Glendale Police Dep't*, 2010 WL 2740163, at *3 n.1
25  (C.D. Cal. May 21, 2010) (plaintiff was permitted to add new claims where the court granted leave
    to amend without limitation in its dismissal order).
26

27  [8] County Defendants also argue that the women prisoner subclass was treated "exactly the same as
    the male inmates," ECF No. 51 at 25, insofar as all of them received no compensation.  This point
28  is irrelevant to Plaintiffs' equal protection claim, which is based on the difference in out of cell
    time.

United States District Court
Northern District of California

a claim for injury" under Section 1983.  *Id.*  County Defendants further argue that Plaintiffs have alleged no facts suggesting that "the Sheriff personally deprived any Plaintiff of any out of cell time."  *Id.* at 26.

To prevail on an equal protection claim, plaintiffs "must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against them based upon membership in a protected class."  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).  Supervisory liability exists under Section 1983 where the supervisor is either personally involved in the constitutional deprivation or there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018).

County Defendants misunderstand the question, which is not whether the denial of out-of-cell time *caused* the Women Subclass injury but *whether the denial itself was the injury.*  "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group . . . [t]he 'injury in fact' in an equal protection case . . . is the denial of equal treatment resulting from the imposition of the barrier[.]"  *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666, (1993).  Similarly here, the injury for equal protection purposes is not the effect of the loss of out-of-cell time, but rather the fact that such time has been taken away in the first place on the basis of gender.  *See Coal. for Econ. Equity v. Wilson*, 122 F.3d 692, 704 (9th Cir. 1997), *as amended on denial of reh'g and reh'g en banc* (Aug. 21, 1997), *as amended* (Aug. 26, 1997) ("Where a state denies someone a job, an education, or a seat on the bus because of her race or gender, the injury to that individual is clear.")[9]  The Court finds that Plaintiffs have stated an injury insofar as the County Defendants' practices deprive women prisoners of equal time outside their cells on the basis of gender, and out of cell time positively affects their physical and mental health.  *See* FAC ¶

---

[9] In any event, it cannot seriously be argued that out-of-cell time is not valuable to prisoners.  *See, e.g., Ashker v. Newsom*, 968 F.3d 939, 942 (9th Cir. 2020) (class member prisoners alleging violation of agreement to provide out-of-cell time); *Salvador Venegas v. Stan Sniff*, No. 5:18-cv-02293-JLS(SHK), 2020 WL 6723353, at *8 (C.D. Cal. Sept. 8, 2020) (ordering defendant county to provide jail inmate with a specific amount of out-of-cell time per week).

82.

Plaintiffs have also alleged sufficient facts to show that the Sheriff personally participated in the arrangement that treats women unequally. *See* FAC ¶¶ 27, 37, 52, 81, 84. For example, Plaintiffs specifically allege that Sheriff Ahern, along with other Defendants, "divide the work day so that male prisoners are assigned to longer, daytime shifts, and female prisoners are assigned to shorter, nighttime shifts." FAC ¶ 27. The Court finds that this allegation is sufficient to plead that Sheriff Ahern personally participated in the constitutional violation. *See Rodriguez*, 891 F.3d at 798. Accordingly, County Defendants' motion to dismiss the women prisoner sub-class's equal protection claim is denied.

**b.      Procedural Due Process Claim**

"[S]ome kind of hearing is required" under the Fourteenth Amendment before the state may deprive a person of his or her property. *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).

Plaintiffs allege that County Defendants failed to provide them due process by denying them wages without a meaningful opportunity to be heard beforehand. FAC ¶¶ 36, 85-90. County Defendants move to dismiss on the ground that Plaintiffs have no protected property interest in wages for work performed in the Santa Rita jail kitchen. ECF No. 51 at 27. County Defendants rely on *Voris v. Lampert*, 7 Cal. 5th 1141 (2019) to support their argument.

Plaintiffs contend that inmates "working for private companies whose wages are governed by statute, in this case the California Labor Code, are entitled to due process before being denied wages for work that they have performed." ECF No. 53 at 16. Plaintiffs cite *Piatt v. MacDougall*, 773 F.2d 1032 (9th Cir. 1985) for support and argue that *Voris* is inapplicable. *Id.* at 17.

