UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMIDA RUELAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF ALAMEDA, et al., <br><br> Defendants. | Case No. 19-cv-07637-JST <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** <br><br> Re: ECF Nos. 161, 162 |

Before the Court is Defendants County of Alameda and Sheriff Yesenia Sanchez's (County Defendants) motion to dismiss, ECF No. 161, and Defendant Aramark Correctional Services, LLC's motion to dismiss, ECF No. 162. The Court will grant the County Defendants' motion and deny Aramark's motion.

**I.   BACKGROUND**

   **A.   Factual History**

For the purpose of deciding this motion, the Court accepts as true the following factual allegations from Plaintiffs' operative complaint, ECF No. 160. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Plaintiffs are or were "pre-trial detainees, detainees facing deportation, [and] federal detainees" confined in Alameda County's Santa Rita Jail. ECF No. 160 ¶ 1. Starting as early as July 2015, Plaintiffs performed "industrial food preparation services and cleaning" for Aramark, pursuant to a contract between Aramark and the County. *Id.* ¶¶ 1, 21. "Aramark is a private, for-profit company that sells food prepared by prisoners to third parties" outside of Alameda County. *Id.*

Aramark's contract with Alameda County allows Aramark "to employ persons imprisoned in Santa Rita Jail without compensating them." *Id.* ¶ 21. "Prisoners prepare and package food" in

Santa Rita's kitchen "and clean and sanitize the kitchen" after preparation. *Id.* ¶ 22. "Aramark employees manage the kitchen operation and observe the Sheriff's deputies' supervision of the prisoner-employees." *Id.* Employees of Aramark "supervise the quality and amount of work that prisoners accomplish" and "supervise prisoner-employee conduct and report misconduct to the deputies for discipline." *Id.* ¶ 23. Further, Aramark "establishes quotas for prisoners that dictate how much work prisoners must complete before their shift ends" and "determines from its quotas how many prisoner-employees are required to work and how many shifts are required." *Id.* ¶ 24.

Plaintiffs allege that County Defendants may "remove [prisoner-employees'] eligibility to work in the jail and subject them to disciplinary action" if Sheriff's deputies are "displeased with the quality or quantity of the work performed or the conduct of a prisoner-employee." *Id.* ¶ 25. "If Aramark is displeased with a prisoner-employee, it can tell the County that the prisoner-employee may not return to work for Aramark." *Id*. County Defendants and Aramark "arranged to divide the workday so that male prisoners are assigned to longer, daytime shifts, and female prisoners are assigned to shorter, nighttime shifts." *Id.* ¶ 26. County Defendants "determine which prisoners are eligible to work and place them in worker housing units," and Aramark "assigns prisoner-employees to their specific tasks." *Id.* ¶ 27. "Sheriff's deputies threaten plaintiffs and other prisoner-employees of Aramark that if they refuse to work, they will receive lengthier jail sentences or be sent to solitary confinement, where they would be confined to a small cell for 22 to 24 hours a day." *Id.* ¶ 30. The deputies "also threaten to terminate prisoners' employment if they need to take a sick day or are injured." *Id.* Such threats are sometimes made "in the presence of Aramark employees," *id.* ¶ 31, and Aramark employees threaten "to report [prisoner-employees] to the Sheriff's deputies for punishment if they attempt to leave work early due to illness or injury," *id.* ¶ 32.

In late October 2019, male prisoner workers, including those working for Aramark, staged a worker strike at Santa Rita "to advocate for improved conditions at the jail." *Id.* ¶ 36. Plaintiffs allege that, in response, Sheriff's deputies forced female prisoners, including Plaintiffs Ruelas and Mason, to cover the men's shifts "so that Aramark could meet their quotas." *Id.* Deputies threatened these women by telling them they "would not be provided meals unless they worked."