The Court holds that *Piatt v. MacDougall* controls. *Piatt* held that a state prisoner could not be denied compensation without being afforded due process where an Arizona statute authorized compensation for work done in prisons and "his work was done as part of a contract with a private entity." *Piatt*, 773 F.2d at 1036. The Court has found that Plaintiffs have sufficiently alleged that County Defendants denied them wages in violation of the Labor Code. *See supra* IV.B.4 (denying motion to dismiss failure to pay minimum wage claim). Like *Piatt*,

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiffs have alleged a right to compensation, and that right to compensation cannot be denied

2    without due process of law.  773 F.2d at 1036.  But Plaintiffs contend that County Defendants

3    provided them with no hearing before denying them wages.  FAC ¶ 36.  Therefore, Plaintiffs

4    sufficiently allege that County Defendants denied Plaintiffs due process of law by denying them

5    pay without providing an opportunity to be heard.

6             *Voris* is inapposite.  In *Voris*, a terminated employee brought a common law conversion

7    action against his former employer to recover unpaid wages.  7 Cal. 5th at 1149.  The California

8    Supreme Court rejected the employee's attempt to use the common law tort of conversion to

9    recover unpaid wages "[i]n light of the extensive remedies that already exist to combat wage

10   nonpayment in California."  *Id.* at 1162.  County Defendants read *Voris* to stand for the

11   proposition that there is no valid property interest in unpaid wages.  ECF No. 51 at 27.  However,

12   that was not *Voris*'s holding.  It held only that the tort of conversion cannot be used to recover

13   unpaid wages.  *Cf.* 7 Cal. 5th at 1149.

14            The motion to dismiss Plaintiffs' Section 1983 claim for failing to provide Plaintiffs due

15   process is denied.

16            **D.     Individual Plaintiffs' Claims**

17            County Defendants contend that the FAC fails to state any claim for relief for Plaintiffs

18   Mebrahtu, Mason, or Nunez-Romero because the Court previously dismissed their claims without

19   leave to amend.  ECF No. 51 at 28.  Plaintiffs submit that Mebrahtu, Mason, and Nunez-Romero

20   amended their claims against County Defendants "such that they state federal claims only . . . ."

21   ECF No. 53 at 17.  In its previous order, the Court dismissed Mebrahtu's state law claims against

22   County Defendants because he did not sufficiently allege that he suffered an injury within one

23   year of filing the class claim, ECF No. 46 at 13, and Mason and Nunez-Romero's state law claims

24   for failure to comply with the Government Claims Act, *id.* at 14.  This has no effect on Mebrahtu,

25   Mason, and Nunez-Romero's federal claims.  Additionally, the Court has held that Plaintiffs have

26   alleged sufficient facts to state TVPA and Section 1983 claims against County Defendants.  *See*

27   *supra* IV.A.2.a, IV.C.  The Court will not dismiss Plaintiffs Mebrahtu, Mason, and Nunez-

28   Romero's federal claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

County Defendants also argue that Plaintiff Abbey fails to state any claims against County Defendants because the FAC does not contain specific facts pertaining to Abbey nor any claim for relief that he asserts.  ECF No. 51 at 28-29.  Plaintiffs plead that Abbey worked in the Santa Rita Jail kitchen and include dates on which he worked.  FAC ¶¶ 13, 48.  Plaintiffs contend that, "[l]ike all plaintiffs and the putative class, [Abbey] was forced to work without compensation and under threat of solitary confinement."  ECF No. 53 at 17.  Plaintiffs included Abbey as one of the representative plaintiffs for the pretrial detainee subclass.  FAC ¶ 51.  Finally, Plaintiffs use the term "Plaintiffs" to refer to all named plaintiffs, including Abbey, in allegations against County Defendants.  *See, e.g.*, *id.* ¶ 31.  From these facts, the Court concludes that Abbey's claims against County Defendants are properly pleaded.  The Court likewise declines to dismiss Abbey's claims.

### E.      UCL Claim

Aramark moves to dismiss Plaintiffs' UCL claim on the ground that Plaintiffs have not stated any claim under other laws or statutes that could tether a UCL claim.  ECF No. 52 at 26-27; *see Willner v. Manpower, Inc.*, 35 F. Supp. 3d 1116, 1132 (N.D. Cal. 2014) ("An act is unlawful under the UCL if it violates another law.").  As discussed above, Plaintiffs have sufficiently alleged a TVPA claim and Labor Code claims against Aramark.  Because "virtually any state, federal or local law can serve as the predicate for an action under [the UCL]," *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012), the Court concludes that Plaintiffs have stated a UCL claim and denies Aramark's motion to dismiss this claim.