2

*Id.*

### B. Procedural History

Plaintiffs filed the original complaint, ECF No. 1, on November 20, 2019, on behalf of themselves and a class of individuals incarcerated in Santa Rita Jail who perform or performed services for Aramark. *Id.* ¶ 41. Plaintiffs originally brought ten claims, including claims under the Thirteenth Amendment, the Trafficking Victims Protection Act ("TVPA"), the Fourteenth Amendment, the California Labor Code, California's Unfair Competition Law ("UCL"), and California's Bane Act. *Id.* ¶¶ 67–108.

County Defendants and Aramark moved to dismiss. ECF Nos. 13, 23. On June 26, 2020, this Court granted in part and denied in part those motions to dismiss. ECF No. 46. The Court dismissed Plaintiffs' (1) TVPA claim against Aramark; (2) Labor Code claim for failure to pay wages, but only as it pertained to convicted plaintiffs; (3) Labor Code claims against County Defendants for failure to pay minimum wage and overtime, but only as they pertained to convicted Plaintiffs; (4) Labor Code claims against Aramark for failure to pay minimum wage and overtime; (5) Equal Pay Act claim; (6) Bane Act claim, but only against Aramark; and (7) Plaintiffs Mebrahtu, Mason, and Nunez-Romero's Labor Code and Bane Act claims against County Defendants. *Id.* at 25. All dismissals were with leave to amend except for the Labor Code claim for failure to pay convicted Plaintiffs wages as well as Mebrahtu, Mason, and Nunez-Romero's claims. *Id.*

On July 10, 2020, Plaintiffs filed an amended complaint. ECF No. 48. Plaintiffs added new plaintiffs, *id.* ¶¶ 1, 51, and reasserted nine of the ten claims from the original complaint, *see id.* ¶¶ 74–110. County Defendants and Aramark again moved to dismiss. ECF Nos. 51, 52. On June 24, 2021, the Court dismissed certain of Plaintiffs' Labor Code claims but denied the motions to dismiss with respect to Plaintiffs' other claims. ECF No. 88.

On July 7, 2021, Defendants appealed to the Ninth Circuit, challenging this Court's denial of motions to dismiss the Labor Code claims for minimum and overtime wages. ECF Nos. 92, 145. The Ninth Circuit certified to the Supreme Court of California the question of whether Section 1194 of the California Labor Code entitles non-convicted incarcerated individuals

3

1  performing services in county jails for a for-profit company to supply meals within the county to
2  bring claims for minimum and overtime wages.  *See Ruelas v. County of Alameda*, 15 Cal. 5th 968
3  (2024).  The California Supreme Court concluded that Section 1194 did not authorize such claims,
4  *id.* at 563, and the Ninth Circuit accordingly reversed that part of this Court's order on motions to
5  dismiss.  ECF No. 152.

6  Plaintiffs filed the operative second amended complaint ("SAC") on November 8, 2024.
7  ECF No. 160.  The SAC reasserts claims under: (1) the Thirteenth Amendment; (2) the
8  Trafficking Victims Protection Act, 18 U.S.C. § 1589 (TVPA); (3) the equal protection clause of
9  the Fourteenth Amendment; (4) the due process clause of the Fourteenth Amendment; (5)
10 California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); and (6)
11 California's Bane Act, Cal. Civ. Code § 52.1.  *Id.* ¶¶ 62–87.

12 The County Defendants now move to dismiss the Fourteenth Amendment claim, ECF No.
13 161, and Aramark moves to dismiss the UCL claim, ECF No. 162.  Plaintiffs oppose both
14 motions, ECF Nos. 165, 166, and County Defendants and Aramark filed replies, ECF Nos. 167,
15 168.  The Court held a hearing on February 20, 2025.