### F.      Bane Act Claim[10]

Lastly, Aramark moves to dismiss Plaintiffs' Bane Act claim for failure to state a claim.  ECF No. 52 at 27.  Aramark contends that Plaintiffs have not alleged either of the required elements for a Bane Act claim.  *Id.*  The necessary elements for a Bane Act claim are "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Lawrence v. City and Cnty. of San Francisco*, 258 F. Supp. 3d 977, 994-95 (N.D. Cal. 2017)

---

[10] County Defendants do not move to dismiss Plaintiffs' Bane Act claim.  The Court analyzes solely whether Plaintiffs state a claim under the Bane Act against Aramark.

1   (citing *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015)); *see also* Cal. Civ. Code §

2   52.1(b)-(c).  The right at issue must be constitutional or statutory.  *Venegas v. Cnty. of Los*

3   *Angeles*, 32 Cal. 4th 820, 843 (2004).

4       Plaintiffs have met the first element by alleging that Aramark intentionally interfered with

5   Plaintiffs' right to minimum and overtime wages under California Labor Code Section 1194.

6       The test under the second element is "whether a reasonable person, standing in the shoes of

7   the plaintiff, would have been intimidated by the actions of the defendants and have perceived a

8   threat of violence."  *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010).

9   Aramark argues that Plaintiffs fail to meet the second element because "speech alone is

10  insufficient to support a Bane Act claim, 'except upon a showing that the speech itself threatens

11  violence against a specific person or a group [of] persons.'"  ECF No. 52 at 27 (citing Cal. Civ.

12  Code § 52.1(k)).  Plaintiffs respond that Aramark's threats to turn Plaintiffs over to the Sheriff's

13  deputies for discipline are sufficient to meet the second element.  ECF No. 54 at 24.

14      Under the *Richardson* test, the second element of the Bane Act is satisfied if a reasonable

15  person "would have been intimidated by the actions of the defendants and have perceived a threat

16  of violence."  722 F. Supp. 2d at 1147.  While threats of solitary confinement would meet this test,

17  *see Owino*, 2018 WL 2193644, at *11, Plaintiffs do not allege that Aramark employees make

18  these threats.  *Cf.* FAC ¶ 31.  Instead, Plaintiffs allege that Aramark employees threaten to turn

19  Plaintiffs over to be disciplined by Sheriff's deputies for misconduct, *id.* ¶ 24, or attempting to

20  leave work early due to injury or illness, *id.* ¶ 33.  Nonetheless, the Court finds that Plaintiffs have

21  sufficiently alleged that Aramark coerces Plaintiffs into working without compensation,

22  interfering with their right to minimum and overtime wages.  It matters not whether Aramark has

23  the actual authority to place prisoners in solitary confinement, only whether a reasonable person,

24  "standing in the shoes of the plaintiff," would have perceived a threat.  *Richardson*, 722 F. Supp.

25  2d at 1147.  The Court finds that a reasonable person standing in Plaintiffs' place would have been

26  intimidated by Aramark's threats to report Plaintiffs for discipline by Sheriff's deputies, who

27  Plaintiffs believed would place them in solitary confinement if they refused to work.  Accordingly,

28

United States District Court
Northern District of California

1    Aramark's motion to dismiss the Bane Act claim is denied.[11]

2                                      **CONCLUSION**

3          For the foregoing reasons, County Defendants and Aramark's motions to dismiss are

4    granted in part and denied in part.  The Court dismisses Plaintiffs' (1) Labor Code Section 201 and

5    202 claims for failure to pay wages with leave to amend and (2) Labor Code Section 1194 claim

6    against County Defendants for failure to pay overtime without leave to amend.  The motions are

7    denied in all other respects.

8          **IT IS SO ORDERED.**

9    Dated:  June 24, 2021



                                        JON S. TIGAR
                                 United States District Judge

United States District Court
Northern District of California

---

[11] Because the Court finds that Plaintiffs have met the second element on the Bane Act under *Richardson*, the Court will not address Plaintiffs' theory that Aramark aided and abetted County Defendants.  *See* ECF No. 54 at 24.