16 **II.   JURISDICTION**
17 The Court has jurisdiction under 28 U.S.C. §§ 1331, 1367.
18 **III.  LEGAL STANDARD**
19 To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a
20 complaint must contain "a short and plain statement of the claim showing that the pleader is
21 entitled to relief." Fed. R. Civ. P. 8(a)(2).  Dismissal "is appropriate only where the complaint
22 lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."
23 *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "[A] complaint
24 must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible
25 on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,
26 550 U.S. 544, 570 (2007)).  Factual allegations need not be detailed, but the facts must be "enough
27 to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.
28 "A claim has facial plausibility when the plaintiff pleads factual content that allows the

4

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d at 1072. In so doing, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis omitted).

## IV.    DISCUSSION

### A.    Fourteenth Amendment Due Process Claim

County Defendants move to dismiss the Fourteenth Amendment due process claim, contending that the SAC fails to state a claim for due process violations in light of the California Supreme Court's holding in *Ruelas v. County of Alameda*, 15 Cal. 5th 968 (2024). The Court agrees.

This Court denied Defendants' last motion to dismiss Plaintiffs' due process claim, holding that non-convicted, incarcerated individuals had a property right to compensation under the California Labor Code and that Plaintiffs sufficiently alleged that County Defendants denied Plaintiffs due process of law by denying them pay without providing an opportunity to be heard. ECF No. 88 at 29–30. But the California Supreme Court subsequently held that California Penal Code section 4019.3, which sets a specific wage cap, applies to "all county inmates, including pretrial detainees, working in the county jail." *Ruelas*, 15 Cal. 5th at 974 (quoting Cal. Penal Code § 4019.3). Thus, the Penal Code controls, and the Labor Code's provisions regarding minimum wage and overtime do not apply to non-convicted detainees. *Ruelas* at 979–81.

1    Recognizing this, Plaintiffs now argue that they hold an inherent property interest in their
2    *labor*, rather than a statutory property interest in wages owed. *See* ECF No. 165 at 4. This
3    argument fails for two reasons. As an initial matter, "[i]n determining the propriety of a Rule
4    12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such
5    as a memorandum in opposition to a defendant's motion to dismiss." *Broam v. Bogan*, 320 F.3d
6    1023, 1026 n.2 (9th Cir. 2003) (quoting *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1
7    (9th Cir. 1998)) (emphasis in original). Plaintiffs' SAC pleads a Fourteenth Amendment due
8    process claim premised only on a purported statutory right to wages. *See* ECF No. 160 ¶¶ 74–75
9    ("California, *by statute*, established the rights of all prisoners to receive compensation for work
10   performed for the benefit of a for profit company. In doing so, *California established a property*
11   *right* in the payment of wages that cannot be denied without due process of law.") (emphasis
12   added). This is the same purported statutory right that the California Supreme Court considered—
13   and rejected—in *Ruelas*, 15 Cal. 5th at 971. The SAC does not plead a Fourteenth Amendment
14   due process claim grounded in a property right to labor established by "[e]xisting rules and
15   understandings, background principles of property, and state [criminal and tort] law," as Plaintiffs
16   argue for the first time in their opposition. ECF No. 165 at 5–6. For this reason alone, the Court
17   need not consider Plaintiffs' new argument. *See Broam*, 320 F.3d at 1026 n.2.
18   But even considering the argument on the merits, the Court cannot conclude that Plaintiffs
19   have a property interest in their labor in the absence of a statute establishing that interest. Indeed,
20   the Ninth Circuit has held the opposite. *See Serra v. Lappin*, 600 F.3d 1191 (9th Cir. 2010) ("The
21   Constitution does not provide prisoners any substantive entitlement to compensation for their
22   labor. . . . Plaintiffs have no constitutionally protected property interest because they lack a
23   statutory or otherwise established right to the . . . wages they demand.") (internal citations
24   omitted).
25   Plaintiffs acknowledge that property interests "are created and their dimensions are defined
26   by existing rules or understandings that stem from an independent source such as state law." ECF
27   No. 165 at 4 (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). But
28   they do not provide such an independent source. Plaintiffs point to cases that state generally that

6

"[l]abor is property," ECF No. 165 at 5 (quoting *Slaughter-House* Cases, 83 U.S. 36, 58 (1872)), or that address entitlement to wages in inapposite situations. ECF No. 165 at 5–6 (citing *Falk v. Children's Hosp. L.A.*, 237 Cal. App. 4th 1454, 1458–59 (2015) (hospital employee's suit for timely payment of wages); *Dunlap v. Superior Ct.*, 142 Cal. App. 4th 330, 333 (2006) (bank employees' claim for unpaid wages)). But none of these authorities establish a property interest in labor performed by individuals who are incarcerated or detained pretrial. Nor do Plaintiffs address or attempt to distinguish *Serra*, which the Court sees as controlling authority regarding an incarcerated individual's right to a due process claim regarding compensation for labor. Because the Due Process Clause protects only against deprivation of existing interests in life, liberty, or property, and Plaintiffs "lack a statutory or otherwise established right to the [] wages they demand," the law compels the Court to hold that Plaintiffs have no valid due process claim. *Serra*, 600 F.3d at 1195. Accordingly, it will dismiss that claim. Because amendment would be futile, dismissal is without leave to amend. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

### B.  UCL Claim

Aramark moves to dismiss Plaintiffs' UCL claim, arguing that (1) the safe harbor doctrine bars the claim, (2) Plaintiffs do not plausibly allege "unlawful" conduct, and (3) Plaintiffs do not plausibly allege "unfair" conduct. The Court considers each argument in turn.

#### 1.  **Safe Harbor Doctrine**

The safe harbor doctrine "precludes plaintiffs from bringing claims based on 'actions the Legislature permits'" because "[i]f the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999)). "Under the safe harbor doctrine, '[t]o forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct.'" *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1164 (9th Cir. 2012) (citing *Cel-Tech*, 20 Cal. 4th at 183). "There is a difference between (1) not making an activity unlawful, and (2) making that activity lawful." *Cel-Tech*, 20 Cal. 4th at 183.

7

1    Aramark argues that the California Penal Code, which sets a cap on compensation for non-
2    convicted detainees in county jails, Cal. Penal Code § 4019.3, and does not provide minimum and
3    overtime wage protections to such detainees, reflects the Legislature's "determination" that "no
4    action should lie" for claims regarding insufficient wages for labor performed by detainees. ECF
5    No. 162 at 9–10 (quoting *Cel-Tech*, 20 Cal. 4th at 182). Plaintiffs respond that although the Penal
6    Code may not prohibit Aramark's failure to pay wages to non-convicted detainees, it does not act
7    to make the conduct lawful. ECF No. 166 at 8 (citing *Cel-Tech*, 20 Cal. 4th at 183 ("Penal Code
8    section 211, which defines robbery, does not make murder unlawful. Most assuredly, however,
9    that section does not also make murder lawful.")). Moreover, Plaintiffs argue that their UCL
10   claim is based not only on Aramark's failure to pay wages but also on its "coercive tactics on
11   prisoners to compel their uncompensated labor." ECF No. 166 at 9.

12   The Court agrees with Plaintiffs. Aramark construes Plaintiffs' UCL claim too narrowly.
13   The SAC alleges that non-convicted detainees "are coerced to work," ECF No. 160 ¶ 30, that
14   Aramark employees "threaten[] to report them to the Sheriff's deputies for punishment if they
15   attempt to leave work early due to illness or injury," *id.* ¶ 32, and that such reports may result in
16   "lengthier jail sentences" or "solitary confinement" for detainees. *Id.* ¶ 30. Plaintiff's UCL claim
17   incorporates by reference these allegations and alleges Aramark's continuing "exploit[ation of]
18   incarcerated employees to gain market share." *Id.* ¶ 83. Even if the California Penal Code
19   operated to "make lawful" the nonpayment of compensation to non-convicted detainees (a
20   conclusion the Court need not and does not make), the Penal Code does not make lawful the
21   threats, coercion, and exploitation that the SAC alleges. This is akin to the facts in *McKay v.*
22   *Sazerac Co.*, No. 23-cv-00522-EMC, 2023 WL 3549515 (N.D. Cal. May 17, 2023), where the
23   plaintiff's claims did "not turn solely on" elements of a product label that complied with federal
24   regulations but also on "the combination of the labeling and appearance" of the product, which
25   "create[d] confusion." *Id.* at *4. So too here: the California Penal Code's provision regarding
26   compensation to non-convicted detainees does not "clearly permit" Aramark's failure to provide
27   compensation coupled with the threatening and coercive conduct alleged in the SAC.
28   Accordingly, the Court concludes the safe harbor doctrine does not support dismissal of Plaintiffs'

8

UCL claim.

### 2. "Unlawful" Prong

Aramark next argues that Plaintiffs fail to plead a claim under the UCL's "unlawful" prong because the California Supreme Court held that Aramark's failure to pay wages is not a violation of the California Labor Code. ECF No. 162 at 10. Plaintiffs respond that its "unlawful" UCL claim rests not only on its now-dismissed Labor Code claim but also on alleged violations of the Trafficking Victims Protection Act, 18 U.S.C. § 1589 ("TVPA"), and the Bane Act, Cal. Civ. Code § 52.1. ECF No. 166 at 10–11.

In its order on a previous round of motions to dismiss, the Court held that the TVPA claim formed a sufficient predicate violation to state a UCL claim. ECF No. 88 at 31. The California Supreme Court's and Ninth Circuit's subsequent rulings on the Labor Code claim do not disturb the viability of Plaintiffs' TVPA claim or its sufficiency as a predicate violation for Plaintiffs' UCL claim. For that reason, the Court declines to dismiss the "unlawful" prong of Plaintiffs' UCL claim.

### 3. "Unfair" Prong

Finally, Aramark argues that Plaintiffs fail to plead a claim under the UCL's "unfair" prong because "Plaintiffs offer no basis for the allegation that the 'failure to pay wages' is 'immoral, unethical, oppressive, unscrupulous, and substantially injurious.'" ECF No. 162 at 11 (quoting ECF No. 160 ¶ 85).

Again, Aramark's cramped reading of the UCL claim is unpersuasive. As explained above, Plaintiffs base their claims not only on the nonpayment of wages but also on forced labor and coercive and threatening conduct. That alleged conduct "offends established public policy" as reflected in the TVPA and Bane Act. *See Rezner v. Bayerishe Hypo-Und Vereinsbank AG*, No. C 06-02064 JW, 2011 WL 6329854, at *6 (N.D. Cal. Nov. 8, 2011) (finding that plaintiff "adequately pleaded an unfair business practice under the UCL" where he "alleged numerous instances of conduct by Defendants that . . . offend public policy, insofar as they were outright unlawful") (internal quotations omitted)).

Moreover, Aramark's cited authority is inapposite. In *Hodson v. Mars, Inc.*, 162 F. Supp.

3d 1016 (N.D. Cal. 2016), the court concluded that while "the labor practices" allegedly used to produce defendant's chocolate bars "are immoral, there remains an important distinction between them and the actual harm for which [the plaintiff] seeks to recover, namely his purchase of Mars's chocolate products absent any disclosure." *Id.* at *1027. Here, there is no such "distinction," because Plaintiffs seek to recover for the harm caused directly by the alleged labor practices themselves.

Accordingly, the Court will not dismiss the "unfair" prong of Plaintiffs' UCL claim.

## CONCLUSION

For the foregoing reasons, the Court grants County Defendants' motion and dismisses Plaintiffs' Fourteenth Amendment due process claim without leave to amend. The Court denies Aramark's motion to dismiss Plaintiffs' UCL claim.

**IT IS SO ORDERED.**

Dated: February 20, 2025

_____
JON S. TIGAR
United States District Judge